# Exhibit G

Exhibit G

# Kennedys

570 Lexington Avenue
8th Floor
New York, NY 10022
USA

t +1 212.252.0004
f +1 212.832.4920
**kennedyslaw.com**

t +1 646.625.3952
michael.tricarico@kennedyslaw.com

**Via Certified Mail, Return Receipt Requested; and
Regular Mail**

June 10, 2020

The Wentworth Group Inc.
901 S. Trooper Road
Norristown, Pennsylvania 19403
Attn:   Ben Kirschenbaum

Re:     <u>The Board of Managers of 325 Fifth Avenue Condominium, et al. v. Continental
        Residential Holdings LLC, et al.</u>
        Supreme Court, New York County, Index No.: 154764/2012
        File No.:             EO275632
        Policy No.:           EO857484
        Policy Period:        July 17, 2014 to July 17, 2015

Dear Mr. Kirschenbaum:

We have been retained as coverage counsel for Markel Service, Incorporated, the claim service manager for EVANSTON INSURANCE COMPANY ("Evanston" or the "Company"), which provides Real Estate Services and Property Management Services Professional Liability Insurance protection for the WENTWORTH GROUP INC. (the "Insured").   In that capacity we write to update Evanston's coverage position with respect to the claims asserted against FS Project Management, LLC ("FSPM") and FirstService Residential New York, LLC ("FSRNY") (collectively, the "FS Defendants") in the action styled *The Board of Managers of 325 Fifth Avenue Condominium, et al. v. Continental Residential Holdings LLC, et al.*, that is currently pending in the Supreme Court, New York County, under Index No. 154764/2012 (the "Underlying Action").

As you know, pursuant to policy number EO857484 (the "Evanston Policy"), subject to a reservation of rights as set forth in its August 3, 2015 letter,[1] Evanston has been funding the defense of the FS Defendants in the Underlying Action.[2]   As set forth in greater detail herein,

---

[1] A copy of the August 3, 2015 letter is annexed hereto, and its contents are incorporated by reference as if more fully set forth herein.

[2] Evanston previously agreed to share equally with Continental Casualty Company ("Continental") in the cost of defending FSRNY, subject to a reservation of rights, through the retention of the FS Defendants' chosen

---

Kennedys is a trading name of Kennedys CMK LLP. Kennedys Law LLP, a UK Limited Liability Partnership, is a partner of Kennedys CMK LLP

*Kennedys offices, associations and cooperations:* Argentina, Australia, Belgium, Bermuda, Brazil, Chile, China, Colombia, Denmark, Dominican Republic, England and Wales, France, Guatemala, Hong Kong, India, Ireland, Israel, Italy, Mexico, New Zealand, Northern Ireland, Norway, Pakistan, Panama, Peru, Poland, Portugal, Puerto Rico, Russian Federation, Scotland, Singapore, Spain, Sweden, Thailand, United Arab Emirates, United States of America.

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

Evanston writes to inform you that because all of the potentially covered claims asserted against the FS Defendants in the Underlying Action have been dismissed, in sixty (60) days from the date of this letter, Evanston will discontinue its funding of the FS Defendants' defense and disclaim any further coverage obligations to the FS Defendants in connection with the Underlying Action.  If you believe there is additional information or documentation that may impact this decision, please promptly forward that to us for consideration.

<u>FACTUAL BACKGROUND</u>[3]

Plaintiffs, The Board of Managers of 325 Fifth Avenue Condominium and 325 Fifth Avenue Condominium (collectively, the "Plaintiffs" or the "Condominium"), commenced the Underlying Action on July 20, 2012, seeking to recover against multiple defendants for damages Plaintiffs allegedly suffered due to various construction defects at the Condominium building located at 325 Fifth Avenue, New York, New York (the "Building").  The crux of the Underlying Action is that there were numerous defects in the design and construction of the Building, and that the Defendants, while aware of the existence of the defects at various points, intentionally failed to disclose their existence to, *inter alia,* the purchasers of Condominium units and the members of the Condominium board that were not affiliated with the Condominium sponsor.  The Complaint in the Underlying Action alleges a variety of defects, but states that the most serious of those relate to the "lack of vertical and horizontal fire-stopping and fire-rated assemblies in the Building's residential units and common areas, and systemic structural defects in the Building's one hundred sixty-one balconies."

FSRNY is alleged to be the residential managing agent for the Building, and FSPM is alleged to have been retained to perform project management services at the Building.  The Complaint also names several entities alleged to be the sponsor or sponsors of the Condominium (the "Sponsor Defendants"), the structural engineers that were retained in connection with the Condominium's construction, the Condominium's general counsel, and Canido Basonas Construction Corp. ("Canido"), a construction company that performed certain repair work at the Building.

The Complaint states that the Sponsor Defendants were aware of the complained-of defects, and sought to "conceal the existence" of those defects by "install[ing] a web of purported fiduciaries [including the FS Defendants] with whom the Sponsor Defendants had strong preexisting relationships and/or whom they knew would do their bidding over and against the

---

defense counsel Gordon & Rees, LLP.  The defense sharing agreement between Evanston and Continental did not extend to the defense of FSPM, as it is not an insured under the Continental Policy.

[3] Our discussion of the allegations herein is included solely for purposes of our coverage analysis and is not intended to be, nor should it be construed as, a concession as to the truth of such allegations, which we understand are contested.

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**KENNEDYS**

June 10, 2020

interests of the Condominium." It is further alleged that "these faux fiduciaries actively worked with the Sponsor Defendants to cover up serious, life-threatening defects that the Sponsor Defendants were legally obligated to fix."

The Complaint implicates both FSRNY and FSPM for concealing defects in the Building's balconies. In that regard, it is alleged that in 2007, there were multiple instances where glass panels in the Building's balconies shattered. By 2008, the Sponsor and engineering defendants, with the knowledge of FSRNY, "identified defects at the edges of approximately one-third of the Building's balconies that required immediate remediation." Despite those Defendants' knowledge of defects at the balconies, the Sponsor Defendants engaged the engineering defendants to implement only "superficial 'patchwork' repairs which the Sponsor Defendants and [engineering defendants] knew were inadequate. . ."

Then on July 1, 2009, a glass panel shattered onto Fifth Avenue, injuring two pedestrians. FSPM was engaged "to investigate the design, construction and installation of the balconies." The Complaint states, however, that "rather than conduct any investigation into the original design and construction of the concrete balcony slabs as it was tasked to do, [FSPM], armed with information from FSRNY concerning the 2008 balcony repairs . . . actively and fraudulently concealed the existence of known systemic and fundamental defects resulting from the original design and construction of the reinforcing concrete slabs. In furtherance of these efforts, [FSPM] limited its purported investigation to the design, construction, and installation of the balcony panels and rails." Ultimately, based upon the investigation of FSPM, the Condominium "decided to replace the Building's thirteen-hundred existing glass panels with secured, laminated glass panels . . ."

In 2011, with the oversight of FSPM, the Condominium contracted with Canido to replace the glass panels on the balconies. Allegedly, FSPM and Canido were immediately aware that there were structural issues with the balconies—in particular, issues with rebar congestion—because Canido, in removing balcony rails, "improperly cut the ends of the reinforcing rebar that were improperly congested at the concrete slab edges during original construction." However, Canido and FSPM allegedly did not investigate the congestion of the rebar or its impact on the condition of the balconies, and neither party informed the Condominium of these structural issues.[4] In fact, the defects were not discovered until inspections of the Building were later

---

[4] It is further alleged in the Complaint that the defendants'—including FSRNY and FSPM's—concealment of the balcony defects resulted in the Condominium board entering into an inadequate settlement agreement in a pending litigation with the sponsor and engineering entities. In that regard, in or around May 2011, the Condominium board (which at the time was controlled by the sponsor), relying on the misrepresentations or omissions of the defendants, entered into a settlement agreement with the sponsor and engineering entities "for an amount vastly insufficient to repair the actual defects in the balconies." The agreement included a release that broadly relieved the sponsor and engineering entities of liability from the "actual dangerous

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

performed by mechanical architects and engineers Erwin & Bielinski, PLLC ("E&B"), a firm that was retained by the Condominium to investigate complaints of grease odors in the building, and independent structural engineer Lawless & Mangione Architects and Engineers, LLP ("L&M"), which was retained by the Condominium board in 2012 to conduct the Building's Local Law 11 inspection.

Initially, the Complaint alleged causes of action against the FS Defendants sounding in, *inter alia*, breach of fiduciary duty, fraud, constructive fraud, aiding and abetting the fraudulent inducement of a release, civil conspiracy, and breach of contract.  On July 26, 2016 however, the Court, on motion of the FS Defendants, dismissed the fiduciary duty, fraud, and civil conspiracy claims against the FS Defendants, finding that the FS Defendants did not owe any fiduciary duties to the Plaintiffs, and that the remaining claims were duplicative of the breach of contract claims, which the FS Defendants had not sought dismissal of.  While the Court did hold that the Plaintiffs stated a cause of action for aiding and abetting the fraudulent inducement of a release, that cause of action was discontinued by stipulation on August 17, 2017.  Therefore, the only remaining claims against the FS Defendants sound in breach of contract.

The lone remaining claim against FSPM is set forth in Plaintiff's Twelfth Cause of Action.  There, Plaintiffs allege that FSPM breached its 2009 project management agreement with the Condominium by:

> (i) failing to conduct a comprehensive investigation into the cause of the glass balcony failures; (ii) concealing its knowledge of deficiencies from the Condominium; (iii) recommending grossly inadequate superficial repairs; (iv) failing to properly oversee the repairs performed by [Canido] to ensure the repairs were made in professional and workmanlike manner in accordance with industry standards of skill in the trade; and (v) permitting [Canido] to exacerbate the deterioration of the Building's balcony slabs by improperly cutting the reinforcing rebar, and failing to apply epoxy sealant to the cut rebar or the balcony posts.

The lone remaining claim against FSRNY is set forth in Plaintiff's Ninth Cause of Action.  There, Plaintiffs allege that FSRNY breached its 2006 Management Agreement with the Condominium by:

---

defects in the balconies," since the language in the release was broadly drafted to cover claims "beyond the defects that the Sponsor Defendants misrepresented as the problem to include the actual, undisclosed defects that were the real problem."

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

(i) failing to properly allocate and collect common charges due pursuant to the 2014 special assessment, resulting in an aggregate under-payment to the Condominium; (ii) mismanaging the Condominium's accounts, by among other things remitting several overpayments and payments to vendors for other buildings from the Condominium's accounts totaling $23,298.97; (iii) failing to remit payments to the Condominium's consultants retained to investigate the design and construction of the Building's interior and façade; and (iv) disregarding the Board's explicit directive to withhold payments from [Canido].

<u>**COVERAGE PROFILE**</u>

The Evanston Policy is a Real Estate Services and Property Management Services Professional Liability Insurance Policy issued to The Wentworth Group Inc. under policy no. EO857484 for the July 17, 2014 to July 17, 2015 policy period, with limits of $5 million per claim and in the aggregate. Pursuant to an amendatory endorsement in the Evanston Policy, FSRNY and FSPM are also Named Insureds.

The Evanston Policy contains the following relevant insuring agreement:

A.    Coverage A. - Real Estate Services and Property Management Services Professional Liability Coverage and Claims Made Clause: The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, by reason of:

1.    a Wrongful Act; or
2.    a Personal Injury;

in the performance of Real Estate Services or Property Management Services rendered or that should have been rendered by the Insured;

provided:

a.    the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 6. of the Declarations[5] and before the end of the Policy Period; and

---

[5] The Retroactive Date stated is January 27, 2006.

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

        b.      prior to the effective date of this policy the Insured had no knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the lnsured's position to conclude that a Claim was likely.

The Evanston Policy contains the following relevant definitions:

A.      Claim means the Insured's receipt of:

      1.      a written demand for money damages or remedial Real Estate Services and/or Property Management Service involving this policy; or

      2.      the service of suit or institution of arbitration proceedings against the Insured;

          provided, however, Claim shall not include Professional Licensing Proceeding.

              *      *      *

O.      Personal Injury means:

1.      libel, slander or defamation;
2.      invasion or infringement of the right of privacy or publicity;
3.      malicious prosecution, abuse of process, false arrest or false imprisonment;
4.      humiliation or infliction of emotional distress; or
5.      wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

      committed in the performance of Real Estate Services or Property Management Services.

              *      *      *

S.      Property Management Services means the following services provided in connection with the management of residential or commercial real property:

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

    1.    development and implementation of management plans and budgets;

    2.    oversight of the physical maintenance of real property;

    3.    solicitation, evaluation and securing of tenants and management of tenant relationship, collection of rent and processing evictions;

    4.    development, implementation and management of contracts and subcontracts necessary to the daily functioning of real property;

    5.    development and implementation of marketing plans;

    6.    bookkeeping for properties under management;

    7.    collection of homeowner association assessments; and

    8.    project and construction management as it pertains to energy efficiency and feasibility studies and oversight of renovation and repairs for managed properties.

provided, however, Property Management Services shall not include development, implementation and management of property and/or liability insurance contracts or acting as a general partner of a limited partnership or manager or managing member of a limited liability company.

T.    Real Estate Services means the following services provided by an Insured:

    1.    in their capacity as a real estate agent, real estate broker, real estate sales associate, real estate broker associate, real estate leasing agent, real estate counselor and consultant, real estate auctioneer, mortgage broker, Short-Term Escrow Agent or preparation of broker price opinions for real property for others for a fee, commission or other compensation or in the course of solicitation of a client or customer for services which would result in payment of a fee, commission or other compensation; or

    2.    an expert witness or notary public that are incidental to or related to the foregoing.

*    *    *

X.    Wrongful Act means any negligent act, error or omission in Real Estate Services or Property Management Services.

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

**Kennedys**

June 10, 2020

The Evanston Policy also contains the following relevant exclusions, which indicate that the Evanston Policy "does not apply to any claim":

I.    based upon, arising out of, or in any way involving:

      1.    conduct of the Insured or at the lnsured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

          a.    the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or

          b.    Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or

      2.    the gaining by any Insured of any profit, remuneration or advantage to which such  Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such  Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this policy for the purpose of determining the applicability of this exclusion;

                *        *        *

O.    based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value. This exclusion shall apply irrespective of which individual, party, or organization actually or allegedly committed or caused, in whole or part, the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in amount . . .

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

# Kennedys

June 10, 2020

## COVERAGE ANALYSIS

By way of a letter dated August 3, 2015, Evanston, through its agent Markel Service, Incorporated, agreed to fund the defense of the FS Defendants subject to a reservation of rights.  As previously noted, a copy of that letter is enclosed herewith.  Evanston does not waive any coverage defenses asserted in its initial reservation of rights that are not specifically set forth in this letter, and in fact incorporates and restates those defenses as if specifically set forth herein.

For the reasons stated below, coverage no longer remains available for the Underlying Action and Evanston intends to cease funding the defense of the FS Defendants and will do so in sixty (60) days from the date of this letter.  If you believe there is additional information or documentation that may impact Evanston's decision, please promptly forward that to us for Evanston's consideration.

As an initial matter, the claims that remain pending against the FS Defendants in the Underlying Action stem from alleged breaches of contract and not from negligent tortious conduct. Consequently, the FS Defendants' potential liabilities do not arise from a Wrongful Act, which is defined in the Evanston Policy as "any *negligent* act, error or omission in Real Estate Services or Property Management Services [emphasis added]."  Furthermore, the facts underlying these causes of action plainly allege intentional, and not negligent conduct.  As against FSPM, the remaining claims relate to its efforts to conceal the balcony defects, which it allegedly did "actively and fraudulently."  As against FSRNY, the remaining claims all relate to FSRNY's intentional and "ongoing efforts to frustrate the Condominium's efforts to uncover the full extent of the construction defects," including the clear misappropriation of Condominium funds in defiance of the Condominium board's directives.  In sum, since these acts are alleged to be intentional and not negligent, no Wrongful Act is alleged.  Moreover, such acts are also excluded from coverage as intentional acts under Exclusion I of the Evanston Policy.

Additionally, with respect to FSRNY, Exclusion O, which excludes coverage for the "conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value" also operates to bar coverage. The allegations against FSRNY that remain in the Underlying Action plainly allege conduct falling solely within this exclusion, including the "mismanagement" of assessment fees, the withholding of payments to certain contractors and diversion of money to others in violation of the Board's directives, as well as the use of the Condominium's funds to pay the bills of other buildings that FSRNY manages.

Mr. Ben Kirschenbaum
The Wentworth Group Inc.

# Kennedys

June 10, 2020

<u>**CONCLUSION**</u>

As stated above, in sixty (60) days from the date of this letter, Evanston intends to cease funding the defense of the FS Defendants in the Underlying Action.  If there is any information or documentation you would like Evanston to consider prior to the withdrawal of that defense, please forward it to us immediately.  In particular, please immediately advise the undersigned if you are aware of further or different facts that could have a bearing on Evanston's position regarding coverage of the captioned matter. All of your correspondence concerning coverage should be directed to the undersigned.  We welcome any questions or comments you may have regarding Evanston's position as expressed above and again invite you to submit any additional information you believe is germane to the coverage determination in this matter.

Evanston explicitly reserves its right to assert in the future any other, further, different and/or additional grounds as a basis for terminating its funding of the FS Defendants' defense and thereby disclaiming coverage, based upon any and all of the terms, definitions, provisions, exclusions and conditions of the Evanston Policy and the August 3, 2015 reservation of rights. This letter is not intended to be, nor is it to be construed as, an exhaustive listing of all the terms, conditions, limitations, and exclusions of the Evanston Policy that might limit or preclude coverage for this matter. Evanston expressly reserves all rights under the Evanston Policy, and available at law, including the right to seek recovery of any defense costs paid to date.

Neither this correspondence nor any subsequent communication should be deemed or construed as an admission of coverage under this policy, or as a waiver of any right or defense to coverage available under such policies or at law or in equity.

Very truly yours,

Michael J. Tricarico
**Partner**
**for Kennedys**

cc: Lisa Kounitz (via e-mail – lisa.kounitz@cna.com)



August 3, 2015

**VIA EMAIL & CERTIFIED MAIL –
RETURN RECEIPT REQUESTED**

THE WENTWORTH GROUP INC.
901 S TROOPER ROAD
NORRISTOWN, PA 19403

ATTN: Ben Kirschenbaum

Re:     Insured:     THE WENTWORTH GROUP INC.
       Claimant:     THE BOARD OF MANAGERS OF 325 FIFTH AVENUE CONDOMINIUM
       Policy No:     EO857484
       File No:     EO275632

Dear Mr. Kirschenbaum:

Markel Service, Incorporated is the claim service manager for EVANSTON INSURANCE COMPANY ("Evanston" or the "Company"), which provides Real Estate Services and Property Management Services Professional Liability Insurance protection for THE WENTWORTH GROUP INC. (the "Insured"). In that capacity, we acknowledge receipt of the lawsuit filed in New York County, New York Supreme Court against FS Project Management, LLC ("FSPM"), FirstService Residential New York, LLC ("FSRNY") and other defendants by THE BOARD OF MANAGERS OF 325 FIFTH AVENUE CONDOMINIUM (the "Claimant"), and styled as *The Board of Managers of 325 Fifth Avenue Condominium v. Continental Residential Holdings LLC, et al.*, index number 154764/2012 (the "Complaint" or the "Claim"). Please use the above File No. on all correspondence regarding this matter.

## THE POLICY

We have reviewed this matter for the availability of coverage under policy number EO-857484 (the "Policy") issued to THE WENTWORTH GROUP INC. on a Claims Made basis for the period of July 17, 2014 to July 17, 2015. The Policy contains three separate coverage parts. Coverage A., Real Estate and Property Management Professional Liability Coverage, has a $5,000,000 each Claim limit of liability. Coverage B., Lock Box Event Liability Coverage, has a $100,000 each Claim limit of liability, as well as an aggregate limit of liablity of $100,000,[1] and Coverage C., Fair Housing Act Discrimination Liability Coverage, provides a $25,000 each Claim limit of liability and an aggregate limit of liability of $25,000.[2]

---

[1] The Limits of Liability for Coverage B. are amended by Endorsement Number 13.

[2] As the Complaint does not appear to implicate either Coverage B. or Coverage C., this matter has been analyzed for the availability of coverage under Coverage A. only. If you believe some

**Markel - Claims**
**Arizona · California · Illinois · New Jersey · Virginia · Wisconsin**
P.O. Box 2009, Glen Allen, VA 23058-2009 (800) 362-7535 Fax (855) 662-7535 markelclaims@markelcorp.com
California License: Markel West Insurance Services #OD95581
www.markelcorp.com



**MARKEL®**

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 2

The Policy's combined aggregate limit of liability is $5,000,000 and there is a $100,000 per Claim deductible applicable under each of the coverage parts.  Both Claim Expenses and Damages are included within the limits of liability for each coverage part, and both Claim Expenses and Damages are applied against any applicable deductible.   Coverage is also subject to a January 27, 2006 retroactive date and the following endorsements:

| | | |
|---|---|---|
| 1. | IL 12 01 11 85 | Additional Named Insured Endorsement |
| 2. | Manuscript | Property Management Amendatory Endt |
| 3. | Manuscript | Exclusion (L) Amendatory Endorsement |
| 4. | Manuscript | Amendment of Consent To Settle Clause |
| 5. | Manuscript | Exclusion (W) Amendatory Endorsement |
| 6. | MIL 3000 03 08 | Exclusion of Specific Incidents/Claims/Suits |
| 7. | Manuscript | Exclusion of Coverage Specific Entity |
| 8. | MERP 2209 06 11 | Additional Insured Endorsement - Coverage A. |
| 9. | MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| 10. | MEIL 5409 09 10 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 11. | IL 09 10 12 03 | Pennsylvania Notice |
| 12. | Manuscript | Amendatory Endorsement |
| 13. | Manuscript | Amendatory Endorsement |

### RESERVATION OF RIGHTS

We have now concluded our preliminary coverage review and investigation. This letter will serve to advise you of the potential bars or limitations to the coverage afforded to the Insureds for the damages sought by the Claimant under the referenced Policy based upon the investigation completed to date. The Company is providing a complete defense under the referenced Policy for all allegations against the Insureds in the Complaint under a reservation of rights to limit or deny payment of damages on various grounds detailed below.

We have appointed attorney Joseph Salvo of the firm of Gordon & Rees, LLP to defend the Insureds against the Claim.   Please note that we will not contribute toward any pre-tender defense fees and costs. While a defense is being provided to the Insureds in this matter pursuant to the terms of the Policy, it is to be expressly understood that the Company is responsible only according to the terms, limits, and conditions of the Policy.

Evanston further reserves its right to amend or supplement this reservation as further review, investigation and discovery warrant. The Company also reserves the right to seek reimbursement for Claim Expenses incurred on the Insureds' behalf in defending the Claim should it ultimately be determined that no duty to defend or indemnify existed. The Company also reserves its right to file a declaratory judgment action at any time to determine its duties of defense or indemnity herein.

coverage part other than Coverage A. may have the potential to provide coverage for the Claim, please advise immediately.



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 3

This letter sets forth the facts upon which we rely at this time in evaluating coverage. Should you have any information that is contrary to these facts that may impact your coverage or our evaluation, this information should be provided to the undersigned. The Insured has a continuing duty to cooperate with the Company in investigating and evaluating the Claim.

**CLAIM WAS FIRST MADE AGAINST YOU
DURING THE POLICY PERIOD**

We understand that the Claim was first made against you on May 4, 2015 with the Insureds' receipt of the Supplemental Summons[3] and Complaint, and that no prior Claim was made against the Insured. We further understand that, prior to the inception of the Policy, the Insured was unaware of any facts or circumstances that could give rise to the Claim. Our coverage determination is made in reliance on these representations made to us by you. If our understanding is in error, kindly advise us immediately.

**NATURE OF THE CLAIM**

The Claimant filed the Complaint in New York County, New York Supreme Court on April 30, 2015, naming FSPM, FSRNY and many others as defendants (collectively, the "Defendants").[4]  In its Complaint, the Claimant asserts the Defendants committed fraud and other misconduct in connection with the allegedly defective design, construction, marketing, sale, management and operation of the 325 Fifth Avenue Condominium development.  The Claimant alleges there were numerous defects in the design and construction of the building, most notably the lack of fire-stopping and fire-related assemblies in the building's residential units and common areas, and

---

[3] The Claimant initially filed a Summons with Notice on July 20, 2012, providing notice of its intent to file its Complaint, which as stated above was not filed until April 30, 2015.  The Summons with Notice did not include the Insureds as defendants and so was not served on the Insureds.  We understand the Insureds did not receive notice of the Claim until service of the Supplemental Summons enclosing the Complaint on May 4, 2015.  We further understand that the Insureds did not receive a courtesy copy of the Complaint prior to its service.

[4] In addition to FSPM and FSRNY, the Complaint names as defendants Continental Residential Holdings, LLC; Douglaston Development, LLC; 325 Fifth Avenue, LLC; 325 Fifth Avenue Commercial, LLC; 325 Fifth Avenue Investors, LLC; Continental Properties; Clinton Management, LLC; JELB 5th Avenue, LLC; Mark Fisch; Steven Fisch; Steven R. Charno; Jeffrey E. Levine; J.E. Levine Builder, Inc. d/b/a Levine Builders; The Stephen B. Jacobs Group, P.C.; Stephen B. Jacobs; FAIA; Howard I. Shapiro & Associates Consulting Engineers, P.C.; Jay P. Shapiro, P.E.; Lawrence Kent Shapiro, P.E.; Cantor Seinuk Group, P.C.; WSP Cantor Seinuk; I.M. Robbins, P.C.; Marc Robbins; Cantor & Pecorella, Inc.; S&S Manufacturing; Skyline Steel Corp.; K&M Architectural Window Products, Inc.; EFCO Corporation; Cross Country Construction, LLC; Cross Country Concrete, LLC; Silvian Marcus; Wolf Haldenstein Adler Freeman & Herz, LLP; and Canido Basonas Construction Corp.


**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 4

systemic structural defects in the building's exterior balconies. The Claimant contends FSPM and FSRNY placed the interests of the building's developers,[5] who had retained the Insureds prior to ceding control of the condominium board of managers, ahead of those of the ownership at large and conspired with the Developer Defendants to cover up or minimize the severity of the alleged defects in the building.

Specifically, the Claimant alleges that FSPM, which was retained by the Developer Defendants to identify the cause of the balcony failures, misrepresented that the defects were limited to the design and installation of the glass panels comprising the balcony railings when in fact there were underlying defects, which the Claimant contends FSPM concealed in concert with the Developer Defendants. The Claimant also alleges FSRNY withheld payments to consultants retained by the Claimant to investigate the defects, made payments to contractors the Claimant had directed FSRNY not to make, failed to properly allocate the $1,000,000 assessment approved by the Claimant to fund investigation of the defects, failed to collect the Developer Defendants' share of that assessment, and disregarded the Claimant's directives to distribute safety materials in an attempt to conceal from the ownership the lack of fire-stopping assemblies in the building. The Claimant also alleges FSRNY assisted the Developer Defendants in preparing the Offering Plan filed on April 8, 2005 with the Attorney General of the State of New York, which falsely represented that the Developer Defendants were not aware of the defects in the building. Further, the Claimant alleges FSRNY used funds belonging to the Claimant to pay the bills of other buildings it manages.

The Complaint contains the following causes of action: (1) breach of contract (against the Developer Defendants); (2) breach of contract (against the Developer Defendants); (3) breach of fiduciary duty (against all Defendants); (4) fraud (against all Defendants); (5) constructive fraud (against all Defendants); (6) fraudulent inducement of release (against the Developer Defendants); (7) aiding and abetting (against Cantor Seinuk Group, P.C., WSP Cantor Seinuk and Silvian Marcus); (8) aiding and abetting (against FSPM and FSRNY); (9) breach of contract (against FSRNY); (10) fraud (against FSRNY); (11) breach of fiduciary duty (against FSRNY); (12) breach of contract (against FSPM); (13) breach of contract (against Canido Basonas Construction Corp.); (14) legal malpractice (against Wolf Haldenstein Adler Freeman & Herz, LLP); (15) declaratory judgment (against the Developer Defendants); and (16) civil conspiracy (against all Defendants). With its Complaint, the Claimant seeks money damages in excess of $12,500,000, as well as punitive damages and recovery of its attorney fees.

---

[5] The Complaint identifies the building's developers as defendants Continental Residential Holdings, LLC; Continental Properties, LLC; Douglaston Development, LLC; 325 Fifth Avenue, LLC; 325 Fifth Avenue Commercial, LLC; 325 Fifth Avenue Investors, LLC; Clinton Management, LLC; JELB 5th Avenue, LLC; Mark Fisch; Steven Fisch; Steven R. Charno; Jeffrey E. Levine; and J.E. Levine Builder, Inc. d/b/a Levine Builders. The foregoing will be collectively referred to herein as the "Developer Defendants."



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 5

### RELEVANT POLICY PROVISIONS

We direct your attention to the following pertinent provisions of the Policy, which include the Policy's Insuring Agreement, as well as various definitions, conditions and exclusions, as set forth below:

### *PROPERTY MANAGEMENT AMENDATORY ENDORSEMENT* [6]

*This endorsement modifies insurance provided under the following:*

*REAL ESTATE SERVICES AND PROPERTY MANAGEMENT SERVICES
    PROFESSIONAL LIABILITY INSURANCE POLICY*

*In consideration of the premium paid, it is hereby understood and agreed
that the policy is amended as follows:*

*1.      Section Definitions S is amended as follows:*

> *S.      Property Management Services means the following services provided in connection with the management of residential or commercial real property:*
>
> *1.      development and implementation of management plans and budgets;*
>
> *2.      oversight of the physical maintenance of real property;*
>
> *3.      solicitation, evaluation and securing of tenants and management of tenant relationship, collection of rent and processing evictions;*
>
> *4.      development, implementation and management of contracts and subcontracts necessary to the daily functioning of real property;*
>
> *5.      development and implementation of marketing plans;*
>
> *6.      bookkeeping for properties under management;*
>
> *7.      collection of homeowner association assessments; and*
>
> *8.      project and construction management as it pertains to energy efficiency and feasibility studies and oversight of renovation and repairs for managed properties.*

---

[6] Added by Endorsement Number 2 to the Policy, which is incorrectly labeled as Endorsement Number 3.



**MARKEL®**

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 6

> *provided, however, Property Management Services shall not include development, implementation and management of property and/or liability insurance contracts or acting as a general partner of a limited partnership or manager or managing member of a limited liability company.*

***

### *AMENDATORY ENDORSEMENT – EXCLUSION L [7]*

*This endorsement modifies insurance provided under the following:*

*REAL ESTATE SERVICES AND PROPERTY MANAGEMENT SERVICES PROFESSIONAL LIABILITY INSURANCE POLICY*

*In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:*

1.  *Section The Exclusions L. is deleted and replaced with the following:*

    L.    *for:*
        1. *actual or alleged bodily injury, sickness, disease or death of any person; or*
        2. *damages to or destruction of any tangible property including loss of use resulting therefrom; provided, however, this subparagraph 2. shall not apply to a Claim arising from a Lock Box Event;*

2.  *Section Other Conditions is amended by the addition of the following:*

    M.   *General Liability Coverage:  It is condition precedent to coverage under this endorsement that the Named Insured maintain in-force General Liability Insurance, including the Products and Completed operations hazard, with an insurance company, risk retention group or captive (or Any other self insurance plan or trust by whatsoever name) which has an A.M. Best's rating of B++ or higher and having an each occurrence limit of liability equal to or greater than the Each Claim limit of liability stated in the Declarations during the Policy Period and the Extended Reporting Period, if exercised*

***

---
[7] Added by Endorsement Number 4.



**MARKEL®**

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 7

### *AMENDATORY ENDORSEMENT* [8]

*In consideration of the premium paid, it is hereby understood and agreed that Endorsement 1 is amended to read:*

*It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:*

*FirstService Corporation*
*2156593 Ontario Limited*
*FirstService Administration GP*
*FirstService CAM Holdings Inc*
*FirstService Delaware CAM Inc*
*FirstService Residential Inc*
*Jersey Shore Holdings Inc*
*First Service Residential DC Metro, LLC*
*Community Collection Services LLC*
*First Service Residential Maryland, Inc.*
*First Service Residential Mid Atlantic, LLC*
*First Service Residential Carolinas, Inc*
*NYHC, Inc.*
*FirstService Residential  New York, Inc. f/k/a Cooper Square Realty, Inc.*
*Cooper Square Realty, Inc; DBA FirstService Residential New York CityLine*
*Cooper Square Realty, Inc. DBA FirstService Residential New York Select*
*Cooper Square Realty, LLC*
*FirstService Realty NYC, Inc.*
*FirstService Residential-Connecticut, LLC*
*FS Energy LLC*
*Copper Square Realty Sales & Leasing LLC*
*FS Project Management, LLC*
*Wentworth New York Management Inc; DBA Wentworth Property Management; FKA Arco Wentworth Property Management Corp*
*First Service Residential Concierge, LLC (FKA Wentworth Concierge, LLC)*
*FSCSR - 8S, LLC*
*FSCSR – 184 Kent, LLC*
*FSCSR – 85 EEA, LLC*
*FSCSR – HUB, LLC*
*FSCSR – 100 NR, LLC*

---

[8] Added by Endorsement Number 12.



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 8

*FSRNY – 325 Lex, LLC*
*FSRNY – DKP, LLC*
*FSRNY – BKSB, LLC*
**\*\*\***

### REAL ESTATE SERVICES AND PROPERTY MANAGEMENT SERVICES PROFESSIONAL LIABILITY INSURANCE POLICY

**\*\*\***

## THE INSURED

*The unqualified word "Insured," either in the singular or plural, means:*

**A.**   *the Named Insured stated in Item 1. of the Declarations;*

**B.**   *any past or current partner, officer, director or shareholder of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;*

**C.**   *any past or current employee, including a leased employee, of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;*

**D.**   *any natural person who is an independent contractor of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;*

**E.**   *if the Named Insured stated in Item 1. of the Declarations is a limited liability company, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;*

**F.**   *the heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured but only for such Insured's liability as is otherwise covered herein.*

## INSURING AGREEMENTS

**A.**   ***Coverage A. – Real Estate Services  and Property Management Services Professional Liability Coverage and Claims Made Clause:*** *The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision,*

*by reason of:*



THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 9

> **1.**   *a Wrongful Act; or*
>
> **2.**   *a Personal Injury;*
>
> *in the performance of Real Estate Services or Property Management Services rendered or that should have been rendered by the Insured;*
>
> *provided:*
>
> **a.**   *the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 6. of the Declarations and before the end of the Policy Period; and*
>
> **b.**   *prior to the effective date of this policy the Insured had no knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.*

**\*\*\***

## DEFINITIONS

**A.**   **Claim** *means the Insured's receipt of:*

> **1.**   *a written demand for money damages or remedial Real Estate Services and/or Property Management Services involving this policy; or*
>
> **2.**   *the service of suit or institution of arbitration proceedings against the Insured;*
>
> *provided, however, Claim shall not include Professional Licensing Proceeding.*

**B.**   **Claim Expenses** *means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:*

> **1.**   *salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or*
>
> **2.**   *salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.*

**C.**   **Damages** *means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:*

> **1.**   *punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;*
>
> **2.**   *taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;*



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 10

3. *sanctions;*

4. *matters which are uninsurable under the law pursuant to which this policy shall be construed; or*

5. *the return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods.*

\*\*\*

**O.   Personal Injury** *means:*

1. *libel, slander or defamation;*

2. *invasion or infringement of the right of privacy or publicity;*

3. *malicious prosecution, abuse of process, false arrest or false imprisonment;*

4. *humiliation or infliction of emotional distress; or*

5. *wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;*

*committed in the performance of Real Estate Services or Property Management Services.*

**P.   Policy Period** *means the period from the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.*

\*\*\*

**T.   Real Estate Services** *means the following services provided by an Insured:*

1. *in their capacity as a real estate agent, real estate broker, real estate sales associate, real estate broker associate, real estate leasing agent, real estate counselor and consultant, real estate auctioneer, mortgage broker, Short-Term Escrow Agent or preparation of broker price opinions for real property for others for a fee, commission or other compensation or in the course of solicitation of a client or customer for services which would result in payment of a fee, commission or other compensation; or*

2. *an expert witness or notary public that are incidental to or related to the foregoing.*

\*\*\*

**X.   Wrongful Act** *means any negligent act, error or omission in Real Estate Services or Property Management Services.*

**THE EXCLUSIONS**

*This policy does not apply to any Claim:*



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 11

**\*\*\***

**I.**     *based upon, arising out of, or in any way involving:*

    **1.** *conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:*

        **a.** *the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or*

        **b.** *Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or*

**\*\*\***

**O.**     *based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value. This exclusion shall apply irrespective of which individual, party, or organization actually or allegedly committed or caused, in whole or part, the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in amount;*

**\*\*\***

## OTHER CONDITIONS

**\*\*\***

**D.**     **Other Insurance:** *This insurance shall be in excess of the Deductible stated in Item 5. of the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.*

### COVERAGE ANALYSIS

At the outset, please note that we have analyzed coverage based upon the allegations as they are stated within the Claim, without regard to whether the allegations stated therein are, in fact, true. If you believe we have misconstrued those allegations, we ask that you please advise the undersigned.



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 12

We draw your attention to the Insuring Agreement for Coverage A., Real Estate Services and Property Management Services Professional Liability Coverage, which states, in pertinent part, that coverage is provided for Claims first made against Insureds during the Policy Period by reason of a Wrongful Act or Personal Injury in the performance of Real Estate Services or Property Management Services rendered or that should have been rendered by an Insured.  The Policy defines "Insured" to include the Named Insured stated in Item 1. of the Declarations. Endorsement Number 12 amends Item of 1. of the Declarations to include additional Named Insureds, including FS Project Management and FirstService Residential New York.  As a result, FSPM and FSRNY are Insureds under the Policy.[9]

Please note that the Policy defines the term "Claim" to include a written demand for money damages or remedial Real Estate Services and/or Property Management Services involving this Policy, as well as the service of suit or institution of arbitration proceedings against the Insured. The Complaint constitutes the service of suit against the Insured and therefore satisfies the Policy's definition of "Claim."   Endorsement Number 2 to the Policy defines "Property Management Services" to include oversight of the physical maintenance of real property, development and implementation of marketing plans, bookkeeping for properties under management, and collection of homeowner association assessments.  The Complaint constitutes a Claim alleging Wrongful Acts in the performance of Property Management Services rendered or that should have been rendered by the Insureds, and thus triggers the Insuring Agreement to Coverage A., Real Estate and Property Management Professional Liability Coverage.

We next wish to draw your attention to certain exclusions which may provide a basis to limit or exclude coverage for the Claim.  Please note that Exclusion I.1. states the Policy does not apply to any Claim based upon, arising out of, or in any way involving conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation.  This exclusion shall not apply to the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation, or to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation.  To the extent the Claim alleges fraud on the part of the Insureds, the Company reserves the right to limit or deny coverage.

Please also note Endorsement Number 4 amends Exclusion L. to state that the Policy does not apply to any Claim for damages to or destruction of any tangible property, including loss of use therefrom.  The Company reserves the right to limit or deny coverage to the extent the Claim is for damages to or destruction of tangible property, including the loss of use as a result of such damage.

As stated above, the Complaint asserts FSRNY used reserve funds belonging to the Claimant to pay the bills of other associations being managed by FSRNY.  In this regard, please note that Exclusion O. states the Policy does not apply to any Claim based upon or arising out of any actual

---

[9] The defendants named in the Complaint other than FSPM and FSRNY are not Insureds under the Policy, and therefore coverage is denied to them on that basis.



THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 13

or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value. Exclusion O. applies irrespective of which individual, party or organization actually or allegedly committed or caused, in whole or in part, the conversion, misappropriation, commingling, defalcation, theft, disappearance or insufficiency in amount.   To the extent the Claim alleges conversion or misappropriation, the Company reserves the right to limit or deny coverage.

The Claimant alleges in the Complaint that FSRNY assisted the developers with preparation of the Offering Plan, which allegedly contained knowingly false representations concerning the developers' knowledge of defects in the design of the building, and which was filed with the Attorney General for the State of New York on April 8, 2005. In this regard, please recall that the Insuring Agreement to Coverage A. is conditioned upon the proviso that the Wrongful Act or Personal Injury alleged in the Claim must have happened during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the end of the Policy Period.    As stated above, the Policy provides a Retroactive Date of January 27, 2006. Consequently, coverage is not available under the Policy to the extent the Claim alleges Wrongful Acts by FSRNY or any other Insured taking place before the Retroactive Date.  As a result, Evanston reserves the right to limit or deny coverage on this basis.

Please additionally note that the Policy's definition of "Damages" expressly states that Damages do not include punitive or exemplary damages and attorneys' fees of a party other than an Insured.   As a result, the punitive damages and attorney fees sought in the Claim are not covered forms of Damages under the Policy.  The Company reserves the right to limit or deny coverage on this basis, as well.

We further understand that FSRNY has received a defense under the management liability insurance policy issued to the Claimant by Continental Casualty Company ("Continental"), subject to Continental's reservation of rights.[10]  In this regard, we draw your attention to the "Other Insurance" provision of the Policy, which states the Policy shall be in excess of the deductible and any other insurance available to the Insured, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability of the Policy.  The Company reserves the right to limit or deny coverage to the extent the Policy is excess over any other insurance available to the Insured.

In light of the above, we will forego further analysis and discussion of other coverage issues which may apply to limit or exclude coverage for this matter.  Evanston will reserve all rights to limit or deny coverage on all other bases that may exist.

---

[10] Evanston has agreed to equally share with Continental in the cost of defending FSRNY, subject to our respective reservations of rights, through the retention of Gordon & Rees, LLP.  The defense sharing agreement between Evanston and Continental does not extend to the defense of FSPM, as it is not an insured under the Continental policy.



THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 14

### Potential Exposure in Excess of Remaining Policy Limit

The Complaint seeks judgment against the Defendants, including FSPM and FSRNY, in an amount not less than $12,500,000. In light of the magnitude of the claimed damages, there is a potential exposure to the Insureds of a judgment in excess of the applicable policy limits and we wish to draw your attention to this possibility. While it is customary for plaintiffs to sue for large sums of money, the amount sought does not necessarily indicate the true value of the Claim or the amount of ultimate recovery. However, there is a possibility that a trial could result in an award in excess of the limits of liability under the Policy.

### Defense Costs Depleting Cost Inclusive Policy Limit

We also wish to call your attention to the fact that the Claim is being defended under a Policy with limits that are eroded by the payment of Claim Expenses. Defense costs (which are one type of Claim Expense) deplete the limits available for payment of a settlement or judgment. Accordingly, as defense costs continue to be incurred, the potential for exposure in excess of the Policy's limits increases. This letter will serve to advise you that, if a judgment is entered against the Insureds in excess of your remaining limit, or if a settlement in excess of the remaining limit becomes necessary, the Company's obligation will only be up to the limit of liability remaining at the time of payment. Accordingly, in the event the Claim proceeds to trial or mediation, please be advised that Evanston will look to the remaining limit of liability to determine the extent of its obligation to pay a settlement or judgment.

### Excess Insurance

If you have excess liability insurance, you should immediately notify your excess carrier of the Claim.

### Personal or Private Counsel

If you do not have excess insurance and because of the potential for exposure in excess of the Policy's limit of liability, you have the right to retain personal or private counsel, at your own expense, to represent your interests with regard to the potential excess exposure. Mr. Salvo and his firm will cooperate with your private counsel and do what is necessary, subject to the terms of the Policy, to provide you with a full defense.

If you decide to leave the defense of this matter entirely in the Company-retained counsel's hands, you will incur no additional expense. However, we wish it clearly understood that in no event will the Company be responsible for any amount of any judgment in excess of the Policy limit.

### CONCLUSION

Evanston reserves all of its rights under the Policy to limit or deny coverage as explained herein. Please note that while the firm of Gordon & Rees, LLP will continue to represent your interests in the Claim, that undertaking is upon the express understanding that it will not be construed as a



**MARKEL**®

THE WENTWORTH GROUP INC.
EO275632
August 3, 2015
Page 15

waiver of any of the rights which the Company may have under the Policy, nor as an admission of any liability whatsoever of the Company to the Insured.

Please feel free to call the undersigned if you have any questions or comments at (847) 572-6320. In particular, please advise the undersigned immediately if you are aware of further or different facts that could have a bearing on our position regarding coverage of the captioned matter. All of your correspondence concerning coverage should be directed to the undersigned. Any questions you have concerning the defense of the Insured should be directed to attorney Joseph Salvo at the law firm of Gordon & Rees, LLP. In the interim, we welcome any questions or comments you may have regarding EVANSTON INSURANCE COMPANY's position as expressed above and again invite you to submit any additional information you believe is germane to the coverage determination in this matter.

Sincerely,

Chad Zupke
Senior Claims Examiner

cc:  R-T SPECIALTY, LLC



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

NORRISTOWN, PA 19403

| Certified Mail Fee | $3.55 | | 0014 |
| | | | 12 |
| $ | | $2.85 | |
| Extra Services & Fees *(check box, add fee as appropriate)* | | | |
| ☐ Return Receipt (hardcopy) | $ | $0.00 | |
| ☐ Return Receipt (electronic) | $ | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ | $0.00 | Here |
| ☐ Adult Signature Required | $ | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | | |
| Postage | $2.00 | | |
| $ | | | 06/10/2020 |
| Total Postage and Fees | $8.40 | | |

Sent To Ben Kirschenbaum The Wentworth Group Inc.
Street and Apt. No., or PO Box No. 901 S Trooper Road
City, State, ZIP+4® Norristown, PA 19403

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7019 1640 0001 5706 1363