Elliott M. Kroll
Bernice K. Leber
Stefan Bogdanovich (*pro hac vice pending*)
ARENT FOX LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY, 10019
Tel.: (212) 484-3900
Fax: (212) 484-3990
elliott.kroll@arentfox.com
bernice.leber@arentfox.com
stefan.bogdanovich@arentfox.com

*Attorneys for Plaintiffs*
*The Wentworth Group Inc.,*
*FS Project Management, LLC and*
*FirstService Residential New York, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WENTWORTH GROUP INC., FS PROJECT MANAGEMENT, LLC and FIRSTSERVICE RESIDENTIAL NEW YORK, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> EVANSTON INSURANCE COMPANY <br><br> Defendants. | Civil Action No.   20-cv-06711 <br><br> ECF CASE <br><br> **COMPLAINT** |

Plaintiffs THE WENTWORTH GROUP, INC. ("Wentworth"), FS PROJECT

MANAGEMENT LLC ("FSPM") and FIRSTSERVICE RESIDENTIAL, INC. ("FSR"), by their

attorneys, Arent Fox LLP, as and for their Complaint against Defendant EVANSTON

INSURANCE COMPANY ("Evanston") allege:

## NATURE OF THE ACTION

1.      This action for declaratory judgment action and breach of contract arises from the breach by Defendant Evanston of its obligations under a policy of insurance by which it agreed to defend and indemnify FSPM and FSR for real estate services and property management services, a true and correct copy of which is attached hereto as Exh. A.

2.      The Evanston Policy EO854419 (the "Policy") was issued to Wentworth and additional named insureds FSR and FSPM effective July 17, 2014 to July 17, 2015.

3.      On April 15, 2015, the Board of Managers of 325 Fifth Avenue Condominium (the "Board") joined FSPM and FSR in a state court action (*"The Board of Managers of 325 Fifth Avenue Condominium, et al. v. Continental Residential Holdings LLC", et.al*, Supreme Court, New York County, Index No.:154764/2012 ("Litigation") concerning glass panels installed at balcony rails that fell from the condominium building injuring two pedestrians, and for related design and construction defects.  The Board and 325 Fifth Avenue Condominium (collectively, the "Board") seek $12.5 million in damages.

4.      FSR provided property management services for the Board as the managing agent of the building, while FSPM provided project management services to the building as an owner's representative of the Board.

5.      On April 30, 2015, Wentworth, FSPM and FSR gave Evanston timely notice of the Litigation. On August 3, 2015, Evanston agreed Plaintiffs' claim was covered promising in writing to "…continue to represent [FSPM and FSR's] interest in the Claim. "  On August 12, 2015, Gordon & Rees LLP appeared as defense counsel for FSR and FSPM with the prior approval of Evanston. On May 30, 2019, the Defendant re-confirmed that the claim was covered and continued

the defense of Plaintiffs FSR and FSPB. Unexpectedly, on June 10, 2020, Evanston disclaimed coverage and threatened to stop paying for the defense of FSPM and FSR by August 10, 2020.

6.      Wentworth, FSPM and FSR now seek a declaratory judgment and related relief that (a) the claims in the Litigation are covered under the Policy; (b) Evanston is obligated to indemnify and pay for the defense costs incurred by Plaintiffs; (c) Defendant is obligated to fund Plaintiffs' legal defense in the Litigation and (d) pay the attorneys' fees and costs incurred in prosecuting this action for having to defend themselves against Defendants' wrongful conduct.

## THE PARTIES

7.      Plaintiff Wentworth is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 901 S Trooper Road, Norristown, Pennsylvania 19403.

8.      Plaintiff FSPM is a limited liability company organized under the laws of New York, with its principal place of business located at 622 Third Avenue New York, New York 10017.  FSPM recently changed its name and is now known as FirstService Project Management, LLC.

9.      Plaintiff FSR is a corporation organized under the laws of New York, with its principal place of business located at 1855 Griffin Road, Suite A-330, Dania Beach, Florida 33004.

10.      Defendant Evanston is, upon information and belief, an insurance company licensed in and organized under the laws of Illinois, with its principal place of business located at Ten Parkway North Deerfield, Illinois 60015.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as it is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over the Defendant in this action because Defendant has expressly consented to the jurisdiction of this court of competent jurisdiction under Provision L of the Policy, is registered with New York Department of Financial Services and in addition, satisfies the requirements set forth in N.Y. C.P.L.R. §§301 and 302 and N.Y. Ins. Law §§1101(b)(1) and 1213(b)(1) because it is doing or transacting business in this State, committed a tortious act within the State and/or committed acts outside the State causing harm to Plaintiffs in the State and regularly does or solicits business or engages in a persistent course of conduct and derives substantial revenue from services rendered in the State, or reasonably expects or should reasonable expect its acts to have consequences here and derives substantial revenue from interstate commerce.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events, acts or omissions giving rise to the claims asserted herein occurred in this judicial district.

**The Litigation**

15.     The Board alleges that between 2007 and 2009, the sponsor of the condominium retained FSPM to determine the cause of defects in the glass panels installed at the balcony rails that resulted in their falling and shattering.  The Board further alleges that thereafter in 2011, upon the recommendation of FSPM, the sponsor contracted with Candido Basonas Construction Corp. ("Basonas") to repair the glass panels.

16.     While Basonas was making the repairs, the Board alleges that the contractor improperly cut the ends of certain reinforcing rebar congesting the slab edges of the balconies. Instead of eliminating the defects, the Board claims Besonas's work exacerbated the existing defects rendering the glass panels susceptible to dislodging and falling.

17.     The Board alleges that FSPM and FSR concealed the defects in Basonas's work from the Board and made a series of unspecified, materially false representations and omissions (a true and correct copy of the Complaint is annexed Exh. B).  It also claims FSPM and FSR helped the sponsor fraudulently to induce the Board to sign a release of all claims arising from the design, construction and installation of the balcony panels.  Finally, the Board contends that FSPM and FSR negligently or erroneously failed to allocate or collect various common charges bills and conflated repayments and payments to vendors and failed to disclose defects and the nature of repair work completed.

18.     Basonas filed a Cross-Claim against FSR and FSPM and numerous other defendants seeking indemnification or apportionment of its liability among its co-defendants, a true and correct copy of which is annexed Exh. C.

**Evanston State the Claim of FSPM, FSR Is Covered**

19.     Shortly after FSPM and FSR were joined in the Litigation on April 30, 2015, Wentworth, FSPM and FSR provided Evanston with timely notice of the Litigation.

20.     On August 3, 2015, based upon its then coverage review and investigation, Evanston, by Chad Zupke, Senior Claims Examiner, concluded in a letter of that date that the claims against FSR and FSPM as set forth in the Litigation were covered under the Policy. Notably, the August 3, 2015, letter states the FSR and FSPM claim was a covered claim:

> The Complaint constitutes a Claim alleging Wrongful Acts in the performance of
> Property Management Services rendered or that should have been rendered by the

Insureds, and thus triggers the Insuring Agreement to Coverage A, Real Estate and Property Management Professional Liability Coverage.

Defendant thereupon agreed to provide "a complete defense" subject to its limited reservation of rights. A true and correct copy of The August 3, 2015 Letter is annexed Exh. D.

21.     The August 3 letter further states:

> Exclusion I.1 shall not apply . . . to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation.

22.     To date, no "adjudication" on this issue or Plaintiffs' liability has occurred.

23.     The August 3, 2015, letter did not assert Exclusion A nor did it assert that contractual claims were not covered as "negligent acts, errors or omissions." Most important, the August 3, 2015 letter made clear that Evanston was not reserving any right to disclaim coverage as its limited reservation stated:

> In light of the above, we will forego further analysis and discussion of other coverage issues which may apply to limit or exclude coverage for this matter. Evanston will reserve all rights to limit or deny coverage on all **other bases** that may exist (emphasis supplied).

Thus, not only did Evanston agree that the Litigation was a covered claim but specifically did not reserve the right to disclaim coverage with respect to Coverage A.

**The Cross-Claim by Basonas and the Stipulation of Discontinuance In The Litigation**

24.     By April 17, 2017, the Appellate Division First Department affirmed the Supreme Court Order dismissing six causes of action that the Board brought against FSR and FSPM in the Litigation for fraud, breach of fiduciary duty, aiding and abetting, and fraudulent inducement of a release by the Board of the sponsor (the "Six Causes of Action").

6

25.     On August 17, 2017, all of the parties signed a Stipulation of Discontinuance with prejudice of among other things, the Complaint's Eighth Cause of Action for aiding and abetting against FSR and FSPM (the "Stipulation"), a true and correct copy of which is Exh. E annexed.

26.     Defendant had knowledge in 2017, not only about dismissal of the Six Causes of Action but significantly here, about the Stipulation.  FSR and FSPM's defense counsel Gordon & Rees rendered over 20 timely reports to Evanston throughout the progress of the Litigation.

27.     Critically, Basonas, like the other defendants, was also sued on the Six Claims, among others.  Basonas did not, however, move to dismiss the Complaint.  Rather on August 15, 2015, the contractor filed an Answer, interposing a Cross-Claim for contribution and indemnity against FSR and FSPM with respect to all claims including the Six Claims (Exh. C)  Evanston was timely advised of the Basonas Cross-Claim against FSR and FSPM.

28.     Thus, as of in or about August 17, 2017, Evanston was aware from the Stipulation and numerous status reports from Plaintiffs' defense counsel that their insureds FSR and FSPM, would have to defend against Basonas's Cross-Claim for indemnity against them.   The claims asserted by the Board against Basonas include: breach of fiduciary duty, fraud, constructive fraud and breach of contract.

**Evanston's Involvement in Mediation and Reaffirming The Claim Is Covered**

29.     In 2019, two years after the Stipulation, Evanston also participated in extensive mediation efforts to try to resolve the Litigation.  Those efforts were unsuccessful.

30.     In the context of that mediation effort, Chad Zupke, Senior Claims Examiner for Evanston wrote to the Plaintiffs on May 30, 2019 to the Plaintiffs, reaffirming that the Litigation was a covered Claim alleging a Wrongful Act.   A true and correct copy of this correspondence from is attached hereto as Exh. F.

31.     In sum, for over five years since 2015, Defendant expressly embraced FSR and FSPM as covered by the Policy on multiple occasions and in different ways, acknowledging a duty to indemnify and defend Plaintiffs in the Litigation.

**The Denial**

32.     On June 10, 2020, Evanston,  by letter through its outside counsel ("The June 10, 2020 Letter"), informed Plaintiffs that Evanston was disclaiming coverage and would cease funding the defense in the Litigation on August 10, 2020.  A true and correct copy of this correspondence is attached hereto, Exh. G.

33.     The June 10, 2020 Letter makes no mention of the defense for the Basonas's Cross-Claim. It was only after Plaintiffs' outside counsel inquired, that Evanston's counsel as an afterthought stated, without explanation or coverage analysis, that the withdrawal included defense of the Basonas's Cross-Claim too.

34.     Evanston ignored that it had *twice* stated that the claim was covered and that Exclusion I was inapplicable until there had been an adjudication through a finding by a trier-of-fact of "intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation."

35.     The stated basis for Evanston's June 10, 2020 denial of coverage and withdrawal of payment of defense was the 2017 Stipulation.

**The Relevant Policy Provisions**

36.     The Policy provides for property management services and project management services  and states that Evanston agrees it "shall pay on behalf of the Insured all sums… which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made

against the Insured during the Policy Period…by reason of… a Wrongful Act." Insuring

Agreements Section A of the Policy provides, in part:

> **Coverage A – Real Estate Services and Property Management Services Professional Liability Coverage and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in item 5, of the Declarations, which the insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A, Claim Reporting Provision, by reason of:
>
> 1.     a Wrongful Act; or
> 2.     a Personal injury

37.     As noted above, the Board alleges that FSPM and FSR mixed up bills and repayments and failed to disclose defects and the nature of repair work completed. Definition X of the Policy defines "Wrongful Act" as "any negligent act, error or omission in Real Estate Services or Property Management Services."

38.     Definition B of the Policy defines "claim expenses" to include "reasonable and necessary amounts incurred by… the Insured… in the defense of that portion of any Claim for which coverage is afforded under this policy." The Policy later reiterates under Section A.1 of the heading, "DEFENSE, SETTLEMENTS AND CLAIM EXPENSES" that Evanston "shall have the right and duty to defend any Claim to which coverage under this policy applies."

39.     Limitation of Liability E of the Policy further defines a claim as "[m]ore than one claim arising out of a single Wrongful Act… or series of related Wrongful Acts… All such Claims, whenever made, shall be treated as a single Claim."

Limitation of Liability E of the Policy provides, in full:

> **E.     Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of

Liability stated in Item 4. of the Declarations. More than one Claim arising out of a single Wrongful Act, Personal Injury, Lock Box Event or Fair Housing Act Discrimination or a series of related Wrongful Acts, Personal Injuries, Lock Box Events or Fair Housing Act Discriminations shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act, Personal Injury, Lock Box Event or Fair Housing Act Discrimination is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

40.    The Policy also contained certain exclusions.  The relevant exclusions provide:

**THE EXCLUSIONS**

This policy does not apply to any Claim:

**I.**      based upon, arising out of, or in any way involving:

      **1.**  conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

           **a.**  the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or

           **b.**  Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or . . .

**O.**      based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments or any other thing of value. This exclusion shall apply irrespective of which individuals, party, or organization actually or allegedly committed or caused, in whole or part, the conversion, misappropriation, commingling, defalcation, theft, disappearance, insufficiency in amount;

**No Factual or Legal Basis To Disclaim Coverage and Withdraw Defense**

41.     Defendant has no legal or contractual basis upon which to disclaim coverage and withdrawal from the defense of FSR and FSPM in the Litigation.  The Policy specifically provides coverage for the Litigation, Defendant agreed and did not reserve the right to disclaim coverage.  None of the exclusions are applicable and, in any event, there has been no final adjudication of any of the alleged conduct that might concern any exclusion.   Important, despite knowledge of the Basonas Cross-Claim, Evanston never issued any reservation of rights with respect to the allegations in that pleading.  Where several claims arise from the same set of facts, as they did here with the Basonas Cross-Claim, if any of the claims are covered by the Policy, an insurer has a duty to defend the entire action, including the uncovered claims, if any.

42.     In addition to the foregoing, Defendant waived and is otherwise estopped from asserting any right to disclaim coverage by reason of (a) its ratification of its coverage position on May 30, 2019, (b) its failure to assert any coverage defense based upon the Stipulation for three years, and (c) its failure to address coverage for the Besonas Cross-Claim.  Defendant's continued participation in the defense of the Litigation was a ratification that the Litigation constitutes a covered claim under the Policy for which Plaintiffs are entitled to indemnification and payment of the defense.

43.     Defendant failed to set forth any factual or legal basis in The June 10, 2020 Letter supporting application of Exclusion O or any basis of which it was not previously aware.

44.     Defendant failed to set forth any factual or legal basis supporting the application of Exclusion I nor is there any basis of which it was not already aware five years earlier when it first reviewed the Board's claims against FSR and FPM.

45.     Evanston unreasonably delayed for nearly 3 years in asserting these arguments in The June 10, 2020 Letter.  On July 16, 2020, the State Court denied a request by FSR and FSPM,

among other things, to vacate the Board's Note of Issue or extend the date by which they have to file a motion for summary judgment, a true and correct copy of which is annexed Exh. H]. The Court required certain disclosure from the Board to be completed by July 31, 2020, and ordered the parties to ready the case for trial. As such, the threat by Defendant to withdraw the defense and indemnify Plaintiffs causes them significant prejudice especially as here, on the eve when summary judgment motions and trial preparations are upon defense counsel and Plaintiffs.

46.    Evanston is equitably estopped from asserting any of the arguments it raised in The June 10, 2020 Letter because it agreed to pay for the defense of FSPM and FSR in the Litigation for years despite knowing all the underlying facts. FSPM and FSR detrimentally relied on Evanston's funding in formulating a litigation strategy with defense counsel that Defendant approved and participated in.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Declaratory Judgment – Duty to Indemnify FSR, FSPM's Covered Claim)

47.    Wentworth, FSPM and FSR incorporate each of the foregoing allegations as though fully set forth herein.

48.    There exists an actual controversy between Wentworth, FSPM and FSR, and Evanston that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

49.    Evanston confirmed at the commencement of the Litigation, and for almost a full five years thereafter, that FSR and FSPM's claim was covered.

50.    Under the Policy, Evanston therefore has an obligation to indemnify FSPM and FSR for all amounts for which FSPM and FSR become legally obligated to pay as damages in the Litigation.

51.     Evanston denied or otherwise failed to acknowledge that it is required to or could ever conceivably be required to pay anything to FSPM and FSR in the Litigation.

52.     Wentworth, FSPM and FSR therefore seek a declaratory judgment that FSR and FSP are covered by the Policy and that Evanston is obligated to indemnify FSPM and FSR in connection with the Litigation.

## AS AND FOR A SECOND CLAIM

### (Declaratory Judgment – Duty to Defend FSR and FSPM)

53.     Wentworth, FSPM and FSR incorporate each of the foregoing allegations "1" through "51" as though fully set forth herein.

54.     There exists an actual controversy between Wentworth, FSPM and FSR and Evanston that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

55.     Evanston was obligated the pay for FSPM and FSR's legal defense in the Litigation under the Policy because they are additional named insureds under the Policy and they were joined in the Litigation on April 30, 2020, while the Policy was in effect.

56.     Wentworth, FSPM and FSR timely demanded that Evanston defend them for the claims made against them in the Litigation.

57.     Wentworth, FSPM and FSR have paid the deductible under the Policy and have incurred, and continue to incur, expenses including attorneys' fees and other costs in connection with their own defense in the Litigation and in connection with having been forced to institute this action.

58.     By reason of the foregoing, Wentworth, FSPM and FSR seek a declaration that Evanston must continue to pay for FSPM and FSR's defense. Wentworth, FSPM and FSR also seek a declaration that Evanston must reimburse FSPM and FSR for any unpaid legal defense in

the Litigation incurred on or after August 10, 2020 and before the Court issues this declaration as well as the attorneys' fees, costs and expenses that they have incurred in being forced to bring this action.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Breach of Contract)

59.     Wentworth, FSPM and FSR incorporate each of the foregoing allegations "1" though "51" and "53" through "57" as though fully set forth herein.

60.     Defendant entered into an agreement to insure Wentworth, FSR and FSPM under the Policy effective July 17, 2014 to July 17, 2015, for which Plaintiffs paid the premiums.

61.     Defendant repeatedly stated that the claim under the Policy arising from FSR and FSPM's real estate services and property management services were covered with respect to the Litigation.

62.     Defendant thereby owe a duty to indemnify and defend FSR and FSPM under the Policy.

63.     By withdrawing a defense and indemnification, Defendant Evanston breached its duty as an insurer to FSR and FSPM under the Policy.

64.     Defendant thereby caused and continues to cause Plaintiffs harm from the disruption in trial preparation and to defense counsel who have been involved in the Litigation for over five years.

65.     Defendant has also caused damages to Plaintiffs by refusing to pay (a) defense counsel fees at a critical juncture in the state court litigation or (b) Basonas for "negligent acts, errors or omissions" provided for coverage under the Policy after trial, (c) and the attorneys' fees,

expenses and costs incurred in connection with Defendant's precipitous and improper withdrawal of its obligation to indemnify and defend FSPM and FSR and thereby forced to bring this action.

66.     By reason of the foregoing, Plaintiffs are entitled to recover an amount presently unknown but believed to exceed several millions of dollars, together with attorneys' fees, costs and expenses incurred.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests entry of a Judgment against Defendant as follows:

    a.  A declaration that FSR and FSPM's claim is covered under the Policy;

    b.  A declaration that Evanston must reimburse FSR and FSPM for any unpaid legal defense fees, costs or expenses in the Litigation incurred on or after August 10, 2020, together with appropriate interest;

    c.  A declaration that Evanston must continue to fund FSPM and FSR's legal defense in the Litigation until and unless the trier-of-fact adjudicates FSPM and FSR's conduct to be intentional, willful, dishonest or fraudulent;

    d.  A declaration that Evanston is obligated to indemnify FSPM and FSR in connection with the Litigation;

    e.  Awarding Plaintiffs their attorneys' fees, costs and expenses incurred in this action in defending against Evanston's withdrawal of defense and indemnification in the Litigation and being forced to bring this action together with appropriate interest; and

    f.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United

States Constitution, Plaintiff demands a trial by jury on all triable causes of action.


Dated:   New York, New York
         August 20, 2020

                                    ARENT FOX LLP

                                    By: _____
                                        Elliott M. Kroll
                                        Bernice Leber
                                        Stefan Bogdanovich
                                        1301 Avenue of the Americas,
                                        42nd Floor
                                        New York, New York 10019
                                        Telephone: (212) 484-3900
                                        Facsimile: (212) 484-3990
                                        elliott.kroll@arentfox.com
                                        bernice.leber@arentfox.com
                                        stefan.bogdanovich@arentfox.com

                                    *Attorneys for Plaintiffs*
                                    *The Wentworth Group, Inc.*
                                    *FS Project Management LLC and First*
                                    *Service Residential, New York, Inc.*