UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE WENTWORTH GROUP INC., FS         Case No.: 20-cv-06711(GBD)
PROJECT MANAGEMENT, LLC and
FIRSTSERVICE RESIDENTIAL NEW
YORK, INC.,

                      Plaintiffs,

  -against-

EVANSTON INSURANCE COMPANY,

                      Defendants.

-------------------------------------------------------x

**DEFENDANT EVANSTON INSURANCE COMPANY'S COMBINED MEMORANDUM
OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

KENNEDYS CMK LLP
Attorneys for Defendant
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ........................................................................ii

PRELIMINARY STATEMENT.......................................... .................1

STATEMENT OF FACTS ............................................................................3

    I.    The Underlying Action ....................................................3

    II.    The Evanston Policy ........................................................6

    III.    Evanston's Claims Handling.............................................7

    IV.    The Instant Action and Motions .....................................10

LEGAL ARGUMENT ............................................................................10

    I.   Common-Law Waiver Does Not Apply Here And In Any Event
       Cannot Create Coverage Where None Exists .................................10

       A.  Common-Law Waiver Does Not Apply Here ........................10

       B.  Evanston Has Not Intentionally Relinquished A Known Right ............13

       C.  Plaintiffs' Quasi-Estoppel Arguments Are Without Merit and
          Must Be Rejected.......................................................16

    II.  The Evanston Policy Does Not Provide Coverage For The Claims
       Currently Pending In the Underlying Action..................................19

       A.  No "Wrongful Act" Is Alleged Against The FS Parties As
          Required By The Terms of The Evanston Policy ............................19

       B.  Coverage For FS Residential Is Precluded Under
          Exclusion O.........................................................21

       C.  Plaintiffs' Motion Regarding The Duty To Indemnify
          Motion Must Be Denied................................................23

CONCLUSION..........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                             **Page(s)**

206-208 Main St. Assocs., Inc. v. Arch Ins. Co.,
    *106 A.D.3d 403 (2013)* ................................................................................................ 18

Albert J. Schiff Assocs., Inc. v. Flack,
    *51 N.Y.2d 692 (1980)* ..................................................................................... 10, 11, 17

Allstate Ins. Co. v. Mugavero,
    *79 N.Y.2d 153 (1992)* ................................................................................................ 21

Appell v. Liberty Mut. Ins. Co.,
    *22 A.D.2d 906 (2d Dep't 1964)* ................................................................................ 16

Bankers Multiple Line Ins. Co. v. Pierce,
    *20 F. Supp. 2d 1004 (S.D. Miss. 1998)* .................................................................... 23

Brooklyn Hosp. Ctr. v. Centennial Ins. Co.,
    *258 A.D.2d 491 (2d Dep't 1999)* .............................................................................. 18

Catucci v. Greenwich Ins. Co.,
    *37 A.D.3d 513 (2d Dep't 2007)* ................................................................................ 23

Cincinnati Ins. Co. v. Metro. Properties, Inc.,
    *806 F.2d 1541 (11th Cir. 1986)* ................................................................................ 21

Country-Wide Ins. Co. v. Excelsior Ins. Co.,
    *147 A.D.3d 407 (1st Dep't 2017)* .............................................................................. 23

Cty. of Dutchess v. Argonaut Ins. Co.,
    *150 A.D.3d 672 (2d Dep't 2017)* ........................................................................ 11, 13

Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.,
    *28 A.D.3d 32 (1st Dep't 2006)* ....................................................................... 13, 17, 18

Fid. Nat. Title Ins. Co. of New York v. OHIC Ins. Co.,
    *275 Ga. App. 55 (2005)* ............................................................................................ 23

Gilbert Frank Corp. v. Fed. Ins. Co.,
    *70 N.Y.2d 966 (1988)* ................................................................................................ 13

Globecon Grp., LLC v. Hartford Fire Ins. Co.,
    *434 F.3d 165 (2d Cir. 2006)* ..................................................................................... 13

Hunt Constr. Grp., Inc. v. Berkley Assurance Co.,
  *2020 WL 7046842 (S.D.N.Y. Nov. 30, 2020)* ........................................................... 20

KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.,
  *23 N.Y.3d 583 (2014)* ................................................................................................ 16

Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.,
  *689 F. Supp. 329 (S.D.N.Y. 1988)* ............................................................................ 10

Luria Bros. & Co. v. All. Assur. Co.,
  *780 F.2d 1082 (2d Cir. 1986)* ................................................................................... 16

McKay v. Healthcare Underwriters Mut. Ins. Co.,
  *295 A.D.2d 686 (3d Dep't 2002)* .............................................................................. 17

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Travelers Prop. Cas. Co.,
  *2006 WL 1489243 (S.D.N.Y. May 26, 2006)* ........................................................... 20

Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Travelers Indem. Co.,
  *210 F. Supp. 2d 479 (S.D.N.Y. 2002)* ...................................................................... 10

Netherlands Ins. Co. v. United Specialty Ins. Co.,
  *276 F. Supp. 3d 94 (S.D.N.Y. 2017)* ........................................................................ 11

New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.,
  *2020 WL 5441275 (S.D.N.Y. Sept. 9, 2020)* ............................................................ 13

New York Univ. v. Cont'l Ins. Co.,
  *87 N.Y.2d 308 (1995)* ................................................................................................ 11

Ogden Corp. v. Travelers Indem. Co.,
  *924 F.2d 39 (2d Cir. 1991)* ....................................................................................... 24

Palm Beach Leisureville Cmty. Ass'n, Inc. v. Evanston Ins. Co., Inc.,
  *2019 WL 4731937 (S.D. Fla. July 10, 2019)* ............................................................ 21

Pavarini Const. Co. v. Liberty Mut. Ins. Co.,
  *270 A.D.2d 98 (1st Dep't 2000)* ............................................................................... 24

PNA, L.L.C. v. Interstate Ins. Grp.,
  *2003 WL 21488120 (E.D. La. June 20, 2003)* .......................................................... 23

Provencal, LLC v. Tower Ins. Co. of New York,
  *138 A.D.3d 732 (2d Dep't 2016)* .............................................................................. 11

SPARTA Ins. Co. v. Tech. Ins. Co.,
  2017 WL 4712480 (S.D.N.Y. Sept. 28, 2017) ........................................ 17

State of N.Y. v. AMRO Realty Corp.,
  936 F.2d 1420 (2d Cir. 1991) ............................................................... 16

Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP,
  277 F. Supp. 2d 245 (S.D.N.Y. 2003) .................................................. 13

Touchette Corp. v. Merchants Mut. Ins. Co.,
  76 A.D.2d 7 (4th Dep't 1980) ................................................... 18, 21, 24

Tower Ins. Co. of New York v. Johnson,
  65 Misc. 3d 1225(A) (N.Y. Sup. Ct. 2019) ..................................... 12, 18

Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,
  89 N.Y.2d 308 (1996) ........................................................................... 19

U.S. Fid. & Guar. Co. v. New York Susquehanna & W. Ry. Corp.,
  275 A.D.2d 977 (4th Dep't 2000) ......................................................... 18

U.S. Life Ins. Co. in City of New York v. Blumenfeld,
  92 A.D.3d 487 (1st Dep't 2012) ........................................................... 12

Vecchiarelli v. Cont'l Ins. Co.,
  277 A.D.2d 992 (4th Dep't 2000) ......................................................... 19

Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,
  286 A.D.2d 48 (2d Dep't 2001) ............................................................ 19

Westport Res. Inv. Servs., Inc. v. Chubb Custom Ins. Co.,
  110 F. App'x 172 (2d Cir. 2004) .......................................................... 25

Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.,
  2013 WL 4799265 (S.D.N.Y. Aug. 9, 2013) .................................... 14, 15

## PRELIMINARY STATEMENT

Defendant Evanston Insurance Company ("Evanston")[1] submits this memorandum of law in support of its cross-motion for summary judgment seeking dismissal of the Complaint, and in opposition to the motion for summary judgment filed by Plaintiffs The Wentworth Group Inc., FS Project Management, LLC ("FS Project Management"), and FirstService Residential New York, Inc. (collectively, "Plaintiffs").

In this insurance coverage declaratory judgment action, Plaintiffs challenge a disclaimer issued by Evanston to FS Project Management and FirstService Residential New York, LLC ("FS Residential") (collectively, the "FS Parties"), pursuant to which Evanston informed the FS Parties that it would no longer defend them in an ongoing underlying construction defect action styled The Board of Managers of 325 Fifth Avenue Condominium, et al. v. Continental Residential Holdings LLC, et al., Supreme Court, New York County, Index No. 154764/2012 (the "Underlying Action").[2]

Plaintiffs' primary challenge to the disclaimer is that Evanston allegedly "waived its right to disclaim coverage as a matter of law." However, nothing Evanston is alleged to have done even begins to approach the legal standard that must be met in order to establish waiver. Moreover, Plaintiffs' argument suffers from a basic and fatal defect: under well-settled New York law, in the insurance coverage context, the equitable remedy of waiver cannot create coverage where none

---

[1] At all relevant times, Evanston acted and communicated with the other parties to this litigation through its claim service manager Markel Service, Incorporated. For the sake of ease, the term "Evanston" refers to both Evanston Insurance Company and Markel Service, Incorporated where applicable.

[2] "FirstService Residential New York, Inc." is not named as a defendant in the Underlying Action. That suit instead names "FirstService Residential New York, LLC" as a defendant. This brief is written with the understanding that "FirstService Residential New York, LLC" is intended as a Plaintiff herein, and is the actual entity seeking coverage. Additionally, although The Wentworth Group Inc. is a plaintiff in this suit, it is not named as a defendant in the Underlying Action, and has no independent claim to coverage, warranting dismissal of its claim for this reason alone.

existed in the first place.  Thus, waiver cannot be used to defeat coverage defenses that are based on the insuring grant and/or exclusions contained in an insurance policy—which are precisely the types of coverage defenses Evanston has raised to the FS Parties here.  Thus, Plaintiffs' waiver argument—which they seek to apply solely to the coverage grant in the Evanston Policy (see Pl. Br.,[3] at p. 8 ["Evanston did reserve its rights with respect to [the relevant policy Exclusions] . . ."]), is completely without merit.[4]

Despite the clear weakness of the argument, it is not difficult to see why Plaintiffs have attempted to use waiver as a means for diverting the Court's attention from the merits of their coverage claims; under the plain terms of the relevant policy and well-settled law, Evanston owes no further defense obligation to the FS Parties, nor is it required to indemnify them in connection with the Underlying Action.   The Evanston Policy expressly states that coverage is limited to claims against its insureds for "Wrongful Acts"—i.e., a "negligent act, error or omission in Real Estate Services or Property Management Services."  However, as Plaintiffs acknowledge, the only allegations remaining against the FS Parties are that they breached certain contracts by intentionally and fraudulently "concealing" the existence of serious and life-threatening construction defects at the relevant premises in an effort to "cover-up" those issues (Pl. Br., at p. 16).  This intentional conduct plainly does not constitute a "negligent act, error or omission."

Moreover, as Plaintiffs also concede in their moving brief (id.), the sole remaining allegation against FS Residential—the property manager of the premises where the construction defects arose—plainly alleges that it wrongfully diverted and misused condominium funds in an

---

[3] "Pl. Br." refers to Plaintiffs' January 4, 2021 Memorandum of Law, filed with the Court under ECF doc. no. 24.

[4] The quasi-estoppel and "ratification" arguments included by Plaintiffs to buttress their failing waiver argument are, for similar reasons, wholly meritless.

affirmative effort to conceal defects.  In addition to such actions not qualifying as a "negligent act, error or omission," coverage for such conduct is flatly excluded under the Evanston Policy.

The simple fact is that the Evanston Policy does not provide coverage to the FS Parties for the allegations currently pending against them in the Underlying Action, and therefore, Evanston has no duty to defend or indemnify the FS Parties.  Additionally, no waiver has occurred, and Evanston is entitled to rely on the bargained-for terms and exclusions contained in the policy it issued.  Therefore, Evanston's cross-motion for summary judgment dismissing the complaint should be granted, and the Plaintiffs' motion for summary judgment should be denied in its entirety.

## STATEMENT OF FACTS

### I.     The Underlying Action

The applicable Complaint in the Underlying Action was filed on or about May 1, 2015. (Leber Dec.,[5] Ex. B).  The plaintiffs in that suit—*i.e.*, The Board of Managers of 325 Fifth Avenue Condominium, on its own behalf and on behalf of individual unit owners, and 325 Fifth Avenue Condominium (collectively, the "Condominium")—assert causes of action against various defendants, including the sponsors of the Condominium (the "Sponsor Entities") relating to construction defects at a luxury condominium building located at 325 Fifth Avenue, New York, New York (the "Building").  (Id. at ¶¶ 1-2).

The crux of the Complaint is that the Building, while promoted by the Sponsor Entities as a "super luxury" residence, was riddled with serious and life-threatening defects that the Sponsor Entities, and a "web" of their "faux fiduciaries," sought to fraudulently and intentionally conceal from the Condominium.  (Id. at ¶¶ 1-4).  Two of these "faux fiduciaries" are alleged to be FS

---

[5] "Leber Dec." or "Leber Declaration" refers to the January 4, 2021 Declaration of Bernice K. Leber, filed in support of Plaintiffs' motion at ECF doc. no. 22.

Residential (the Building's residential managing agent), and FS Project Management (a company that was retained to perform project management services at the Building). (Id. at ¶ 4). According to the Complaint, "these faux fiduciaries actively worked with the Sponsor [Entities] to cover-up serious, life-threatening defects that the Sponsor [Entities] were legally obligated to fix," including but not limited to structural defects in the Building's balconies. (Id. at ¶ 5).

Initially, the Condominium asserted multiple causes of action against the FS Parties (id. at p. 42-60); however, by way of a motion to dismiss and a Stipulation of Discontinuance filed in the Underlying Action, all counts against the FS Parties were ultimately dismissed or withdrawn, except for the Condominium's breach of contract claims, and a boilerplate indemnification cross-claim asserted by defendant Canido Basonas Construction Corp. ("Basonas"), which does not assert any facts independent of those alleged in the Condominium's Complaint, and which would apply only if Basonas is held liable to the Condominium for actions of the FS Parties. (Leber Dec., Exs. C, J, L, M, N).

With respect to the lone remaining claim against FS Project Management for breach of contract, the Condominium alleges that FS Project Management made "fraudulent efforts to conceal the existence of known structural defects in the concrete balcony slabs." (Id. at ¶ 90). It is alleged (i) that FS Project Management oversaw the work of Basonas—a contractor that was retained to replace glass panels at the Building's balconies; (ii) that Basonas and FS Project Management almost immediately discovered serious defects in the balconies when this work was performed; and (iii) that after those defects were discovered, Basonas and FS Project Management chose not to investigate them further, and instead worked in a coordinated effort to conceal the existence of the defects from the Condominium. (Id. at ¶¶ 91-93).

It is similarly alleged in the lone remaining count against FS Residential, also for breach of contract, that it engaged in "long-standing efforts to assist the Sponsor [Entities] in concealing the existence of design and construction defects throughout the Building" through its mismanagement of Condominium funds, undertaken to "frustrate the condominium's efforts to uncover the full extent of the construction defects." (Id. at p. ¶¶ 110-11.  It is specifically alleged that FS Residential (i) willfully disregarded an explicit directive from the Condominium to pay consultants that were retained to investigate the existence of construction defects, and that instead—in defiance of the Condominium's directives—FS Residential improperly continued to funnel money to Basonas, the contractor that schemed with FS Project Management to conceal construction defects from the Condominium (id. at ¶¶ 108-109); (ii) diverted portions of a $1 million assessment from Condominium unit owners to the Sponsor Entities (id. at ¶ 111); and (iii) used Condominium funds to pay the bills of other buildings FS Residential managed (id. at ¶ 112).

As for the current posture of the Underlying Action, it is Evanston's understanding that the Condominium has settled with all of the defendants except the FS Parties and Basonas.  (Pl. Br., at p. 6).  A settlement in principle has apparently been reached between the Condominium and Basonas, and the FS Parties have sought discovery relating to that settlement; however, the settlement has seemingly not yet been finalized. (Tricarico Dec.,[6] Ex. A).

The last court appearance in the Underlying Action was held on July 17, 2020, when the FS Parties moved to vacate a Note of Issue filed by the Condominium.  (Id.).  According to the Decision and Order issued by the Court on that date, discovery remains open, as the parties were directed to provide further disclosures, and the court held that "[t]he current deadline to move for summary judgment is within sixty days after the last deposition . . . ," meaning that the FS Parties

---

[6] "Tricarico Dec." refers to the February 12, 2021 Declaration of Michael J. Tricarico, submitted contemporaneously herewith.

have clearly not lost the opportunity to engage in further discovery, or file additional dispositive motions.  (Id.).  Furthermore, the case calendar on the New York State Unified Court System website confirms that there have been no pre-trial conferences or other related appearances since July 17, 2020, and nothing is currently scheduled.  (Tricarico Dec., Ex. B).

Finally, in both their Complaint and the Note of Issue, the plaintiffs in the Underlying Action have requested a jury trial (Leber Dec., Ex. U), and pursuant to a Court notification filed in the Underlying Action on March 19, 2020, "[j]ury selection is postponed as are all civil trials," (Tricarico Dec., Ex. C).  Thus, it is clear that the trial in the Underlying Action will be not be scheduled, or take place, anytime soon.

## II.     The Evanston Policy

Evanston issued Real Estate Services and Property Management Services Professional Liability Insurance Policy no. EO857484 to The Wentworth Group Inc. for the July 17, 2014 to July 17, 2015 policy period, with limits of $5 million per Claim (as defined in the policy), and a $100,000 deductible (the "Evanston Policy").  (Leber Dec., Ex. A).  FS Residential and FS Project Management are Additional Named Insureds under the Evanston Policy.  (Id. at 7).

The Evanston Policy provides coverage for "Damages as a result of a Claim first made against the Insured . . . by reason of . . . a Wrongful Act . . . in the performance of Real Estate Services or Property Management Services."  (Id. at 20).  A "Wrongful Act" is defined as a "negligent act, error or omission in Real Estate Services or Property Management Services." (Id. at 24).

Even if plaintiff could meet its burden of showing the insuring agreement is triggered by the remaining allegations, the Evanston Policy contains Exclusion I, which states that the Evanston Policy does not apply to adjudicated claims based upon, arising out of, or in any way involving

"conduct of the Insured . . . that is intentional, willful, dishonest, [or] fraudulent," or "the gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled. (Id. at *25-26). The Evanston Policy also contains Exclusion O, which states that the policy does not apply to any claim "based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property." (Id.).

### III.    Evanston's Claims Handling

Evanston received notice of the Underlying Action on or about May 7, 2015. (Zupke Dec.,[7] at ¶ 3). On May 8, 2015, Chad Zupke, now a Manager of Professional Liability Claims, had a telephone discussion with Ben Kirschenbaum of FS Residential, who advised that the FS Parties had referred the case to their independent counsel, Mark Beckman, Esq., at the law firm of Gordon & Rees. (Id. at ¶ 3). Mr. Zupke informed Mr. Kirschenbaum that Evanston was undertaking an investigation of coverage for the claim, and would be requesting additional information to aid it in reaching a coverage determination. (Id. at ¶ 4). Thereafter, a letter was sent acknowledging receipt of the claim and stating that "[n]othing in this letter shall be construed as a waiver of any of the rights which EVANSTON INSURANCE COMPANY may have under the policy, nor as an admission of any liability whatsoever of EVANSTON INSURANCE COMPANY to the Insured." (Leber Dec., Ex. F).

Subsequently, Evanston sent multiple communications indicating that it would contribute to the defense of the FS Parties, but only under a reservation of rights. For instance, on June 24, 2015, Mr. Zupke sent separate e-mails to Lisa Kounitz, a representative of Continental Casualty

---

[7] "Zupke Dec." refers to the February 12, 2021 Declaration of Chad Zupke, which is being contemporaneously filed with this memorandum of law.

Company ("Continental"),[8] and Mark Beckman of Gordon & Rees, indicating that Evanston would contribute to the defense of the FS Parties "subject to [a] reservation of rights," and that Evanston would consent to the continued representation of the FS Parties by their independently chosen counsel, Gordon & Rees.  (Leber Dec., Exs. E, H).  The FS Parties were copied recipients of both e-mails.

On August 3, 2015, having completed its preliminary coverage investigation, Evanston issued its formal reservation of rights to the FS Parties.  (Leber Dec., Ex. D).  The letter, sent prior to the dismissal of all of the non-contractual claims (see supra at p. 4), indicated in bold and all capital letters that it was a RESERVATION OF RIGHTS, and contained repeated statements that Evanston was in fact reserving its rights, and not waiving any potential coverage defenses:

> The Company is providing a complete defense under the [Evanston Policy] for all allegations against the Insureds in the Complaint under a reservation of rights to limit or deny payment of damages on various grounds detailed below. . . .
>
> While a defense is being provided to the Insureds in this matter pursuant to the terms of the Policy, it is to be expressly understood that the Company is responsible only according to the terms, limits, and conditions of the Policy. . . .
>
> Evanston further reserves its right to amend or supplement this reservation as further review, investigation and discovery warrant.  The Company also reserves the right to seek reimbursement for Claim Expenses incurred on the Insureds' behalf in defending the Claim should it ultimately be determined that no duty to defend or indemnify existed.  The Company also reserves its right to file a declaratory judgment action at any time to determine its duties of defense or indemnity herein. . . .

(Leber Dec., Ex. D, at p. 2).  The letter went on to outline various specific bases under which Evanston reserved its rights, (see Leber Dec., Ex. D, at p. 11-14), and then finally stated in conclusion that "Evanston reserves all of its rights under the Policy to limit or deny coverage as explained herein," and that Evanston's agreement to assume the FS Parties' defense is made "upon

---

[8] Continental is an insurer that agreed to equally share in the cost of FS Residential's defense in the Underlying Action. (Leber Dec., Ex. D, at p. 13).

the express understanding that it will not be construed as a waiver of any of the rights which the Company may have under the Policy, nor as an admission of any liability whatsoever of the Company to the Insured," (id. at p. 14-15).  Additionally, Evanston again stated in the letter that it consented to the continued representation of the FS Parties in the Underlying Action by their independently chosen counsel, Gordon & Rees.  (Leber Dec., Ex. D, at p. 14).

Thereafter, Gordon & Rees continued handling the defense of the FS Parties, which was initially subject to a $100,000 deductible under the Evanston Policy, which was only fully satisfied with services rendered by Gordon & Rees during the billing period between January and June 2018. (Zupke Dec., at ¶ 12).  Evanston received certain defense reports (Zupke Dec., at ¶ 7), corresponded with defense counsel and/or Ms. Kounitz of Continental (Leber Dec., Exs. I, K, O), and participated in an attempted mediation of the Underlying Action, where settlement was discussed but ultimately could not be reached due to an unreasonable demand from the Condominium, (Leber Dec., Ex. Q; Zupke Dec., at ¶ 8).   However, at no point did Evanston interfere with Gordon & Rees' defense of the Underlying Action; rather, Evanston at all times permitted the FS Parties' independent counsel to exercise their best judgment and provide the best possible defense to the FS Parties.  (Zupke Dec., at ¶ 9).  No attempts were made to alter Gordon & Rees' proposed litigation strategies and Gordon & Rees was never prevented from taking any legal action that it believed was in the best interests of the FS Parties.  (Zupke Dec., at ¶ 10).  In other words, the legal strategy that was undertaken *would have been the same whether or not Evanston ever contributed to the FS Parties' defense*.  (Zupke Dec., at ¶ 11).

The FS Parties were never told that they were being provided with an unqualified defense or that Evanston's reservation of rights was being withdrawn.  In fact, when Mr. Zupke provided a courtesy copy of Evanston's August 3, 2015 coverage position letter to Mr. Kirschenbaum years

later on May 30, 2019, Mr. Zupke expressly stated that the letter was Evanston's "ROR." (Leber Dec., Ex. P).

On June 10, 2020, Evanston, through its coverage counsel, informed Plaintiffs that because the remaining allegations against the FS Parties did not constitute a "negligent act, error or omission," and because policy exclusions barred coverage to the FS Parties, it would be withdrawing its defense of the FS Parties. (Leber Dec., Ex. R).

## IV.    The Instant Action and Motions

On or about August 20, 2020, Plaintiffs commenced the instant action, seeking a declaration that Evanston is obligated to defend and indemnify the FS Parties in connection with the Underlying Action. (Leber Dec. Ex. V). Evanston has answered the Complaint. (Leber Dec., Ex. W). Both Plaintiffs and Evanston now seek summary judgment in their favor. For the reasons stated below, Evanston's cross-motion for summary judgment must be granted, and Plaintiffs' motion for summary judgment must be denied.

## LEGAL ARGUMENT

## I.    COMMON-LAW WAIVER DOES NOT APPLY HERE AND IN ANY EVENT CANNOT CREATE COVERAGE WHERE NONE EXISTS

### A.    Common-law Waiver Does Not Apply Here

The Courts in this Circuit, and the state courts in New York, unanimously recognize that "waiver cannot create coverage where none existed in the first place." See Lone Star Indus., Inc. v. Liberty Mut. Ins. Co., 689 F. Supp. 329, 333 (S.D.N.Y. 1988), citing Albert J. Schiff Assocs., Inc. v. Flack, 51 N.Y.2d 692, 695 (1980); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Travelers Indem. Co., 210 F. Supp. 2d 479, 485 (S.D.N.Y. 2002).

Courts have therefore held that where "the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable."

Albert J. Schiff Assocs., Inc. v. Flack, 51 N.Y.2d 692, 698 (1980); accord Netherlands Ins. Co. v. United Specialty Ins. Co., 276 F. Supp. 3d 94, 108–09 (S.D.N.Y. 2017) (waiver did not apply to bar an insurer from raising coverage defenses based on a policy endorsement); Cty. of Dutchess v. Argonaut Ins. Co., 150 A.D.3d 672, 674 (2d Dep't 2017) ("Waiver . . . does not apply here because 'the failure to disclaim based on an exclusion will not give rise to coverage that does not exist.'"); Provencal, LLC v. Tower Ins. Co. of New York, 138 A.D.3d 732, 734 (2d Dep't 2016) (same holding); New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 323 (1995) ("[C]overage is the net total of policy inclusions minus exclusions, and the failure to disclaim based on an exclusion will not give rise to coverage that does not exist. . . .").

The doctrine of waiver is instead reserved for instances where coverage *does* exist in the first instance, but is forfeited through one or more means, such as the insured's failure to satisfy a condition precedent of the policy, or the rescission of a policy due to the misrepresentations of the insured. See e.g. New York Univ., 87 N.Y.2d at 323. Plaintiffs cannot seriously dispute this point, as the common-law waiver cases they rely on involve precisely these types of coverage defenses.

Here, the coverage defenses that have been raised by Evanston relate exclusively to whether coverage exists under the Evanston Policy in the first instance (*i.e.*, the "the insuring clause and exclusions" of the Evanston Policy), and therefore, waiver simply cannot apply here. As discussed in greater detail infra, Evanston's bases for disclaiming coverage are that (i) the remaining allegations against the FS Parties do not allege a "Wrongful Act" (as that term is defined in the Evanston Policy) as required to trigger the insuring agreement; (ii) coverage would otherwise be excluded for any intentional or fraudulent conduct pursuant to Exclusion I in the Evanston Policy; and (iii) with respect to FS Residential specifically, its alleged diversion and misappropriation of Condominium funds is excluded from coverage pursuant to Exclusion O,

which bars coverage for, *inter alia*, such alleged misuse of funds.[9]  Plaintiffs' waiver argument fails as a matter of law, and does not prevent Evanston from relying upon the terms and exclusions of the Evanston Policy to deny coverage.  In fact, with respect to the exclusions, Plaintiffs concede that "Evanston did reserve its rights"  (Pl. Br., at p. 8), thus limiting their proposed waiver application solely to the insuring terms of the Evanston Policy.

Undeterred, the Plaintiffs seek to bolster their waiver argument by asserting that Evanston "ratified" an agreement to defend or indemnify the Plaintiffs, citing U.S. Life Ins. Co. in City of New York v. Blumenfeld, 92 A.D.3d 487, 488 (1st Dep't 2012).  This argument, however, is based upon a profound mischaracterization of the concept of ratification, and is without support from the applicable case law.  The rule stated in Blumenfeld relates solely to issues of contract formation (rather than interpretation), and peculiarly arises in the area of policy rescission.  Essentially, the rule is that an insurer, which has knowledge of a material misrepresentation from the insured in the underwriting process, may not continue to accept premiums from the insured and delay in raising the issue of rescission, and then later attempt to avoid its coverage obligations by arguing that the policy is *void ab initio*.

Evanston is not disputing that its claims made policy was in effect as of the date of the claim brought against the FS Parties; to the contrary, it seeks to enforce the very terms of that policy.  Thus, Blumenfeld and its progeny (and the concept of "ratification" that they stand for) are of absolutely no relevance to this dispute.  See generally Tower Ins. Co. of New York v. Johnson, 65 Misc. 3d 1225(A), 119 N.Y.S.3d 702 (N.Y. Sup. Ct. 2019) (holding Blumenfeld was irrelevant where insurer disclaimed pursuant to terms of the policy, and policy rescission was not at issue).

---

[9] Evanston also reserved its right to raise other policy exclusions, and continues to reserve that right, as the Underlying Action remains ongoing.

B.     <u>Evanston Has Not Intentionally Relinquished A Known Right</u>

Even if the doctrine of common-law waiver were somehow applicable here (and as discussed <u>supra</u>, it is not), Evanston plainly did not waive any coverage defenses. Waiver is defined under New York law as the "voluntary and intentional relinquishment of a known right." <u>See</u> <u>e.g.</u>, <u>Cty. of Dutchess v. Argonaut Ins. Co.</u>, 150 A.D.3d 672, 674, 54 N.Y.S.3d 78 (2017). Courts applying New York law have held that a "waiver of rights under a contract 'should not be lightly presumed,'" <u>Globecon Grp., LLC v. Hartford Fire Ins. Co.</u>, 434 F.3d 165, 176 (2d Cir. 2006), <u>quoting</u> <u>Gilbert Frank Corp. v. Fed. Ins. Co.</u>, 70 N.Y.2d 966 (1988), and therefore "a party seeking to demonstrate waiver must put forward evidence of a 'clear manifestation of intent' to waive by the other party," <u>id.</u>  Moreover, "[w]hen an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred." <u>Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP</u>, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003), <u>aff'd</u>, 108 F. App'x 663 (2d Cir. 2004); <u>see</u> <u>also</u> <u>New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.</u>, 2020 WL 5441275, at *7 (S.D.N.Y. Sept. 9, 2020).

Importantly, this principle applies even where an insurer later seeks to raise a ground for denying coverage not specified within its initial coverage position letter. <u>See</u> <u>id.</u> (waiver inapplicable "even when an insurance company disclaims coverage on one basis but does not assert, until later, another basis for disclaimer"); <u>Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.</u>, 28 A.D.3d 32, 37–38, 807 N.Y.S.2d 62, 67 (1st Dep't 2006) (same holding); <u>Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.</u>, 2013 WL 4799265, at *4 (S.D.N.Y. Aug. 9, 2013) (same holding).

Here, Plaintiffs concede that the Complaint was filed on May 1, 2015, (Leber Dec., at ¶ 4), and while Plaintiffs describe Evanston's subsequent communications with the Plaintiffs as

acknowledgments and "reaffirm[ations]" of coverage, this is a gross mischaracterization of what actually occurred.  Evanston repeatedly reserved its rights to disclaim coverage, effectively mooting any waiver or estoppel argument.  The May 7, 2015 acknowledgment letter to Plaintiffs, the June 24, 2015 e-mail to Continental, the June 24, 2015 e-mail to Gordon & Rees, the August 3, 2015 reservation of rights letter, and all other relevant communications *expressly and repeatedly stated* that the FS Parties' defense was being undertaken pursuant to a reservation of rights, and that Evanston did not waive any rights it had under the Evanston Policy.  (Leber Dec., Exs. D, E, F, H, P).

It is simply implausible that *any* reasonable person, much less the sophisticated Plaintiffs seeking coverage in this action, could possibly misconstrue the express and repeated reservations from Evanston as a waiver of *any* rights it might have under the Evanston Policy.  Likely recognizing this, Plaintiffs overcompensate by throwing every minute coverage-related communication against the proverbial wall in the hopes that something will stick.  For instance, Plaintiffs allege that Evanston waived its right to raise the terms of Coverage A (*i.e.*, the definition of a Wrongful Act) as a basis for disclaiming coverage, merely because Evanston's August 3, 2015 reservation of rights letter indicated that the allegations against the FS Parties as they existed at the time—which would later be drastically pared down in the coming years (see Leber Dec., Exs. M, N)—triggered Evanston's duty to defend.  (Leber Dec., Ex. D, at p. 12).

Of course, even if Evanston could waive its right to rely on the insuring grant of its policy (and it cannot), this statement in Evanston's letter cannot possibly meet the high burden required to establish a waiver under New York law.  Moreover, in that same letter, Evanston expressly reserved its right to amend or supplement its coverage position, stated that Evanston was "responsible only according to the terms, limits, and conditions of the Policy," and further stated

that the FS Parties' defense was being provided with "the express understanding that it will not be construed as a waiver of any of the rights which [Evanston] may have under the Policy, nor as an admission of any liability whatsoever of [Evanston] to the Insured." (Leber Dec., Ex. D, at p. 2, 14-15). Simply put, Evanston's August 3, 2015 is not a waiver of any rights whatsoever.

Plaintiffs offer other totally unfounded arguments purporting to establish a waiver, each further straining credulity. For instance, Plaintiffs argue that Chad Zupke's inclusion as a recipient of a December 14, 2018 e-mail from the FS Parties' defense counsel seeking Evanston's approval for a court-mandated insurance disclosure somehow evidences a waiver. (Leber Dec., Ex. O). However, even the FS Parties' *own independent counsel* knew that the defense was not absolute, as the drafted disclosure states that the Evanston Policy "*may* provide coverage relating to the claims in this matter in whole *or in part*." (Id. [emphasis added]). Plaintiffs also point to a snapshot, purportedly from "Markel's" website, which indicates that under certain circumstances, professional liability insurance may cover contractual liability. (Leber Dec., Ex. T). But, of course, Plaintiffs cannot seriously contend that a general statement made on a website that speaks to every type of coverage issued by all Markel Corporation owned insurance companies as to what type of coverage may be offered to different kinds of professionals has any bearing whatsoever on Evanston's coverage obligations, which are dictated solely by the express terms of the Evanston Policy itself. Finally, Plaintiffs state that waiver should apply here because Evanston was involved in the defense of the FS Parties. (Pl. Br., at p. 12-13). However, these arguments, which actually sound in estoppel (see infra at p. 16-19), are unavailing and irrelevant to the issue of waiver.

Finally, the cases cited by Plaintiffs do not support their arguments, as they discuss coverage defenses that are actually waivable (such as late notice and rescission), and involved completely inapplicable factual and legal circumstances. In Luria Bros. & Co. v. All. Assur. Co.,

780 F.2d 1082 (2d Cir. 1986) for instance, the court held that a rescission claim could be waived, and there was no mention of whether the insurer reserved its rights.   State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420 (2d Cir. 1991) involved a late notice defense, and the court there expressly stated that it was *not* addressing an instance where the insurer expressly reserved its rights.  See id.("we do not address here the case where the insurer's disclaimer of coverage based on specified grounds is accompanied by an express and unequivocal statement that other grounds for disclaimer are reserved and not waived").  And Appell v. Liberty Mut. Ins. Co., 22 A.D.2d 906 (2d Dep't 1964) dealt with a late notice defense, *and* involved the application of the predecessor statute to Insurance Law § 3420(d)(2), which expressly applies only to actions for bodily injury. See e.g., KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc., 23 N.Y.3d 583, 590 (2014) ("By its plain terms, section 3420(d)(2) applies only in a particular context: insurance cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy.").  In sum, none of the authorities cited by Plaintiffs could possibly support a finding of waiver here.

      C.     Plaintiffs' Quasi-Estoppel Arguments Are Without Merit And Must Be Rejected

      As noted above, Plaintiffs do not assert a formal estoppel argument (for good reason, as that doctrine does not apply).  Nonetheless, Plaintiffs reference case law addressing estoppel and make arguments that sound in estoppel (*i.e.*, that Evanston should be precluded from disclaiming because of its supposed "control" of the FS Parties' defense).  To the extent the Court considers the doctrine of estoppel, these arguments must similarly be rejected.

      First, estoppel applies only where an insurer, "without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense."  Albert J. Schiff Assocs., Inc.

v. Flack, 51 N.Y.2d 692, 699 (1980).  Just as an insurer's reservation of rights nullifies a later argument of waiver, it also nullifies a later argument that an insured detrimentally relied on the insurer's defense.  See supra Federated Dept. Stores, Inc., 28 A.D.3d at 37-38; see also McKay v. Healthcare Underwriters Mut. Ins. Co., 295 A.D.2d 686, 688 (3d Dep't 2002).  Plaintiffs likely recognize this, as they cite SPARTA Ins. Co. v. Tech. Ins. Co., 2017 WL 4712480 (S.D.N.Y. Sept. 28, 2017), where estoppel was found because an insurer provided a defense "without disclaiming coverage or reserving its right to later disclaim coverage."  Id. at *5.  Here, Evanston repeatedly and clearly reserved its rights to disclaim coverage, and the FS Parties could not possibly have detrimentally relied on the defense provided by Evanston.

Second, it is well-settled that "estoppel will lie only if the insured has demonstrated prejudice by the insurer's actions," and that prejudice is not presumed merely because an insurer controlled the defense of its insured.  See e.g., Federated Dep't Stores, Inc., 28 A.D.3d at 39. Plaintiffs cannot contend that Evanston ever actually "controlled" the FS Parties' defense, given that Evanston expressly permitted the FS Parties to be represented by their independent counsel and never interfered with that defense at any point.  (Zupke Dec., at ¶ 9); see also Federated Dep't Stores, Inc., 28 A.D.3d at 39 (no estoppel where, *inter alia*, the same firm represented the insureds prior to the time the insurer picked up their defense, and after the insurer disclaimed coverage). Moreover, Plaintiffs merely allege that Evanston participated in the defense of the FS Parties by receiving defense reports (Pl. Br., at p. 6), occasionally asking for copies of litigation documents, such as the reply papers that the FS Parties' defense counsel prepared on the largely successful motion to dismiss that was filed in the Underlying Action (id.), and participating in mediation (id. at p. 7).  Inasmuch as these are all things that *benefit* the FS Parties, no prejudice has been shown,

and there is no basis for estoppel.  See Federated Dep't Stores, Inc., 28 A.D.3d at 39 (holding that substantially similar conduct did not support an estoppel argument).

Relatedly, even if Evanston had exercised any control over the FS Parties' defense, it is well-settled that estoppel will only apply where "the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." 206-208 Main St. Assocs., Inc. v. Arch Ins. Co., 106 A.D.3d 403 (2013).  As the very cases cited by Plaintiffs demonstrate, prejudice is generally only found in extreme instances where an insurer attempts to disclaim coverage and leave the insured to its own devices at an irreversible point in the litigation, such as on the eve of trial.  Touchette Corp. v. Merchants Mut. Ins. Co., 76 A.D.2d 7, 12 (4th Dep't 1980) ("[T]here can be no prejudice to the insured by the insurer's disclaimer. . . . The case is not yet on the Trial Calendar and apparently it is not ready for trial."); see also Brooklyn Hosp. Ctr. v. Centennial Ins. Co., 258 A.D.2d 491, 492 (2d Dep't 1999); U.S. Fid. & Guar. Co. v. New York Susquehanna & W. Ry. Corp., 275 A.D.2d 977 (4th Dep't 2000).  As discussed supra at p. 5-6, further discovery was ordered at the last hearing in the Underlying Action, no further appearances are scheduled, and due to COVID-19 concerns, jury trials are effectively stayed.  Thus, Plaintiffs clearly cannot satisfy the necessary prejudice requirement for a finding of estoppel.

What Plaintiffs' argument truly boils down to is that Evanston—supposedly—should be barred from raising valid coverage defenses because it delayed in disclaiming coverage to the Plaintiffs for several years.   However, it is well settled that in the absence of any demonstrable prejudice, a "delay in giving notice of [a] disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim . . . ." Vecchiarelli v. Cont'l Ins. Co., 277 A.D.2d 992, 992 (4th Dep't 2000).  Thus, any alleged delay in disclaiming here is wholly immaterial.  Moreover, in reality, Evanston acted reasonably at all times.  In considering the totality of the allegations against the FS

Parties, Evanston protected the interests of its insureds, contributed to their defense subject to an express reservation of rights after the $100,000 deductible was satisfied (which occurred years after the Underlying Action was commenced), and sought to disclaim only after the allegations were narrowed down to purely intentional breaches of contract, that are plainly not a covered Claim as defined in the Evanston Policy.

## II.   THE EVANSTON POLICY DOES NOT PROVIDE COVERAGE FOR THE CLAIMS CURRENTLY PENDING IN THE UNDERLYING ACTION

### A.   No "Wrongful Act" Is Alleged Against The FS Parties As Required By The Terms Of The Evanston Policy

Turning to the substance of Plaintiffs' coverage claim, it is well-settled that "[w]here the terms of an insurance policy are clear and unambiguous, interpretation of those terms is a matter of law for the court." Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 89 N.Y.2d 308, 316 (1996). Pursuant to the terms of the Evanston Policy, Evanston and the FS Parties agreed that coverage would potentially be afforded only for a Claim alleging a "Wrongful Act"— i.e., a "negligent act, error or omission"—against those parties.  (Leber Dec., Ex. A, at p. 20, 24 [emphasis added]).

This policy language is consistent with the well-settled principle that "[e]rrors and omissions policies generally provide coverage for acts of negligence and do not insure against intentional acts." Watkins Glen Cent. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 286 A.D.2d 48, 51 (2d Dep't 2001).   This Court has consistently held that the specific insuring language used here does not provide coverage for intentional conduct, such as attempts to conceal facts, Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Travelers Prop. Cas. Co., 2006 WL 1489243 (S.D.N.Y. May 26, 2006) (no "negligent acts, errors, or omissions" alleged, and therefore no coverage under an insured's employment benefits policy, where the insured allegedly schemed

19

deliberately to induce individuals into accepting employment with a particular entity, and concealed facts relating to the employees' benefits), or the deliberate failure to make payments under a contract, Hunt Constr. Grp., Inc. v. Berkley Assurance Co., 2020 WL 7046842 (S.D.N.Y. Nov. 30, 2020) (no coverage under professional liability policy for breach of contract claims against contractor, since the claims "stem[med] from [the insured's] intentional nonpayment of subcontractors" and not any negligence).

Here, the only remaining factual allegations against the FS Parties (which are gleaned solely from the Complaint in the Underlying Action, since the Basonas cross-claim does not assert any facts independent of those stated in the Complaint [Leber Dec., Ex. C]) are for intentionally harmful acts purportedly in breach of their applicable contracts.  As discussed in greater detail supra, both of the FS Parties are alleged to be "faux fiduciaries" that were retained by the Sponsor Entities in order to help conceal the existence of defects in the Building from the Condominium, and it is alleged that "these faux fiduciaries actively worked with the Sponsor . . . to cover-up serious, life-threatening defects that the Sponsor [was] legally obligated to fix." (Id. at p. 4-5).  FS Project Management purportedly accomplished this as part of a scheme to conceal defects it was aware of in the Building's balconies, and FS Residential allegedly achieved this through a similar scheme to intentionally mismanage Condominium funds (for example, by diverting funds away from the investigative contractors that might have discovered the defects, while paying Basonas, the contractor who was allegedly working in concert with FS Project Management to help conceal the defects, against the wishes of the Condominium).  (Id. at ¶¶ 90-93, 108-12).

Plaintiffs make no serious effort to explain how any of this conduct could possibly be characterized as "negligent,"[10] and instead attempt to obfuscate the issue by citing a single case

---

[10] Plaintiffs almost completely sidestep this point, other than to unilaterally characterize the allegations against the FS Parties as "negligent failures to perform" (which is not what is alleged in the  Underlying Action Complaint), and by

that they believe to be "dispositive": <u>Touchette Corp. v. Merchs. Mut. Ins. Co.</u>, 76 A.D.2d 7 (4th

Dep't 1980).   In <u>Touchette</u>, a case decided approximately forty years ago by the Appellate

Division, Fourth Department (the Underlying Action is pending in New York County, which is in

the First Department), the court merely held that, where a breach of contract action arises from

purely negligent conduct, it may still be potentially covered notwithstanding the fact that the actual

negligence claims have been dismissed.   <u>Id.</u>   However, <u>Touchette</u> plainly did not deal with the

coverage issue before the Court here, which is whether a breach of contract claim arising from

*intentional* (rather than *negligent*) conduct could be considered a "negligent act, error or

omission"—particularly the alleged fraudulent scheme to cover up life threatening defects.

Clearly, based upon the plain language of the Evanston Policy, and the well-settled authority cited

by Evanston (<u>see</u> <u>supra</u> at p. 19-20), it cannot be, and Plaintiffs have cited no other authority

warranting a finding of coverage under the Evanston Policy.[11]

B.     Coverage For FS Residential Is Precluded Under Exclusion O

Exclusion O of the Evanston Policy precludes coverage for claims "based upon or arising

out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft,

---

pointing to the boilerplate cross-claim asserted by Basonas in the Underlying Action against all parties, which does not allege any additional facts independent of those alleged in the Complaint, and therefore does not trigger the duty to defend absent allegations in the Underlying Action Complaint creating that duty.  (Pl. Br., at p. 17, 21-22).  Even if any of the conclusory allegations in the Underlying Action (including the cross-claim) could be construed as "negligence" when looked at in a vacuum, it is beyond cavil that an insurer's coverage obligation "depends on the facts which are pleaded, not the conclusory assertions."  <u>Allstate Ins. Co. v. Mugavero</u>, 79 N.Y.2d 153, 162 (1992).  The allegations against the FS Parties here strictly arise from their efforts to actively and fraudulently conceal life-threatening defects in the Building, and not from any alleged negligence on their part.

[11] Plaintiffs argue that <u>Touchette</u>, and two other out-of-state courts have reached a similar conclusion and held that breach of contract claims arising from purely negligent conduct may be covered under a professional liability policy. (Pl. Br., at p. 21).  However, even if the holding in <u>Touchette</u> was as broad as Plaintiffs contend it is (and it is not), a number of courts have held that policies like the one at issue do not provide coverage for breach of contract claims under any circumstances.  <u>See e.g.</u> <u>Cincinnati Ins. Co. v. Metro. Properties, Inc.</u>, 806 F.2d 1541, 1544 (11th Cir. 1986); <u>Palm Beach Leisureville Cmty. Ass'n, Inc. v. Evanston Ins. Co., Inc.</u>, 2019 WL 4731937, at *4 (S.D. Fla. July 10, 2019).

disappearance, insufficiency in the amount . . . of funds." (Leber Dec., Ex. A, at p. 26). Here, there is no question that the claims against FS Residential arise strictly from these precise activities.

FS Residential is accused of misusing Condominium funds in conjunction with its "long-standing efforts to assist the Sponsor in concealing the existence of design and construction defects throughout the Building." (Leber Dec., Ex. B, at p. 40). Specifically, FS Residential, a "faux fiduciary" of the Sponsor Entities: (i) declined to remit payments of condominium funds to contractors that were hired to discover the very defects that FS Residential was seeking to conceal (Leber Dec., Ex. B, at ¶ 108); (ii) continued to funnel money to Basonas, the contractor that FS Residential acted in concert with to conceal Building defects, in direct contravention of the Condominium's directives (Leber Dec., Ex. B, at ¶ 109); (iii) diverted a portion of a $1 million assessment to the Sponsor Entities (Leber Dec., Ex. B, at ¶ 111); and (iv) used Condominium funds to pay the bills of other buildings that FS Residential managed (Leber Dec., Ex. B, at ¶ 112).

These allegations, and others, which essentially amount to accusations of theft of the Condominium's funds, easily fall within one or more of the excluded categories of conduct outlined in Exclusion O, including (i) conversion, which is generally defined as "a civil wrong (tort) in which one converts another's property to his/her own use";[12] (ii) misappropriation, which is generally defined as the intentionally wrongful misuse of another's property;[13] (iii) commingling, which is generally defined as the "act of mixing the funds belonging to one party with those of another party";[14] and/or (iv) defalcation, which is generally defined as the

---

[12] See https://legal-dictionary.thefreedictionary.com/conversion.

[13] See https://legal-dictionary.thefreedictionary.com/misappropriation (identifying the definition of the term "misappropriation" to mean "the intentional, illegal use of the property or funds of another person for one's own use or other unauthorized purpose . . . or by any person with a responsibility to care for and protect another's assets (a fiduciary duty)."); https://www.law.cornell.edu/wex/misappropriation (defining "misappropriation" as "[t]he unauthorized, improper, or unlawful use of funds or other property for purposes other than that for which intended.").

[14] See https://legal-dictionary.thefreedictionary.com/commingling.

"misappropriation or embezzlement of money." [15]   Where, as here, a policy exclusion unambiguously bars coverage for an underlying action, it must be enforced as written.   See e.g. Catucci v. Greenwich Ins. Co., 37 A.D.3d 513, 514 (2d Dep't 2007).   Other than the conclusory, ipse dixet assertions of Plaintiffs' counsel, no argument is made as to why Exclusion O should not apply here.   Nor could one be made, as various courts have enforced such exclusions and barred coverage to insureds that allegedly misappropriated funds.   See e.g. Bankers Multiple Line Ins. Co. v. Pierce, 20 F. Supp. 2d 1004, 1008 (S.D. Miss. 1998); PNA, L.L.C. v. Interstate Ins. Grp., 2003 WL 21488120 (E.D. La. June 20, 2003); Fid. Nat. Title Ins. Co. of New York v. OHIC Ins. Co., 275 Ga. App. 55, 59, 619 S.E.2d 704, 707 (2005).

Plaintiffs' sole basis for arguing that Exclusion O does not apply is that "the Complaint does not allege *causes of action* for conversion, misappropriation, commingling, damages to tangible property, and the like against FS."  (Pl. Br., at p. 8).   However, the obvious flaw with Plaintiffs' argument, among the many others, is that Exclusion O does not apply solely to *causes of action* for misappropriation—rather, it applies to any Claim *arising out of* any misappropriation—a term of art that is given significant breadth under New York law.   Country-Wide Ins. Co. v. Excelsior Ins. Co., 147 A.D.3d 407 (1st Dep't 2017) ("In the context of a policy exclusion, the phrase arising out of is unambiguous, and is interpreted broadly to mean 'originating from, incident to, or having connection with.'").   As Plaintiffs do not otherwise dispute the plain meaning or impact of the exclusion, their arguments must be rejected.

C.    Plaintiff's Motion Regarding The Duty To Indemnify Motion Must Be Denied

As previously discussed, Evanston has no duty to defend the FS Parties in the Underlying Action, and therefore, it has no duty to indemnify them either.   Ogden Corp. v. Travelers Indem.

---

[15] https://legal-dictionary.thefreedictionary.com/Defalcation.

Co., 924 F.2d 39, 42 (2d Cir. 1991) (where "there is no duty to defend, there also is no corresponding duty to indemnify").  Thus, the Court must grant summary judgment in favor of Evanston, dismissing Plaintiffs' Complaint.  However, should the Court somehow find against Evanston regarding the duty to defend, and deny its cross-motion, the Court must still deny the portion of Plaintiffs' motion that seeks indemnification under the Evanston Policy as a matter of law.

Plaintiffs certainly cannot credibly argue at this juncture that the provisions discussed supra, will not ultimately bar coverage to the FS Parties as a matter of law.  Evanston's duty to indemnify, if any, is dependent upon liability findings in the yet to be resolved Underlying Action, and therefore a ruling here requiring Evanston to indemnify the FS Parties would be premature.  See generally Touchette Corp. v. Merchants Mut. Ins. Co., 76 A.D.2d 7, 12 (4th Dep't 1980) ("Whether there is a policy obligation to indemnify Touchette on CSEA's claim will have to await the outcome of that action."); Pavarini Const. Co. v. Liberty Mut. Ins. Co., 270 A.D.2d 98, 99 (1st Dep't 2000) (ruling on the duty to indemnify was premature where the applicability of a policy provision hinged on a liability determination in the underlying action).  Furthermore, while the parties have exchanged some paper discovery in this suit, no depositions or other discovery has taken place, and for this reason as well, a ruling on indemnity would be premature.  (Tricarico Dec., at ¶ 6).  See also Fed. R. Civ. P. Rule 56(d)(2).

Additionally, Exclusion I precludes coverage for conduct arising out of an insured's conduct that is "intentional, willful, dishonest or fraudulent," provided that there has been adjudication on such conduct by a trier-of-fact.  (Leber Dec. Ex. A, at p. 25).  If the claims asserted by the plaintiffs in the Underlying Action prove to be true, this exclusion will undoubtedly bar coverage to the FS Parties.  Under these circumstances, it cannot be said that the exclusion does

not apply as a matter of law, and indeed, Plaintiffs do not even attempt to argue as much.  Plaintiffs

merely assert that "[t]o date no 'adjudication' regarding FS's liability has occurred."  (Pl. Br., at

p. 8).  In other words, Plaintiffs do not argue that Exclusion I does not apply—they simply argue

that it does not apply *right now*.

Therefore, regardless of how it rules on any of the other coverage issues, the Court should,

at a minimum, deny the branch of Plaintiffs' motion that seeks indemnification from Evanston.

See e.g. Westport Res. Inv. Servs., Inc. v. Chubb Custom Ins. Co., 110 F. App'x 172, 174 (2d Cir.

2004) (similar intentional acts exclusion applied where it was clear that the claims at issue arose

from fraudulent conduct).

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court grant Evanston's cross-

motion for summary judgment dismissing the case, deny Plaintiffs' motion for summary judgment,

and grant Evanston such other and further relief as the Court deems just and proper.

Dated: New York, New York
        February 12, 2021

KENNEDYS CMK LLP

        /s/ Michael J. Tricarico
Michael J. Tricarico
Thomas C. Kaufman
*Attorneys for Defendant Evanston Insurance
Company*
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004