UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE WENTWORTH GROUP INC., FS
PROJECT MANAGEMENT, LLC and
FIRSTSERVICE RESIDENTIAL NEW
YORK, INC.,

                              Plaintiffs,

          -against-

EVANSTON INSURANCE COMPANY,

                              Defendant.

Civil Action No. 20-cv-06711 (GBD) (JLC)

---

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56.1

Pursuant to Local Rule 56.1(b), Plaintiffs The Wentworth Group Inc., FS Project Management LLC , and FirstService Residential New York, Inc. (collectively, unless specified individually, referred to as "FS") hereby responds to Defendant Evanston Insurance Company's[1] Statement of Undisputed Facts submitted in support of its Cross-Motion for Summary Judgment as follows:

**I.      The Underlying Action**

1.      The action presently before the Court involves Evanston's alleged insurance coverage obligations, or lack thereof, to FS Project Management, LLC ("FS Project Management") and FirstService Residential New York, LLC ("FS Residential") (collectively, the

---

[1]  As provided in Defendant's Statement of Undisputed Facts, at all relevant times, Evanston acted and communicated with the other parties to this litigation through its claim service manager Markel Service, Incorporated. As in Defendant's Statement of Undisputed Facts, the term "Evanston" refers to both Evanston Insurance Company and Markel Service, Incorporated where applicable.

"FS Parties") with respect to an underlying lawsuit styled <u>The Board of Managers of 325 Fifth Avenue Condominium, et al. v. Continental Residential Holdings LLC, et al.</u>, Supreme Court, New York County, Index No. 154764/2012 (the "Underlying Action").  (Leber Dec.,[2] Ex. W).

**RESPONSE:**     Admit.

2.     The entity referred to as FirstService Residential New York, Inc. in this action appears to have mistakenly been named as a plaintiff herein, inasmuch as that entity is not a defendant in the Underlying Action (<u>see</u> Leber Dec., Ex. B), or an insured under the relevant insurance policy issued by Evanston (<u>see</u> Leber Dec., Ex. A).

**RESPONSE:**     Deny.  The Court is respectfully referred to the Order dated June 27, 2016 of Justice Kelly O'Neill Levy in the Underlying Action finding that FirstService Residential New York, Inc. is the proper defendant ("First Service Residential New York Inc. i/s/h/a [improperly sued herein as] First Service Residential New York LLC") and the July 17, 2014 Amendatory Endorsement in the Policy.  (Exs. L at 3, X).[3]

3.     The Wentworth Group Inc., a plaintiff in this action, is not named as a defendant in the Underlying Action. (Leber Dec., Ex. B).

**RESPONSE:**     Admit and state that The Wentworth Group Inc. is the insured under the Evanston Insurance Policy and an interested party named in this action.

4.     The Complaint in the Underlying Action was filed on or about May 1, 2015. (Leber Dec., Ex. B).

**RESPONSE:**     Admit.

---

[2]  "Leber Dec." refers to the January 4, 2021 Declaration of Bernice K. Leber, filed in support of Plaintiffs' Motion for Summary Judgment (ECF Doc. No. 22/30).

[3]  Unless otherwise described, the exhibits referenced in the Responses herein are attached to the January 24, 2021 Declaration of Bernice K. Leber or the March 9, 2021 Reply Declaration of Bernice K. Leber.

5.     The plaintiffs in the Underlying Action—i.e., The Board of Managers of 325 Fifth Avenue Condominium, on its own behalf and on behalf of individual unit owners, and 325 Fifth Avenue Condominium (collectively, the "Condominium")—assert causes of action against various defendants, including the sponsors of the Condominium (the "Sponsor Entities") relating to construction defects at a luxury condominium building located at 325 Fifth Avenue, New York, New York (the "Building").  (Id. at ¶¶ 1-2).

**RESPONSE:**     Admit that the sponsors of the Building are alleged to have been responsible for construction defects and state that neither FirstService Residential New York, Inc. nor FS Property Management, LLC, which provided real estate management and property management services to the Building, were involved in the construction of the Building and are not alleged to or responsible for construction defects at the Building.  (See Ex. B, Complaint).

6.     The crux of the Complaint is that the Building, while promoted by the Sponsor Entities as a "super luxury" residence, was riddled with serious and life-threatening defects that the Sponsor Entities, and a "web" of their "faux fiduciaries," sought to fraudulently and intentionally conceal from the Condominium.  (Id. at ¶¶ 1-4).

**RESPONSE:**     See Response to # 5 incorporated here.  While the quotes above are admittedly taken by ellipsis from the original Complaint, the Supreme Court decision dated June 27, 2016 (Ex. L), affirmed by the Appellate Division in 2017 (Ex. M), finally determined that FS were not "faux fiduciaries" of the Sponsor Entities and dismissed the breach of fiduciary duty cause of action against them.  The Supreme Court, as affirmed, also determined that the allegations supporting the other intentional torts to which the allegations of "web" of their "faux fiduciaries" apply, were not actionable against FS, and dismissed them from the Underlying Action over 5 years ago.  In 2017, the aiding and abetting claim alleged against FS was

dismissed with prejudice (Ex. N).  Therefore, Evanston's disclaimer in June 2020 is based upon allegations and claims that were dismissed five years go.  The only remaining causes of action against FS are for breach of contract and there are no allegations contained in the 9th and 12th claims that FS intentionally breached their respective contracts with plaintiffs.

7.      Two of these "faux fiduciaries" are alleged in the Complaint to be FS Residential (the Building's residential managing agent), and FS Project Management (a company that was retained to perform project management services at the Building).  (Id. at ¶ 4).

**RESPONSE:**      Admit that is what the Complaint originally alleged, but these allegations were dismissed in 2016, and the Court is respectfully referred to Responses ## 5, 6 incorporated here.

8.      According to the Complaint, "these faux fiduciaries actively worked with the Sponsor [Entities] to cover-up serious, life-threatening defects that the Sponsor [Entities] were legally obligated to fix," including but not limited to structural defects in the Building's balconies.  (Id. at ¶ 5).

**RESPONSE:**      Admit that is what the Complaint originally alleged, but the tort claims upon which these allegations were made were dismissed in 2016, and the Court is respectfully referred to Responses ## 5, 6 incorporated here.

9.      Initially, the Condominium asserted multiple claims against the FS Parties (id. at p. 42-60); however, by way of a motion to dismiss and a Stipulation of Discontinuance filed in the Underlying Action, all of the tort causes of action against the FS Parties were ultimately dismissed.  (Leber Dec., Exs. J, L, M, N).

**RESPONSE:**      Admit and incorporate here the Responses to ## 5, 6 above.

10.     The only causes of action that remain pending against the FS Parties are separate breach of contract causes of action asserted by the Condominium, and a boilerplate indemnification cross-claim asserted by defendant Canido Basonas Construction Corp. ("Basonas").  (Leber Dec., Ex. C, J, L, M, N).

**RESPONSE:**     Deny that the "only" causes of action are those stated above and deny that the indemnification cross-claim asserted by defendant Canido Basonas Construction Corp. ("Basonas") is "boilerplate" for the reason that Basonas did not move to dismiss any of the tort and breach of contract claims such that all claims await trial, and further state that FS has interposed a cross-claim against Basonas (Ex. Y, Answer and Cross-Claims), which also remains to be tried.

11.     The Basonas cross-claim does not assert any facts independent of those alleged in the Condominium's Complaint, and only applies if Basonas is held liable to the Condominium for the actions of the FS Parties.  (Leber Dec., Ex. C).

**RESPONSE:**     Deny.  The basis for the cross-claim against FS and FS's cross-claim against Basonas are predicated upon all of the claims (tort and contract) that remain against Basonas.  If Basonas is held liable to the Condominium (based upon a tort or breach of contract theory), the claim over by Basonas may involve different facts at trial.

12.     In the lone remaining cause of action in the Complaint against FS Project Management, for breach of contract, the Condominium alleges that FS Project Management made "fraudulent efforts to conceal the existence of known structural defects in the [Building's] concrete balcony slabs."  (Id. at ¶ 90).

**RESPONSE:**     Deny.  The New York State Supreme Court dismissed the intentional tort claims encompassing ¶ 90 against FS on June 27, 2016 (Ex. L), as affirmed by the Appellate

Division (Ex. M). The allegations supporting an aiding and abetting claim was dismissed with prejudice in 2017.  (Ex. N).  Therefore, Evanston's disclaimer in June 2020 is based upon allegations and claims that were dismissed five years go.  The Court is also respectfully referred to Responses ## 5, 6 incorporated here.  There is, moreover, no allegation that FS Project Management intentionally breached its contract.  Count Twelve of the Complaint (Ex. B, ¶¶ 185-187) alleges that FS Project Management "breached its contractual obligations to the Condominium by, among other things: (i) failing to conduct a comprehensive investigation into the cause of the glass balcony failures; (ii) concealing its knowledge of deficiencies from the Condominium; (iii) recommending grossly inadequate superficial repairs; (iv) failing to properly oversee the repairs performed by Basonas to ensure the repairs were made in professional and workmanlike manner in accordance with industry standards of skill in the trade; and (v) permitting Basonas to exacerbate the deterioration of the Building's balcony slabs by improperly cutting the reinforcing rebar, and failing to apply epoxy sealant to the cut rebar or the balcony posts."

13.     Specifically, it is alleged in the Complaint (i) that FS Project Management oversaw the work of Basonas—a contractor that was retained to replace glass panels at the Building's balconies; (ii) that Basonas and FS Project Management almost immediately discovered serious defects in the balconies when this work was performed; and (iii) that after those defects were discovered, Basonas and FS Project Management chose not to investigate them further, and worked in concert to conceal the existence of the defects from the Condominium.  (Id. at ¶¶ 91-93).

**RESPONSE:**     Deny for the reasons stated above in Responses to ## 5, 6 and 12 incorporated here.

14.     In the lone remaining cause of action in the Complaint against FS Residential, also for breach of contract, it is alleged that FS Residential engaged in "long-standing efforts to assist the Sponsor [Entities] in concealing the existence of design and construction defects throughout the Building" through its mismanagement of Condominium funds, undertaken to "frustrate the condominium's efforts to uncover the full extent of the construction defects."  (Id. at p. [*sic*] ¶¶ 110-11).

**RESPONSE:**     Deny.  While the allegations above were initially made to support intentional tort claims, the New York State Supreme Court dismissed those causes of action and perforce the allegations supporting these causes against FirstService Residential New York, Inc. on June 27, 2016, as affirmed by the Appellate Division.  (Exs. L, M).  The aiding and abetting allegations were similarly dismissed with prejudice in 2017.  (Ex. N).  The Court is respectfully referred to Responses ## 5, 6 incorporated here. The allegations supporting the breach of contract cause do not allege intent.  Count Nine of the Complaint (Ex. B, ¶¶ 167-171) states "[FirstService Residential New York] breached its contractual obligations under the terms of the Management Agreement by, among other things: (i) failing to properly allocate and collect common charges due pursuant to the 2014 special assessment, resulting in an aggregate under-payment to the Condominium; (ii) mismanaging the Condominium's accounts, by among other things remitting several overpayments and payments to vendors for other buildings from the Condominium's accounts totaling $23,298.97; (iii) failing to remit payments to the Condominium's consultants retained to investigate the design and construction of the Building's interior and façade; and (iv) disregarding the Board's explicit directive to withhold payments from Basonas."  Therefore, Evanston's disclaimer in June 2020 is based upon allegations and claims that were dismissed five years ago.

15.     The Complaint also alleges that FS Residential (i) willfully disregarded an explicit directive from the Condominium to pay consultants that were retained to investigate the existence of construction defects, and that instead—in defiance of the Condominium's directives—FS Residential continued to funnel money to Basonas, the contractor that schemed with FS Project Management to conceal construction defects from the Condominium (id. at ¶¶ 108-109); (ii) diverted portions of a $1 million assessment from Condominium unit owners to the Sponsor Entities (id. at ¶ 111); and (iii) used Condominium funds to pay the bills of other buildings FS Residential managed (id. at ¶ 112).

**RESPONSE:**     Admit the Complaint originally contained these allegations supporting the intentional tort claims (notably, ¶¶ 108-109, 111, 112) but all of those were dismissed in 2016 and affirmed in 2017 as set forth above in Responses to ## 5, 6, 12 and 13 incorporated herein.  Therefore, Evanston's disclaimer in June 2020 is based upon allegations and claims that were dismissed five years go. The remaining claim against FS Project Management (Ex. B, ¶¶ 167-171) does not plead intentional breach of contract and the allegations overall allege negligent supervision of Basonas and departures to perform in keeping with the standards in the trade and profession, classic negligent performance.

16.     In the Underlying Action, the only remaining defendants are the FS Parties and Basonas, as all of the other defendants have since been dismissed or have settled with the Condominium.  (See Pl. Br., at p. 6; Zupke Dec.,[4] at ¶ 6).

**RESPONSE:**     Admit.

---

[4] "Zupke Dec." refers to the February 12, 2021 Declaration of Chad Zupke, submitted by Defendant in support of its Cross-Motion for Summary Judgment (ECF Doc. No. 35).

17.     A settlement in principle has been reached between the Condominium and Basonas, but not yet finalized.  (Tricarico Dec.,[5] Ex. A).

**RESPONSE:**     Deny as inaccurate.  The document attached as Ex. B to the Tricarico Declaration, "Appearance Detail," shows (a) no final settlement agreement was filed and no stipulation dismissing the claims against Basonas has been filed and "so ordered" by the Court and (b) the cross-claims running between Basonas and FS have not been settled or been dismissed with prejudice.

18.     In the Underlying Action, the FS Parties have sought discovery regarding the settlement in principle with Basonas.  (Id.)

**RESPONSE:**     Admit and further state as noted with respect to # 17 *supra*, that no executed settlement document exists.

19.     The last court appearance in the Underlying Action was held on July 17, 2020, when the FS Parties moved to vacate a Note of Issue filed by the Condominium.  (Tricarico Dec., Ex. A, B).

**RESPONSE:**     Admit, but the "Appearance Detail" states that it was held on July 16, 2020.

20.     According to the Decision and Order issued by the Court on July 17, 2020, discovery remains open, as the parties were directed to provide further disclosures, and the court held that "[t]he current deadline to move for summary judgment is within sixty days after the last deposition . . . ," meaning that the FS Parties have not lost any opportunity to engage in further discovery or dispositive motion practice.  (Tricarico Dec., Ex. A).

---

[5]  "Tricarico Dec." refers to the February 12, 2021 Declaration of Michael J. Tricarico, submitted by Defendant in support of its Cross-Motion for Summary Judgment (ECF Doc. No. 36).

**RESPONSE:**     Admit.

21.     The final deposition in the Underlying Action has not yet taken place.  (Id.)

**RESPONSE:**     Admit.

22.     In the Underlying Action, there have been no pre-trial conferences or other related appearances since July 17, 2020, and nothing else is currently scheduled.  (Tricarico Dec., Ex. B).

**RESPONSE:**     Admit.

23.     A jury trial was requested in the Underlying Action, both in the Complaint and the Note of Issue (Leber Dec., Exs. B, U).

**RESPONSE:**     Admit.

24.     Pursuant to a Court notification filed in the Underlying Action on March 19, 2020, "[j]ury selection is postponed as are all civil trials."  (Tricarico Dec., Ex. C).

**RESPONSE:**     Deny.  The Chief Judge of the New York Court of Appeals Janet Di Fiore announced on the state court website on February 22, 2021, that jury trials will proceed again this month in March 2021.  This is a matter of public record.

**II.     The Evanston Policy**

25.     Evanston issued Real Estate Services and Property Management Services Professional Liability Insurance Policy no. EO857484 to The Wentworth Group Inc. for the July 17, 2014 to July 17, 2015 policy period, with limits of $5 million per claim, excess of a $100,000 per claim deductible (the "Evanston Policy").  (Leber Dec., Ex. A).

**RESPONSE:**     Admit.

26.     The Evanston policy is subject to a $100,000 deductible, which was only fully satisfied with services rendered by Gordon & Rees during the billing period between January and June 2018.  (Zupke Dec., at ¶ 12).

**RESPONSE:**      Admit.

27.      The Evanston Policy includes "FS Project Management, LLC" and "FirstService Residential New York, LLC" as Additional Named Insureds, but does not include any entity called "FirstService Residential New York, Inc." as an insured, additional insured, or additional named insured.  (Id., at 7).

**RESPONSE:**      Deny.  The Court is respectfully referred to Ex. X [Amendatory Endorsement dated July 17, 2014] plainly stating that FirstService Residential New York Inc. is an Additional Named Insured.

28.      The Evanston Policy provides coverage for "Damages as a result of a Claim first made against the Insured . . . by reason of . . . a Wrongful Act . . . in the performance of Real Estate Services or Property Management Services."  (Id. at 20).

**RESPONSE:**      Admit.

29.      A "Wrongful Act" is defined in the Evanston Policy as a "negligent act, error or omission in Real Estate Services or Property Management Services."  (Id. at 24).

**RESPONSE:**      Admit.

30.      The Evanston Policy contains Exclusion I, which provides that the Evanston Policy will not cover claims "based upon, arising out of, or in any way involving":

> I.      conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:
>
> > a.      the strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or
> >
> > b.      Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of fact to be

intentional, willful, dishonest or fraudulent or a willful
violation of any statute or regulation; or

2.       the gaining by any Insured of any profit, remuneration or
advantage to which such Insured was not legally entitled; provided,
however, this exclusion shall not apply to Claim Expenses incurred
until an allegation is adjudicated through a finding by a trier-of-
fact to be any profit, remuneration or advantage to which such
Insured was not legally entitled; provided, that any fact pertaining
to any Insured shall not be imputed to any other Insured under this
policy for the purpose of determining the applicability of this
exclusion . . . .

(Id. at 25-26).

**RESPONSE:**       Admit and further state under I(1)(b), any allegations as to intentional,

willful, dishonest or fraudulent or a willful violation of any statute or regulation must first be

tried, which trial has not happened.  Further, the claims alleging intentional torts and therefore

the allegations supporting them were dismissed in 2016 and the dismissal affirmed in 2017 (Exs.

L, M), and the aiding and abetting claim against FS was dismissed with prejudice by stipulation

in 2017 (Ex. N), such that Evanston's disclaimer in June 2020 is based upon allegations and

claims that were known by Evanston to have been dismissed five years go.  The remaining

claims against FS do not allege intentional breach of contract.  Thus, even if the allegations

supporting the original intentional tort had not been dismissed, which they were, under I(1)(b),

Evanston has a continuing obligation to defend and indemnify FS.

31.       The Evanston Policy also contains Exclusion O, which provides that the Evanston

Policy will not provide coverage for claims "based upon, arising out of, or in any involving":

O.       based upon or arising out of any actual or alleged
conversion, misappropriation, commingling of or defalcation, theft,
disappearance, insufficiency in the amount of escrow funds,
monies, monetary proceeds, funds or property, or any other assets,
securities, negotiable instruments or any other thing of value. This
exclusion shall apply irrespective of which individual, party, or
organization actually or allegedly committed or caused, in whole

> or part, the conversion, misappropriation, commingling,
> defalcation, theft, disappearance, insufficiency in amount . . . .

(Id.).

      **RESPONSE:**     Admit that is what the Exclusion states. However, there are no allegations in the 9th claim for breach of contract against FirstService Residential New York, Inc. alleging conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount of escrow funds, monies, monetary proceeds, funds or property, or any other assets, securities, negotiable instruments.  Similarly, no such allegations are alleged against FS Property Management in the 12th claim for breach of contract.

**III.**    **Evanston's Claims Handling**

      32.     Evanston received notice of the Underlying Action on or about May 7, 2015. (Zupke Dec., at ¶ 3).

      **RESPONSE:**     Admit.

      33.     On May 8, 2015, Chad Zupke, on Evanston's behalf, had a telephone discussion with Ben Kirschenbaum of FS Residential, who advised that the FS Parties had referred the case to their independent counsel, Mark Beckman, Esq., at the law firm of Gordon & Rees.  (Id. at ¶ 3).

      **RESPONSE:**     Deny.  Gordon & Rees was not referred to because it was "independent" counsel but rather was appointed by Evanston because the firm was on the insurance company's approved list of defense counsel, comporting with Chad Zupke's email dated June 24, 2015 to Mark Beckman of Gordon & Rees, as well as Markel's Claim Litigation Management Guidelines.  (Ex. Z [Bates numbered FS 0051471 – FS0051498]).

34.     Mr. Zupke advised Mr. Kirschenbaum that Evanston was undertaking an investigation of the claim, and would be requesting additional information to aid it in reaching a coverage determination.  (Id. at ¶ 4).

**RESPONSE:**     Admit.

35.     On May 7, 2015, a letter was sent on behalf of Evanston acknowledging receipt of the claim and stating that "[n]othing in this letter shall be construed as a waiver of any of the rights which EVANSTON INSURANCE COMPANY may have under the policy, nor as an admission of any liability whatsoever of EVANSTON INSURANCE COMPANY to the Insured," (Leber Dec., Ex. F).

**RESPONSE:**     Admit that the May 7, 2015 letter states what it did, but it preceded Evanston issuing the Coverage Letter dated August 3, 2015 (Ex. D), following a three month investigation.  The Coverage Letter set forth Evanston's position unqualifiedly confirming coverage under Insuring Agreement Coverage A for the breach of contract causes of action against FS and limiting the reservation of rights further to **"coverage on all other bases that may exist,"** i.e., bases other than Coverage A for 'Wrongful Acts." (Ex. A).  The May 7, 2015 letter is irrelevant and carries no evidential weight for this reason.

36.     Beginning on June 24, 2015, Evanston sent multiple communications indicating that it would contribute to the defense of the FS Parties under a reservation of rights.  (Leber Dec., Exs. D, E, H).

**RESPONSE:**     Admit that on June 24, 2015 Evanston sent a letter stating that it would contribute to the defense of FS however, that letter preceded Evanston issuing the Coverage Letter dated August 3, 2015 (Ex. D), following a three month investigation.  The Coverage Letter set forth Evanston's position unqualifiedly confirming coverage under Insuring

Agreement Coverage A for the breach of contract causes of action against FS and limiting the reservation of rights further to **"coverage on all other bases that may exist,"** i.e., bases other than Coverage A for 'Wrongful Acts.'  (Ex. A).  The June 24, 2015 letter is irrelevant and carries no evidential weight for this reason.  Evanston's reservation of rights was for "all other bases that may exist," other than Coverage A as set forth in its August 3, 2015 Coverage Letter.  (Ex. D).

37.      On June 24, 2015, Mr. Zupke sent separate e-mails to Lisa Kounitz, a representative of Continental Casualty Company (an insurer that agreed to split the cost of FS Residential's defense), and Mark Beckman of Gordon & Rees, indicating that Evanston would contribute to the defense of the FS Parties "subject to [a] reservation of rights," and that Evanston would consent to the continued representation of the FS Parties by their independently chosen counsel, Gordon & Rees.  (Leber Dec., Exs. E, H).

**RESPONSE:**      *See* Responses to ## 35, 36 above incorporated here.

38.      The above-referenced June 24, 2015 e-mails were both copied to the FS Parties. (Id.).

**RESPONSE:**      Admit.

39.      On August 3, 2015, Evanston issued a formal reservation of rights letter to the FS Parties.  (Leber Dec., Ex. D).

**RESPONSE:**      Admit and respectfully refer the Court to the August 3, 2015 Coverage Letter (Ex. D) for an accurate recital of Evanston's complete defense of FS under Insuring Agreement Coverage A and reservation of rights as to "all other bases that may exist" – other than Coverage A.

40.     The August 3, 2015 letter, sent prior to the dismissal of all of the non-contractual claims (see supra at ¶ 9), indicated in bold and all capital letters that it was a RESERVATION OF RIGHTS, and contained repeated statements that Evanston was in fact reserving its rights, and not waiving any potential coverage defenses:

> The Company is providing a complete defense under the [Evanston Policy] for all allegations against the Insureds in the Complaint under a reservation of rights to limit or deny payment of damages on various grounds detailed below. . . .
>
> While a defense is being provided to the Insureds in this matter pursuant to the terms of the Policy, it is to be expressly understood that the Company is responsible only according to the terms, limits, and conditions of the Policy. . .
>
> Evanston further reserves its right to amend or supplement this reservation as further review, investigation and discovery warrant. The Company also reserves the right to seek reimbursement for Claim Expenses incurred on the Insureds' behalf in defending the Claim should it ultimately be determined that no duty to defend or indemnify existed. The Company also reserves its right to file a declaratory judgment action at any time to determine its duties of defense or indemnity herein. . . .

(Leber Dec., Ex. D, at p. 2).

**RESPONSE:**     Admit that the above excerpts are from the August 3, 2015 Coverage Letter and state the excerpts alone are misleading and disingenuous and seek to mislead the Court.  A complete reading of the letter illustrates that the state court complaint constituted a "Claim" alleging "Wrongful Acts" in the performance of covered services and triggered the Insurance Agreement of the Policy , and that Evanston waived defenses to Insuring Agreement Coverage A and reserved its rights "on all other bases that may exist," i.e., other than Coverage A.  (Ex. D)

41.     The August 3, 2015 letter outlines various specific bases under which Evanston reserved its rights, (see Leber Dec., Ex. D, at p. 11-14), and states in conclusion that "Evanston

reserves all of its rights under the Policy to limit or deny coverage as explained herein," and that Evanston's agreement to assume the FS Parties' defense is made "upon the express understanding that it will not be construed as a waiver of any of the rights which the Company may have under the Policy, nor as an admission of any liability whatsoever of the Company to the Insured," (id. at p. 14-15).

**RESPONSE:**     Admit that the above words again as in # 40 are excerpts from the August 3, 2015 Coverage Letter.  A complete reading of the letter illustrates that the state court complaint constituted a "Claim" alleging "Wrongful Acts" in the performance of covered services and triggered the Insurance Agreement of the Policy  and more specifically admits that Evanston's reservation of rights was limited to "all other bases that may exist" (Ex. D at 13), other than Coverage A.  Therefore, the language quoted, "Evanston reserves all of its rights under the Policy to limit or deny coverage **as explained herein**," properly read in context states that Evanston was referring to providing coverage for Coverage A.

42.     Evanston again stated in the August 3, 2025 letter that it consented to the continued representation of the FS Parties in the Underlying Action by their independently chosen counsel, Gordon & Rees.  (Leber Dec., Ex. D, at p. 14).

**RESPONSE:**     Admit that Evanston consented to the representation of FS but deny that the representation was "independently chosen" by FS.  FS incorporates by reference Response to # 33 here.

43.     Gordon & Rees continued handling the defense of the FS Parties, which was initially subject to the $100,000 deductible of the Evanston Policy.  (Zupke Dec., at ¶ 12).

**RESPONSE:**     Admit.

44.     Evanston occasionally received defense reports from Gordon & Rees (Zupke

Dec., at ¶ 7), corresponded with defense counsel and/or Ms. Kounitz of CNA (Leber Dec., Exs. I,

K, O), and participated in an attempted mediation of the Underlying Action, (Leber Dec., Ex. Q).

**RESPONSE:**     Deny that Evanston "occasionally received defense reports."  The

Court is respectfully referred to Ex. Z, Markel Claim Litigation Management Guidelines, that

required an "Agreed Litigation Plan" (at 5), "updated to reflect unexpected activity not

considered in the initial [written] Litigation Plan," more reports from Gordon & Rees every 4-6

months (at 5), an evaluation for mediation (at 6) which required "prior approval."  Evanston

stated that "three-way communication is essential to our method of supervising and directing this

litigation" and therefore required Gordon & Rees to send "copies of all correspondence to and

from the Insured," and Markel received over 20 written reports since 2015, in addition to oral

communications and emails.

45.     With respect to the mediation in the Underlying Action, best efforts were made to

settle the matter, but this proved to be impossible inasmuch as the Condominium made an

unreasonable demand of $5 million, which (i) did not appear to reflect the FS Parties' potential

exposure in the Underlying Action, which according to the FS Parties' independent counsel, was

fairly minimal, and (ii) did not account for a setoff for the settlement payments that the

Condominium had received from the other defendants in the Underlying Action.  (Zupke Dec., at

¶ 8).

**RESPONSE:**     Deny.  As the court docket shows (Tricarico Dec., Ex. B), the case

against FS and Basonas did not settle then and has not to present.  The mediation was to be kept

strictly confidential.  Suffice it to say that FS notes there were ongoing disputes between

Evanston and CNA with respect to defense costs as well as the amount each was willing to contribute towards settlement (Ex. I) that directly resulted in an unsuccessful mediation.

46.     At no point did Evanston ever interfere with Gordon & Rees' defense of the Underlying Action.  (Zupke Dec., at ¶ 9).

**RESPONSE:**     *See* Responses to ## 33, 44.  Markel also makes clear in its policy manual that it will supervise defense counsel and discuss all litigation strategy.

47.     Evanston at all times permitted the FS Parties' independent counsel to exercise its best judgment and provide the best defense possible to the FS Parties.  (Zupke Dec., at ¶ 9).

**RESPONSE:**     *See* Response to # 46.

48.     Evanston never sought to alter Gordon & Rees' proposed litigation strategies and never stopped Gordon & Rees from taking any legal action that they believed was in the best interests of the FS Parties.  (Zupke Dec., at ¶ 10).

**RESPONSE:**     *See* Response to # 46.

49.     The legal strategy that was undertaken would have been the same whether or not Evanston ever contributed to the FS Parties' defense.  (Zupke Dec., at ¶ 11).

**RESPONSE:**     *See* Responses to ## 45, 46.

50.     Evanston never told the FS Parties that it was providing an unqualified defense or that it was withdrawing its reservation of rights.  (Leber Dec., Leber Dec., Exs. D, E, F, H, P).

**RESPONSE:**     Deny as contradicted by the documentary evidence (Exs. D, E, F, H, P).

51.     When Mr. Zupke provided a courtesy copy of Evanston's August 3, 2015 coverage position letter to Mr. Kirschenbaum years later on May 30, 2019, Mr. Zupke expressly stated that the letter was Evanston's "ROR."  (Leber Dec., Ex. P).

**RESPONSE:**     Deny and contradicted by documentary evidence.  (Exs. D, P).  The August 3, 2015 Coverage Letter stated that Evanston admitted that the claims were covered under Insuring Agreement Coverage A but further reserved only the right to limit "coverage on all other bases that may exist," i.e., bases other than Coverage A for "Wrongful Acts."

52.     On June 10, 2020, Evanston, through its coverage counsel, informed Plaintiffs that because the remaining allegations against the FS Parties did not constitute a "negligent act, error or omission," and because policy exclusions barred coverage to the FS Parties, it would be withdrawing its defense of the FS Parties.  (Leber Dec., Ex. R).

**RESPONSE:**     Admit.

**IV.     The Instant Action and Motions**

53.     On or about August 20, 2020, Plaintiffs commenced the instant action, seeking a declaration that Evanston is obligated to defend and indemnify the FS Parties in the Underlying Action.  (Leber Dec. Ex. V).

**RESPONSE:**     Admit.

54.     Evanston has answered the Complaint, denying any further obligation to defend or indemnify the FS Parties in the Underlying Action.  (Leber Dec., Ex. W).

**RESPONSE:**     Admit and respectfully refer the Court to the Answer for a true and accurate recital of its allegations.

Dated:   New York, New York
         March 9, 2021

                                        ARENT FOX LLP

                                        By:  _/s/ Bernice K. Leber_____
                                             Bernice K. Leber
                                             Elliot M. Kroll
                                             Stefan Bogdanovich
                                                (admitted pro hac)
                                        1301 Avenue of the Americas, Floor 42
                                        New York, New York 10019
                                        (212) 484 3900
                                        bernice.leber@arentfox.com
                                        elliott.kroll@arentfox.com
                                        stefan.bogdanovich@arentfox.com

                                        *Attorneys for Plaintiffs The Wentworth
                                        Group Inc., FS Project Management, LLC
                                        and FirstService Residential New York, Inc.*