USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/8/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE WENTWORTH GROUP INC., FS          :
PROJECT MANAGEMENT, LLC and           :
FIRSTSERVICE RESIDENTIAL              :
NEW YORK, INC.,                       :
                                      :        **REPORT &**
                                      :        **RECOMMENDATION**
              Plaintiffs,             :
                                      :        20-CV-6711 (GBD) (JLC)
       -v-                            :
                                      :
                                      :
EVANSTON INSURANCE COMPANY,           :
                                      :
              Defendant.              :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable George B. Daniels, United States District Judge:**

Plaintiffs The Wentworth Group Inc., FS Project Management, LLC, and

FirstService Residential New York, Inc. (collectively, "Plaintiffs") brought this

insurance coverage action against Defendant Evanston Insurance Company

("Evanston") seeking a declaration that Evanston has a duty to defend and

indemnify Plaintiffs in an action pending in New York State court, and that their

claim is covered under an insurance policy issued by Evanston.

The parties have cross-moved for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure on the issues of (1) whether Evanston waived its

right to disclaim coverage as a matter of law; (2) whether Evanston has a duty to

defend Plaintiffs; and (3) whether Evanston has a duty to indemnify Plaintiffs.  For

1

the reasons that follow, I recommend granting Plaintiffs' motion in part and denying Evanston's cross-motion in its entirety.

## I. BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 statements and summary judgment briefing and are undisputed unless otherwise noted.

### A. The Underlying Action

Plaintiffs provided property management and project management services to the Board of Managers ("the Board") of 325 Fifth Avenue Condominium in Manhattan ("the Condominium"). Defendant's Response to Plaintiff's Rule 56.1 Statement ("Def.'s Resp. Rule 56.1"), Dkt. No. 34, ¶¶ 2, 3. In or about 2006, the Condominium's sponsor contracted with and designated FirstService Residential New York, Inc. ("FSR") as the managing agent, and FSR continued to manage the Condominium until 2015. Plaintiffs' Memorandum of Law in Support of Summary Judgment ("Pl. Mem."), Dkt. No. 24, at 2; Declaration of Bernice K. Leber dated January 4, 2021 ("Leber Decl."), Dkt. No. 22, Ex. B ¶ 72. Plaintiff FS Project Management provided project management services to the Board during a portion of the time FSR served as the managing agent. Def.'s Resp. Rule 56.1 ¶ 3; Leber Decl., Ex. B ¶ 4.

In 2012, the Board filed suit in New York State Supreme Court, New York County against the Condominium's sponsor due to persistent construction and design defects in the Condominium building. Def.'s Resp. Rule 56.1 ¶ 5. On May 1, 2015, the Board filed another suit in New York State Supreme Court, New York

2

County against FSR and FS Project Management, along with 26 other professionals and contractors who had performed services for the Condominium (the "Underlying Action"). *Id.*; *see also* Leber Decl., Ex. B. In its complaint (the "State Court Complaint"), the Board asserted nine causes of action against Plaintiffs for fraud, breach of fiduciary duty, constructive fraud, aiding and abetting, civil conspiracy, and breach of contract. Leber Decl., Ex. B ¶¶ 117–206. The Board alleged that between 2007 and 2009, the Condominium sponsor retained FS Project Management to determine the cause of defects in the glass panels installed at the balcony rails that resulted in their falling and shattering. *Id.* at ¶¶ 7, 82. The Board further alleged that in 2011, upon the recommendation of FS Project Management, the sponsor contracted with Candido Basonas Construction Corp. ("Basonas") to repair the glass panels, but that Basonas' repairs were improper and exacerbated the existing defects. *Id.* at ¶¶ 9, 91. The Board also alleged that FSR concealed construction and design defects and failed to properly bill tenants, pay contractors, order supplies, and advise the Board about maintenance of common areas in the Condominium. *Id.* at ¶¶ 107–08; 169–70. In October 2015, Basonas brought crossclaims against all defendants in the Underlying Action and alleged that they were jointly and severally liable for any damages incurred by the Board. Leber Decl., Ex. C ¶ 57.

## B. The Evanston Policy

Evanston issued Real Estate Services and Property Management Services Professional Liability Insurance to The Wentworth Group Inc. ("Wentworth")

covering the period from July 17, 2014 to July 17, 2015 ("the Evanston Policy" or "the Policy").[1]  Defendant's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Mem."), Dkt. No. 33, at 6; Leber Decl. Ex. A, at 3.[2]  FSR and FS Project Management are Additional Named Insureds under the Evanston Policy.  Leber Decl., Ex. A at 7.  The Evanston Policy provides coverage for "[d]amages as a result of a Claim first made against the Insured . . . by reason of . . . a Wrongful Act . . . in the performance of Real Estate Services or Property Management Services."  Leber Decl., Ex. A at 20.  A "Wrongful Act" is defined as a "negligent act, error or omission in Real Estate Services or Property Management Services."  Leber Decl., Ex. A at 24.  Moreover, under the policy, Evanston "shall have the right and duty to defend . . . any Claim to which coverage under this policy applies" and "shall pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period . . . by reason of a Wrongful Act . . . ."  *Id.* at 20, 28.

Shortly after the Board filed the Underlying Action, Plaintiffs submitted a claim under the Policy to Evanston.  Def. Resp. Rule 56.1 ¶ 14; Leber Decl., Ex. F.  After conducting a three-month investigation of Plaintiffs' claim, Evanston issued a Coverage Letter on August 3, 2015.  Def. Resp. Rule 56.1 ¶¶ 14–15, Leber Decl., Ex.

---

[1] As Evanston points out, Wentworth is not named as a defendant in the Underlying Action.  *See* Def. Mem. at 1; Leber Decl., Ex. B.  Moreover, Plaintiffs do not explain the relationship between Wentworth and FSR and FS Project Management.

[2] For all references to page numbers in exhibits, the page number cited refers to the ECF filing number.

D.  In the Coverage Letter, Evanston acknowledged that the claims alleged in the Underlying Action constituted "Wrongful Acts" under the Evanston Policy, and thus triggered coverage.  Leber Decl., Ex. D at 13.  Evanston also approved Plaintiffs' selection of the Gordon & Rees law firm to defend the Underlying Action.  Def. Resp. Rule 56.1 ¶ 19; Leber Decl., Ex. H.

For the next five years, Evanston paid 50% of the costs Plaintiffs incurred while defending the Underlying Action.  Def. Resp. Rule 56.1 ¶ 21.[3]  In August 2015, shortly after receiving confirmation of coverage from Evanston, Plaintiffs moved to dismiss seven of the Board's claims as well as Basonas' crossclaims.  *Id.* at ¶¶ 23–24; *see also* Leber Decl., Ex. J.  In 2016, the Supreme Court granted Plaintiffs' motion to dismiss in part but declined to dismiss the Board's eighth cause of action (aiding and abetting) and Basonas' crossclaims.  Leber Decl., Ex. L at 17–18.  In April 2017, the New York Appellate Division, First Department, affirmed the Supreme Court's dismissal of the six causes of action against Plaintiffs.  Leber Decl., Ex. M.  In August 2017, Plaintiffs and the Board then entered into a Stipulation of Discontinuance, which dismissed the aiding and abetting cause of action with prejudice, leaving only the two breach of contract claims (against FSR and FS Project Management).  Leber Decl., Ex. N.  In May 2019, Evanston representatives participated in efforts to settle the remaining claims, including preparing for and attending a mediation session, which was unsuccessful.  Def. Resp. Rule 56.1 ¶ 30.

---

[3] The other half of the costs have been covered under a CNA insurance policy.  Pl. Mem. at 2 n.2; Def. Resp. Rule 56.1 ¶ 21.

On June 10, 2020, Evanston informed Plaintiffs that it was disclaiming coverage and would no longer contribute to Plaintiffs' defense in the Underlying Action.  *Id.* at ¶ 31; *see also* Leber Decl., Ex. R.  According to Evanston, the remaining breach of contract claims allege intentional conduct, and therefore do not arise from a "wrongful act" as defined in the Evanston Policy.  Leber Decl., Ex. R at 10–11.  On June 24, 2020, Evanston advised Plaintiffs that it was disclaiming coverage with respect to Basonas' crossclaim as well.  Leber Decl., Ex. S.

## C. Procedural History

Plaintiffs filed this action on August 20, 2020 seeking a declaratory judgment that (1) Plaintiffs continue to be covered by the Evanston Policy; (2) Evanston has a duty to defend Plaintiffs in the Underlying Action; and (3) Evanston has a duty to indemnify Plaintiffs for all amounts which Plaintiffs become legally obligated to pay as damages in the Underlying Action.  Complaint, Dkt. No. 1, ¶¶ 47–58.  Plaintiffs also allege that Evanston's disclaimer of coverage breaches the policy terms and seek attorneys' fees, costs, and the expenses incurred in bringing this lawsuit.  *Id.* at  ¶¶ 59–66; Pl. Mem. at 22–23.

## II. DISCUSSION

## A. Applicable Law

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation

marks omitted); *see also* Fed. R. Civ. P. 56(a).  Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248.  An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).  "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).  If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial."  *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354 (JGK), 2016 WL 4120635, at \*4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* Fed. R. Civ. P. 56(c).  The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings," *Anderson*, 477 U.S. at 256.  Rather, the non-moving party must "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting Fed. R. Civ. P. 56(e)).  "The mere

existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported "motion for summary judgment," *Anderson*, 477 U.S. at 247–48, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co.*, 2016 WL 4120635, at *4 (citing *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

Moreover, if there are no genuine issues of material fact, the question of whether insurance coverage exists "is appropriately decided on a motion for summary judgment." *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 403 (D. Conn. 2017) (citation omitted); *see also Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 127 (S.D.N.Y. 1997) ("Summary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law.").

**B. Analysis**

1. <u>Waiver</u>

Plaintiffs first argue that Evanston must defend and indemnify them in the Underlying Action because it has "waived any reservation of its rights under the Policy with respect to any 'Wrongful Conduct' allegedly committed by [Plaintiffs]." Pl. Mem. at 10. According to Plaintiffs, Evanston's August 3, 2015 Coverage Letter confirmed coverage of all the causes of action against Plaintiffs in the Underlying

Action – including the breach of contract claims now remaining – and only reserved its rights with respect to "other bases that may exist but [are] not covered" in its August 3, 2015 Coverage Letter.  Pl. Mem. at 12.  Plaintiffs further argue that Evanston waived its reservation of rights by controlling the defense of the Underlying Action since 2015, by repeatedly confirming coverage from 2015 to 2019, and by delaying its disclaimer of coverage.  Pl. Mem. at 12–15.

Evanston counters, *inter alia*, that its coverage defenses relate "exclusively to whether coverage exists under the Evanston Policy in the first instance (*i.e.*, the 'the insuring clause and exclusions' of the Evanston Policy)," and therefore waiver is inapplicable.  Def. Mem. at 11.  Evanston further argues that Plaintiffs have failed to demonstrate how they would be prejudiced by a disclaimer of coverage.  *Id.* at 16–19.

Under New York law, waiver is defined as the "voluntary and intentional relinquishment of a known right."  *Cty. of Dutchess v. Argonaut Ins. Co.*, 150 A.D.3d 672, 674 (2d Dep't 2017).[4]  "[W]aiver of rights under a contract 'should not be lightly presumed,'" and therefore "a party seeking to demonstrate waiver must put forward evidence of a 'clear manifestation of intent' to waive by the other party."  *Globecon*

_____

[4] As a federal court sitting in diversity jurisdiction, the court "appl[ies] the substantive law of the forum state," which is the state of New York.  *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).  Moreover, the parties both briefed the issues presented under New York law.  "Where the parties' briefs assume that a particular jurisdiction's law applies, such 'implied consent . . . is sufficient to establish choice of law."  *In re SKAT Tax Refund Scheme Litig.,* No. 18-CV-5053 (LAK), 2020 WL 7059843, at *3, n. 28 (S.D.N.Y. Dec. 2, 2020) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).  For these reasons, the Court will apply New York law as well.

*Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (quoting

*Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988)).

In the insurance context, both courts in the Second Circuit and New York

state courts have recognized that "waiver cannot create coverage where none

existed in the first place."  *Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.*, 689 F.

Supp. 329, 333 (S.D.N.Y. 1988) (citing *Albert J. Schiff Assoc., Inc. v. Flack*, 51

N.Y.2d 692, 697–98 (1980)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh,*

*Pennsylvania v. Travelers Indem. Co.*, 210 F. Supp. 2d 479, 485 (S.D.N.Y. 2002).

Therefore, "where the issue is the existence or nonexistence of coverage (e.g., the

insuring clause and exclusions), the doctrine of waiver is simply inapplicable."

*Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 109 (S.D.N.Y.

2017); *see also Cty. of Dutchess*, 150 A.D.3d at 674 ("Waiver . . . does not apply here

because 'the failure to disclaim based on an exclusion will not give rise to coverage

that does not exist.'") (quoting *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d

308, 323 (1995)); *Provencal, LLC v. Tower Ins. Co. of New York*, 138 A.D.3d 732, 734

(2d Dep't 2016) (same).  Moreover, when an insurer reserves its right to deny

coverage, "estoppel and waiver may not be inferred."  *Steadfast Ins. Co. v. Stroock &*

*Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y. 2003), *aff'd*, 108 F. App'x

633 (2d Cir. 2004); *see also New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas.*

*Co. of Am.*, 485 F. Supp. 3d 398, 408–09 (S.D.N.Y. 2020).

Here, the core dispute turns on whether the remaining causes of action in the

Underlying Action fall within the scope of the Evanston Policy, subject to any

exclusions set forth therein.  Def. Mem. at 1; Pl. Mem. at 1.   Put another way, this

litigation centers on "the existence or nonexistence of coverage," and therefore, the

doctrine of waiver is inapplicable.  *Albert J. Schiff Assoc., Inc.*, 51 N.Y.2d at 698.

Plaintiffs cite several cases to support their argument that Evanston waived its

ability to disclaim coverage.  Pl. Mem. at 10–11.  However, the courts in those cases

found that an insurer waived particular defenses to coverage when (1) the insured

breached a condition precedent or policy term of which the insurer was aware but

did not initially cite as a basis to deny coverage;  (2) where an insurer failed to

reserve its rights; or (3) where the insurer's denial of coverage letter did not specify

the grounds for that denial.  *See Sparta Ins. Co. v. Tech. Ins. Co.*, No. 15-CV-9893

(GBD), 2017 WL 4712480, at *4–5  (S.D.N.Y. Sept. 28, 2017) (insurer estopped from

disclaiming coverage for failing to reserve its right to do so); *Palanquet v. Weeks

Marine, Inc.*, 352 F. Supp. 2d 361, 363–64 (E.D.N.Y. 2005) (insurer waived

disclaimer of coverage because it never provided denial of coverage letter or

specified why coverage was being disclaimed); *State of N.Y. v. AMRO Realty Corp.*,

936 F.2d 1420, 1429–30 (2d Cir. 1991) (insurer waived defense based on insured's

untimely notice of claim when insurer failed to raise that defense in prior letters

declining coverage for other reasons); *Luria Bros. & Co. v. Alliance Assurance Co.*,

780 F.2d 1082, 1090–91 (2d Cir. 1986) (insurer aware of insured's nondisclosure of

material facts when initially denying liability on another ground, but failed to

disclaim liability on nondisclosure grounds, waiving that defense); *Appell v. Liberty

Mut. Ins. Co.*, 22 A.D.2d 906, 906 (2d Dep't 1964) (insurer waived defense based on

insured's untimely notice of claim when it failed to raise that defense alongside disclaimer based on insured's violation of policy terms).  Because the parties' dispute here concerns whether the remaining allegations in the Underlying Action fall within the Evanston Policy's Exclusions, the cases that Plaintiffs rely on are inapplicable.

Moreover, in its Coverage Letter, Evanston plainly reserved its rights with respect to the exclusions it now relies upon to disclaim coverage: Exclusions I and O.  Leber Decl., Ex. D at 3, 11–14.  Evanston has continued to reserve its rights to amend or deny coverage in communications with Plaintiffs throughout the course of the Underlying Action.  Def. Mem. at 14; Leber Decl., Ex. P.  Notably, Plaintiffs concede that Evanston reserved its rights with respect to Exclusions I (1)(b) and O. *See* Pl. Mem. at 8.

While Plaintiffs do not specifically argue that Evanston should be estopped from disclaiming coverage, several of their arguments in support of waiver sound in estoppel.  Pl. Mem. at 11–12, 15 (Evanston's control of defense and Evanston's delay in disclaiming coverage should result in waiver).  Under New York law, an insurer who assumes the defense of its insured "may be estopped from later refusing to continue to defend, despite noncoverage, where such refusal would prejudice the rights of the insured." *Frankart Distributors, Inc. v. Federal Ins. Co.*, 616 F. Supp. 589, 593 (S.D.N.Y. 1985) (citations omitted); *see also Starr Indemnity & Liability Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 352 (S.D.N.Y. 2019) ("Unlike waiver, the doctrine of equitable estoppel may prevent an insurer from denying coverage

under a policy where none previously existed, where the insured reasonably relies on the insurer's actions or omissions and prejudices its position in so doing.").

Here, Plaintiffs have not adduced enough evidence to demonstrate that they will be prejudiced by Evanston's disclaimer of coverage.  Even though Evanston was "kept apprised" of the Underlying Action for more than five years, Pl. Mem. at 6, the record presented does not suggest that it controlled Plaintiffs' defense such that "the character and strategy of the lawsuit can no longer be altered."  *206-208 Main Street Associates, Inc. v. Arch Ins. Co.*, 106 A.D.3d 403, 407 (1st Dep't 2013) (quoting *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D. 2d 32, 39 (1st Dep't 2006)).  Indeed, it does not appear that Evanston interfered with Plaintiffs' counsel's litigation strategies in the Underlying Action.  *See* Declaration of Chad Zupke dated February 12, 2021, Dkt. No. 35, ¶¶ 7–11; Def. Mem. at 9.

In addition, while Evanston certainly had ample opportunity between the execution of the 2017 Stipulation and June 2020 to disclaim coverage, Plaintiffs have not demonstrated that its failure to do so has sufficiently prejudiced them, especially given that the record does not establish that trial is imminent (and may not be for some time given the impact of the pandemic).  The last entry in the docket sheet in the Underlying Action as of the time of the submission of Evanston's cross-motion was on July 16, 2020, with nothing indicating that trial was likely to occur in the near future.  *See* Declaration of Michael J. Tricarico dated February 12, 2021, Dkt. No. 36, Ex. B at 2.  Nor have Plaintiffs supplemented their motion papers to

suggest anything to the contrary.  For these reasons, Evanston has not waived its right to disclaim coverage as a matter of law.

2.  <u>Duty to Defend – Exclusions I & O</u>

Plaintiffs next argue that Evanston has a duty to defend them in the Underlying Action because the allegations in the State Court Complaint fall within the purview of the Evanston Policy, notwithstanding any coverage exceptions.  Pl. Mem. at 15.  Evanston responds that it has no duty to defend Plaintiffs against the remaining allegations in the Underlying Action because those allegations fall within Exclusions I and O to the Policy.  Def. Mem. at 19–23.

"[U]nder New York law, 'the insurer's duty to furnish a defense is broader than its obligation to indemnify.'"  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)); *see also Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) ("The 'exceedingly broad' contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals.") (citations omitted); *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 309 A.D.2d 22, 29 (1st Dep't 2003) ("The duty of an insurer to provide a defense for its insured is distinct from, and far broader than, its duty to indemnify.") (citation omitted).  If any allegations in the underlying complaint giving rise to the insurance dispute "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must defend.  *Seaboard Sur. Co.*, 64 N.Y.2d at 310.

The duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620; *see also Hotel Des Artistes v. Transam. Ins. Co.*, No. 93-CV-4563 (SS), 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) ("An insurer seeking to avoid its duty to defend bears a heavy burden which, in practice, is rarely met."). As a result, "the duty to defend exists unless 'there is no possible factual or legal basis' on which the insurer will be obligated to indemnify the insured.'" *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 506 (S.D.N.Y. 2010) (quoting *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003)). Nonetheless, "[w]hile the insurer's burden is a heavy one, the court should not impose a duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Atl. Mut. Ins. Co.*, 309 A.D.2d at 30 (cleaned up).

If an insurer asserts that coverage should be denied based on an exclusion clause, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Id.*; *see also Hugo Boss,* 252 F.3d at 615 ("If the insurer is to be relieved of a duty to defend, it must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation.") (quoting *Hanover Ins. Co. v. Cowan*, 172 A.D.2d 490, 491 (2d Dep't 1991)). "[A]n insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Sea Ins. Co. Ltd. v.*

*Westchester Fire Ins. Co.*, 51 F.3d 22, 26 (2d Cir. 1995) (quoting *Continental Casualty Co. v. Rapid American Corp.*, 80 N.Y.2d 640, 652 (1993)); *see also CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 450 (E.D.N.Y. 2010) ("[E]xclusions are subject to strict construction and must be read narrowly." (quoting *Auto Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006))), *aff'd*, 720 F.3d 71 (2d Cir. 2013).

It is well-settled that "[t]o determine if a defense obligation exists, courts compare the allegations of the complaint to the terms of the policy." *Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (citing *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 302 (1989)), *aff'd*, 559 F. App'x 15 (2d Cir. 2014); *see also Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 553 F. Supp. 2d 381, 386 (S.D.N.Y. 2008) (same). "If the facts alleged raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend." *A. Meyers & Sons Corp.*, 74 N.Y.2d at 302; *see also Atl. Mut. Ins. Co.*, 302 A.D.2d at 29 ("An insurer's duty to defend is triggered whenever allegations set forth in a complaint state a cause of action that gives rise to a reasonable possibility of recovery under the policy."). On the other hand, "if the allegations interposed in the underlying complaint allow for no interpretation which brings them within the policy provisions, then no duty to defend exists." *Id.* Notably, "[t]he insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-CV-4845

(RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard Sur. Co.*, 64 N.Y.2d at 310–11); *see also GRE Ins. Grp. v. GMA Accessories, Inc.*, 691 N.Y.S.2d 244, 247 (Sup. Ct. N.Y. Cty. 1988) ("[A]n insurer must defend against an entire action even if only one claim potentially falls within the indemnity coverage of the policy.").

However, allegations in the complaint are not necessarily the "*sole* criteria for measuring the scope of th[e] duty [to defend]." *Fitzpatrick v. Am. Honda Motor Co., Inc.*, 78 N.Y.2d 61, 66 (1991). In fact, "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify." *Id.* Thus, "the insurer [is also required] to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 67.

Here, the Court must determine whether the remaining allegations against Plaintiffs set forth in the Underlying Action, "liberally construed," are "within the embrace of the [P]olicy." *Century 21*, 442 F.3d at 83 (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8–9 (1985)). "In interpreting the insurance policy, the ordinary rules of contractual interpretation apply." *Mass Bay Ins. Co.*, 1996 WL 389266, at *5. "If the language of the policy is clear on its face, that language governs, but any terms that are ambiguous must be construed in favor of the insured." *Id.* (citation omitted). "If a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law;

[and, again,] any ambiguity must be resolved in favor of the insured." *CGS Indus. Inc.*, 751 F. Supp. 2d at 450.

"[T]he question of whether an insurance policy is ambiguous is a matter of law to be determined by the court." *Hugo Boss*, 252 F.3d at 616–17 (quoting *Bd. of Managers of Yardarm Condo. II v. Fed. Ins. Co.*, 247 A.D.2d 499, 500 (2d Dep't 1998)).  The Second Circuit has explained that "an ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business . . . ." *Id.* at 617 (cleaned up). Conversely, "contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (cleaned up).

a. Exclusion I

Under Exclusion I, the Evanston Policy "does not apply to any Claim . . . based upon, arising out of, or in any way involving conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation . . . ." Leber Decl., Ex. A, at 24–25.  Evanston argues that this exclusion applies to the Underlying Action because "the only remaining factual allegations against [Plaintiffs] . . . are for

intentionally harmful acts purportedly in breach of their applicable contracts." Def. Mem. at 20.

Although much of the complaint in the Underlying Action does allege that Plaintiffs acted intentionally, it also "allege[s] wrongs of, at least arguably, an unintentional nature." *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) (quoting *Hotel Des Artistes*, 1994 WL 263429, at *2). For example, the Board alleges that "Basonas exacerbated the [defective] conditions, when, under the direction and supervision of FS Project Management, it improperly reinstalled the balcony rails without coating the ends of the cut rebar with epoxy sealant, resulting in water penetration that has since caused rusting, corrosion, and increased deterioration at the balcony edges." Leber Decl., Ex. B ¶ 9. The Board also alleges that Plaintiffs "breach[ed] . . . [their] contractual and fiduciary duties to the Condominium . . . by failing to properly allocate the $1 million assessment approved by the Board to fund [the] investigations, and not only failing to collect the Sponsor's share of that allocation as a continuing owner of the Building's commercial spaces, but also by inexplicably crediting back that assessment amount to the Sponsor . . . ." Leber Decl., Ex. B ¶ 11. Additionally, the Board alleges that Plaintiffs "disregard[ed] the Board's explicit directives to distribute safety materials prepared by the Condominium's fire and life safety consultants to the Building's residents in order to conceal that there were fire-stopping issues at the Building." *Id.*

Furthermore, the Board alleges that "neither Basonas nor FS Project Management undertook to investigate the cause of the congestion of the rebar at the slab edges, or the impact that this condition may have on the balconies. Nor did FS Project Management or Basonas inform the Condominium that the congestion of reinforcing rebar at the edge of the concrete slab violated applicable code provisions setting forth minimum cover and spacing requirements for concrete exposed to weather."  Leber Decl., Ex. B ¶ 92.

With respect to FSR in particular, the Board alleges that it "failed to fulfill even the most basic contractual and fiduciary duties . . . . For example, FSR routinely failed to register and remit payments on invoices from the Condominium's consultants . . . FSR failed to make payments to L&M for services performed in connection with the Local Law 11 inspection . . . In addition, FSR failed to make payments to E&B and Whitlock Dalrymple Poston & Associates, PC ("WDP"), who was tasked with working with L&M to investigate the balconies, in a timely manner – in some instances allowing close to a year to lapse between the time the invoice was sent to FSR and the time payment was remitted."  *Id.* at ¶ 108.  The Board further alleges that FSR "disregarded the Board's explicit directive to withhold payments to Basonas," "failed to properly calculate the amount [of assessment funds] to be allocated to each [Condominium] unit owner," and "wrongfully remitted duplicate payments to certain of the Condominium's vendors, and overpaid others." *Id.* at ¶¶ 109–12.

While none of these allegations explicitly mentions negligence, when liberally construed, any of them could support such a finding, thus suggesting a "reasonable possibility of coverage" under the Evanston policy. *Great American Ins. Co.*, 449 F. Supp. 3d at 367 (citing *Dollar Phone Corp. v. St. Paul Fire and Marine Ins. Co.*, No. 09-CV-1640 (DLI) (VVP), 2012 WL 1077448, at *13–14 (E.D.N.Y. Mar. 9, 2012) (although majority of complaint alleged intentional conduct and did not specifically refer to any conduct as "negligent," plaintiff could have recovered without proof of intentional conduct because not all allegations specified defendant's state of mind), *adopted by* 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013)).   Here, several of the "common questions of law and fact" enumerated by the Board do not allege intentional conduct or require that Plaintiffs acted intentionally.   Therefore, even if it is ultimately unable to prove an intentional breach of contract by Plaintiffs, the Board may still be able to demonstrate that Plaintiffs were negligent in their failure to (1) properly supervise Basonas, (2) properly allocate assessment funds, (3) inform the Board regarding any code violations, and (4) make payments to vendors in a timely manner.   Leber Decl., Ex. B ¶¶ 9, 11, 92, 108–12.   Such findings would fall within the Evanston Policy's definition of a "Wrongful Act."   Leber Decl., Ex. A at 24 ("Wrongful Act means any negligent act, error or omission in Real Estate Services or Property Management Services").   As a result, "there remains a reasonable possibility that [Plaintiffs] will be found liable for conduct covered by the policy." *Great Am. Ins. Co.*, 449 F. Supp.

3d at 367 (quoting *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 341 (S.D.N.Y. 2003)).

Moreover, courts have determined that a breach of contract can be occasioned by a negligent failure to perform, and that actions alleging as much fall within the coverage of an errors and omissions insurance policy. *See, e.g.*, *Westport Ins. Corp. v. Hamilton Wharton Group, Inc.*, No. 10-CV-2188 (RMB) (THK), 2011 WL 724737, at *3 (S.D.N.Y. Feb. 23, 2011) (insurer had duty to defend because at least some allegations in underlying complaint alleged "negligence in the performance of professional services and/or breach of contract," thereby "present[ing] a reasonable possibility of coverage under the policy"); *Touchette Corp. v. Merchants Mut. Ins. Co.*, 76 A.D.2d 7, 10 (4th Dep't 1980) ("If the proof establishes that the breach [of contract] was occasioned by a negligent failure to perform, the errors and omissions policy unquestionably provides coverage."). More generally, courts have found that allegations of an insured's intentional conduct do not foreclose the possibility that the insured may still be found liable based on negligence. *See Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 341 (although complaints against insured primarily alleged intentional and fraudulent conduct, insured may still be found liable based on allegedly negligent conduct); *Hotel Des Artistes*, 1994 WL 26342, at *4 (finding "no patent inconsistency" in alleging intentional misconduct while arguing that certain omissions were negligent); *see also American Auto. Ins. Co. v. Security Income Planners & Co.*, 847 F. Supp. 2d 454, 463–64 (E.D.N.Y. 2012) (insurer has duty to defend where complaint alleges claim sounding in negligence).

In addition, Exclusion I's terms provide that "this exclusion shall not apply to . . . Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation . . . ." Leber Decl., Ex. A at 25. The breach of contract allegations against Plaintiffs have not yet been adjudicated by a trier-of-fact, and therefore, by the policy's own terms, Exclusion I does not yet apply.

Because the allegations set forth in the State Court Complaint do not foreclose a finding of negligence and because the breach of contract claims against Plaintiffs have not yet been adjudicated by a trier-of-fact, Exclusion I does not apply and Evanston's duty to defend remains triggered based on the current record in the Underlying Action.

   b.  <u>Exclusion O</u>

Pursuant to Exclusion O, the Evanston Policy precludes coverage for claims "based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount . . . of funds." Leber Decl., Ex A at 26. Evanston contends that because the complaint in the Underlying Action alleges that Plaintiffs misused and stole the Condominium funds, Exclusion O applies and precludes coverage. Def. Mem. at 21–23. Although several of the Board's factual allegations against Plaintiffs arguably arise from claims of conversion and/or misappropriation, the remaining causes of action are not *solely* based on those facts. As discussed above, several factual allegations (such as Plaintiffs' failure to properly supervise Basonas and their failure to inform the

Board of building code violations) are not instances of "conversion, misappropriation, commingling of or defalcation, theft, disappearance, or insufficiency . . . in the amount of funds." Leber Decl., Ex. A at 26. Rather, as noted, these allegations sound in negligence and therefore fall within the Evanston Policy. Under New York law, "if any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *JD2 Environmental Inc. v. Endurance American Ins. Co.*, No. 14-CV-8888 (JPO), 2017 WL 751157, at *4 (S.D.N.Y. Feb. 27, 2017) (quoting *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)). Because several allegations regarding Plaintiffs' conduct could ultimately constitute a covered event and do not fall solely within Exclusion O, Evanston's duty to defend remains intact.

   3. <u>Duty to Indemnify</u>

   As to the final issue presented by Plaintiffs, "[i]t is premature for the Court to determine whether or not [Evanston] has a duty to indemnify [them] because the issue of indemnification necessarily depends on facts that will be decided in the underlying state action." *Great Am. Ins. Co.*, 449 F. Supp. 3d at 372 (quoting *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012)); *see also Westport Ins. Corp.*, 2011 WL 724737, at *4 (an insurer's "duty to indemnify [an insured] necessarily depends on the resolution of one or more issues to be determined by the [s]tate [a]ctions and is, therefore, premature"); *Specialty Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) ("An action to declare the insurer's duty to indemnify is premature and does

not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action." (quoting *Hout v. Coffman*, 126 A.D.2d 973, 973 (4th Dep't 1987))).

Because the Underlying Action remains pending, Plaintiffs' motion with respect to Defendant's duty to indemnify should be denied as premature.[5]

## III. CONCLUSION

For the foregoing reasons, I recommend granting summary judgment to Plaintiffs on the duty to defend issue, but denying summary judgment on the issues of waiver and the duty to indemnify.  I recommend denying Evanston's cross-motion for summary judgment in its entirety.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, NY 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.

---

[5] The issue of attorneys' fees has not been fully briefed by the parties, and therefore the Court should also decline to reach it at this time.  *See, e.g., Great Am. Ins. Co.*, 449 F. Supp. 3d at 374.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 8, 2021
    New York, New York

 

 

JAMES L. COTT
United States Magistrate Judge