**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------x

THE WENTWORTH GROUP INC., FS PROJECT
MANAGEMENT, LLC and FIRSTSERVICE
RESIDENTIAL NEW YORK, INC,

                      Plaintiffs,

-against-

EVANSTON INSURANCE COMPANY,

                      Defendant.
------------------------------------------x

MEMORANDUM DECISION
AND ORDER

20 Civ. 6711 (GBD) (JLC)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs The Wentworth Group Inc., FS Project Management, LLC, and FirstService Residential New York, Inc. ("FSR", all together "Plaintiffs"), bring this action against Defendant Evanston Insurance Company seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.SC §§ 2201 and 2202. (Complaint, ECF No. 5, at 15.) Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking an order declaring that Defendant has a duty to defend and indemnify Plaintiffs in connection with a New York State Court action (the "Underlying Action"), and that the claims against FSR and FS Project Management in the Underlying Action are covered by the insurance policy issued by Defendant to Wentworth (the "Policy"), which names FSR and FS Project Management as additional insureds. (Plaintiffs' Notice of Motion for Summary Judgment ("Pls.' Notice of Mot."), ECF No. 21.) Defendant's cross move for summary judgment pursuant to Federal Rule of Civil Procedure 56 for an order denying (1) Plaintiffs' motion, (2) dismissing Plaintiff's Complaint, and (3) declaring that Defendant has no obligation to defend or indemnify Plaintiffs in the Underlying Action. (Defendant's Notice of Cross-Motion for Summary ("Def.' Notice of Mot."), ECF No. 32.)

1

Before this Court is Magistrate Judge James L. Cott's July 8, 2021 Report and Recommendation (the "Report"), recommending that Plaintiff's motion for summary judgment be granted with regards to Defendant's duty to defend Plaintiff in the Underlying Action, and denied with regards to Defendant's duty to indemnify Plaintiff in the Underlying Action. (*See* Report, ECF No. 44, at 25.) Magistrate Judge Cott also recommended that Defendant's motion for summary judgment be denied. (*Id.*)

In his Report, Magistrate Judge Cott advised the parties that failure to file timely objections would constitute waiver of those objections on appeal. (Report at 26.) Defendant filed timely objections. (Defendant's Objections to the Report ("Def.'s Objs."), ECF No. 51.) Plaintiff filed a timely response to those objections. (Plaintiffs' Response to Defendant's Objections, ECF No. 60.) Defendant objects to Magistrate Judge Cott's recommendation that an order be issued declaring that Defendant has a duty to defend FSR and FS Project Management in the Underlying Action because the allegations in the State Court Complaint do not "even remotely alleg[e] negligent conduct." (Def.'s Obj. at 16.)

Having reviewed the Report for clear error and finding none, this Court overrules the parties' objections and ADOPTS the Report in its entirety.

## I. FACTS

Defendant Evanston Insurance Company issued Wentwortg Real Estate Services and Property Management Services Professional Liability Insurance covering the period from July 17, 2014 to July 17, 2015 (the "Policy"). (Defendant's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mem."), ECF No. 33, at 6; Declaration of Bernice K. Leber dated January 4, 2021 ("Leber Decl."), ECF No. 22, Ex. A ("Policy"), at 3.2.) FSR and FS Project Management are identified as

2

"Additional Named Insureds" in the Policy. (Policy at 7.) The Policy provides coverage for "[d]amages as a result of a Claim first made against the Insured . . . by reason of . . . a Wrongful Act . . . in the performance of Real Estate Services or Property Management Services." (Policy at 20.) "Wrongful Act" is defined as a "negligent act, error or omission in Real Estate Services or Property Management Services." (*Id.* at 24.) Moreover, under the Policy, Defendant "shall have the right and duty to defend . . . any Claim to which coverage under this policy applies" and "shall pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period . . . by reason of a Wrongful Act . . . ." (*Id.* at 20, 28.) The Policy "does not apply to any Claim . . . based upon, arising out of, or in any way involving conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation . . . ," ("Exclusion I"). (Policy at 25.) The Policy also precludes covereage for claims "based upon or arising out of any actual or alleged conversion, misappropriation, commingling of or defalcation, theft, disappearance, insufficiency in the amount . . . of funds," ("Exclusion O"). (Policy at 26.)

In or around 2006, FSR was contracted and designated to serve as the managing agent for 325 Fifth Avenue Condominium in Manhattan, New York ("Condominium"). (Leber Decl., Ex. B (State Court Complaint) at ¶ 72.) FSR continued in that role until 2015. (*Id.*) FS Project Management provided management services to the Board during a portion of that time. (*Id.* at ¶ 4.) On May 12, 2015, the Board of Managers of the Condominium ("Board") initiated a lawsuit against FSR and FS Project Management, together with twenty-six other professionals and contractors who had performed services for the Condominium. (Defendant's Rule 56.1 Statement ("Def.'s 56.1 Stmt."), ECF. No. 34, ¶¶ 2,3,5.) The Board's complaint in the Underlying Action ("State Court

3

Complaint") asserted nine causes of action against FSR and PS Project Management for fraud, breach of fiduciary duty, constructive fraud, aiding and abetting, civil conspiracy, and breach of contract. (State Court Complaint at ¶¶ 117–206.) In October 2015, one of the vendors, Candido Basonas Construction Corp. ("Basonas"), brought crossclaims against all defendants in the Underlying Action and alleged that they were jointly and severally liable for any damages incurred by the Board. (Leber Decl., Ex. C (Answer to State Court Complaint) at ¶ 57.) At this time, the only live claims against FSR and FS Project Management are the Board's claim for breach of contract and Basonas' crossclaim for indemnification. (Leber Decl., Ex. N (Stipulation of Discontiniuance in Underlying Action) at 2-3.)

In relevant part, the State Court Complaint alleges that between 2007 and 2009, the Condominium sponsor retained FS Project Management to determine the cause of defects in the glass panels installed at the balcony rails that resulted in their falling and shattering. (State Court Complaint at ¶¶ 7, 82.) The State Court Complaint further alleges that in 2011, upon the recommendation of FS Project Management, the sponsor contracted with Basonas to repair the glass panels, but that Basonas' repairs were improper and exacerbated the existing defects. (*Id.* at ¶¶ 9, 91.) The Board also alleged that FSR concealed construction and design defects and failed to properly bill tenants, pay contractors, order supplies, and advise the Board about maintenance of common areas in the Condominium. (*Id.* at ¶¶ 107–08; 169–70.)

Shortly after the Board filed the Underlying Action, Plaintiffs submitted a claim under the Policy to Evanston. (Leber Decl., Ex. F (Letter dated May 7, 2015).) After conducting a three-month investigation of Plaintiffs' claim, Evanston issued a Coverage Letter on August 3, 2015. (Leber Decl., Ex. D ("Coverage Letter") at 2.) In the Coverage Letter, Defendant acknowledged that the claims alleged in the Underlying Action constituted "Wrongful Acts" under the Policy,

and thus triggered coverage. (*Id.* at 13.) For the next five years, Defendant paid 50% of the costs Plaintiffs incurred while defending the Underlying Action. (Defendant's Counterstatement to Plaintiff's Rule 56.1 Statement ("Def.'s 56.1 Counterstatement"), ECF No. 34, at ¶ 21.) On June 10, 2020, however, Defendant informed Plaintiffs that it was discontinuing coverage and would no longer contribute to Plaintiffs' defense in the Underlying Action. (Leber Decl., Ex. R (Letter of Coverage Discontinuance) at 2.) According to Defendant, the remaining breach of contract claims allege intentional conduct, and therefore do not arise from a "wrongful act" as defined in the Policy. (Leber Decl., Ex. R at 10–11.) On June 24, 2020, Defendant advised Plaintiffs that it was discontinuing coverage with respect to Basonas' crossclaim as well. (Leber Decl., Ex. S (Email of Coverage Discontinance) at 1.)

## II. LEGAL STANDARD

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). If no party files objections to a report and recommendation, the court "need only satisfy itself that there is no clear error on the face of the record." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 582 (S.D.N.Y. 2014) (citing *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and quotation marks omitted). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure[.]'" *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (first alteration in original) (citation omitted).

5

The clear error standard also applies where the objections filed are "'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge,' and are therefore improper." *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). When a party has filed proper objections, however, the court must make a *de novo* determination as to those portions of the report to which the objections are made. *See* 28 U.S.C. § 636(b)(1)(C); *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006). The court makes such a *de novo* determination when it "arrive[s] at its own, independent conclusion." *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

## B. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its

6

pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation and internal quotation marks omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III.   THE REPORT IS ADOPTED

Magistrate Judge Cott recommends that Plaintiffs be granted an order declaring that Defendant owes Plaintiffs a duty to defend in the Underlying Action for two reasons. (Report at 21-25.) First, because some of the remaining allegations against Plaintiffs fall within the Policy's definition of a Wrongful Act. (*Id.* at 21.) Second, Magistrate Judge Cott found that neither Exclusion O nor Exclusion I applies to FS Project Management nor FSR. (*Id.* at 23, 23-24). Defendant objects to Magistrate Judge Cott's recommendation on the grounds that the Report fails to address (1) whether the claims alleged against Plaintiffs in the Underlying Action arise out of a Wrongful Act as defined by the Policy, (Def.'s Objs. at 12); (2) whether the claims alleged against the FS Parties in the Underlying Action exclusively arise out of intentional misconduct. (*id.* at 15); and (3) whether the allegations against FS Residential all fall within Exclusion O, (*id.* at 18). As Defendant's objections repeat the arguments previously raised in their briefs, (Def.'s Mem at 19-23), and are

7

addressed in Magistrate Judge Cott's well-reasoned Report, this Court considers the Report for clear error.

Magistrate Judge Cott appropriately concluded that Defendants are not entitled to discontinue coverage of the Policy at this time because some of the remaining allegations against Plaintiffs fall within the Policy's definition of Wrongdul Act. (Report at 21.) As Magistrate Judge Cott noted, there are several common questions of law and fact enumerated by the Board in support of their breach of contract claims against FSR and FS Project management that neither allege intentional conduct, nor would require a factfinder to conclude that Plaintiffs acted intentionally in order to establish liability. (*Id.*) These include, among others, the Board's allegations that "when, under the direction and supervision of FS Project Management, [Basonas] improperly reinstalled the balcony rails," (State Court Complaint at ¶ 9); that FSR "fail[ed] to properly allocate the $1 million assessment approved by the Board to fund those investigation, and not only failing to collect the Sponsor's share of that allocation as a continuing owner of the Building's commercial spaces, but also inexplicably crediting back that assessment amount to the Spoinsor," (*id.* at ¶ 11); that "neither Basonas nor FS Project Management undertook to investigate the cause of the congestion of the rebar at the slab edges, or the impact that this condition may have on the balconies," (*id.* at ¶ 92); that FS Project Management did not "inform the Condominium that the congestion of reinforcing rebar at the edge of the concrete slab violated applicable code provisions," (*id.*); that "FSR routinely failed to register and remit payments on invoices from the Condominium's consultants … [including] fail[ing] to make payments to L&M for services performed in connection with the Local Law 11 inspection and the subsequent investigation of the original construction of the concrete balcone slabs . . . [as a result of which] L&M refused to perform additional services for the Condominium until payment was received," (*id.* at ¶ 108). (Report at 21.) As such, Magistrate

Judge Cott appropriately concluded that the Underlying Action was covered by the Policy because it remains a reasonable possibility that Plaintiffs will be found liable for breach of contract based on acts that were negligent as, opposed to intentional. (Report at 22-23.)

Magistrate Judge Cott also appropriately concluded that neither Exclusion O nor Exclusion I applies to either FS project Management or FSR. (*Id.* at 24.) With regards to Exclusion I, Magistrate Judge Cott correctly noted that, by its own terms, it did not apply until "an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest, or fraudulent or a willful violation of any statute." (Policy at 25; Report at 23.) As the breach of contract claim remains pending against both FS Project Management and FSR, the Defendant's cannot invoke that exclusion to discontinue coverage at this time. (Report at 23.) With regards to Exclusion O, Magistrate Judge Cott correctly noted that some of the allegations against FS Project management in the State Court Complaint allege that it failed to properly supervise Basonas and failed to inform the Board of building code violations, (State Court Complaint at ¶¶ 9, 11, 92), which cannot reasonably be considered instances of "conversion, misappropriation, commingling of or defalcation, theft, disappearance, or insufficiency . . . in the amount of funds," as required to fall under Exclusion O. (Report at 23-24 (citing Leber Decl., Ex. A at 26).) As some of the remaining allegations clearly fall within the scope of the policy, and neither Exclusion I nor O applies to either of the parties, Defendant's attempt to discontinue coverage fails. (*Id.*)

Magistrate Judge Cott also correctly concluded that this Court could not resolve the issue of indemnity at this time. (Report at 25.) As Magistrate Judge Cott noted that Defendant's duty to indemnify Plaintiffs would necessarily depend on the resolution of the allegations in the breach of contract claims. (Report at 24.) In particular, indemnity would depend on whether Plaintiffs were found to have negligently breached the contract based on allegations or negligence or based on

9

allegations of fraud or conversion. (Report at 24.) Since the Underlying Action remains pending, the issue of indemnification cannot be decided at this time and is premature. (*Id.*)

## IV. CONCLUSION

Defendant's objections are overruled and the Report is ADOPTED in full. Plaintiff's motion for summary judgment, (ECF No. 21), is GRANTED to the extent that this Court finds that Defendant has the duty to defend Plaintiffs in the Underlying Action. Defendant's cross motion for summary judgment, (ECF No. 32), is DENIED. The Clerk of the Court is directed to close the motions, (ECF Nos. 21 and 32), accordingly.

Dated: New York, New York
September 30, 2021

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge