USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/4/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE WENTWORTH GROUP INC., FS             :
PROJECT MANAGEMENT, LLC and              :
FIRSTSERVICE RESIDENTIAL                 :
NEW YORK, INC.,                          :
                                         :      **REPORT &**
                                         :      **RECOMMENDATION**
              Plaintiffs,                :
                                         :      20-CV-6711 (GBD) (JLC)
       -v-                               :
                                         :
                                         :
EVANSTON INSURANCE COMPANY,              :
                                         :
              Defendant.                 :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable George B. Daniels, United States District Judge:**

Plaintiffs The Wentworth Group Inc., FS Project Management, LLC, and

FirstService Residential New York, Inc. (collectively, "Plaintiffs") brought this

insurance coverage action against Defendant Evanston Insurance Company

("Evanston") seeking a declaration that Evanston had a duty to defend and

indemnify Plaintiffs in an action pending in New York State court, and that their

claim was covered under an insurance policy issued by Evanston. The parties cross-

moved for summary judgment on the issues of whether (1) Evanston waived its

right to disclaim coverage; (2) Evanston had a duty to defend Plaintiffs; and

(3) Evanston had a duty to indemnify Plaintiffs. In a Report & Recommendation, I

recommended that Plaintiffs' motion be granted in part and Evanston's motion be

denied in its entirety. The Report & Recommendation was subsequently adopted.

1

Plaintiffs now move for an award of attorneys' fees and costs in connection with this declaratory judgment action. For the reasons which follow, I recommend that Plaintiffs' motion be denied. However, should the Court be inclined to award attorneys' fees and costs, I recommend that Plaintiffs be awarded $183,204.80 in attorneys' fees and $400 in costs.

## I. BACKGROUND

The Court assumes familiarity with the facts underlying this action (and its prior Report and Recommendation), but nevertheless sets forth a brief summary based on the parties' motion papers.

### A. The Underlying Action

Plaintiffs provided property management and project management services to the Board of Managers ("the Board") of 325 Fifth Avenue Condominium in Manhattan ("the Condominium"). Declaration of Elliott I. Kroll dated August 25, 2021 ("Kroll Decl."), Dkt. No. 53, ¶ 3. In 2015, the Board filed suit in New York State Supreme Court, New York County (the "Underlying Action") against Plaintiffs FirstService Residential New York, Inc. ("FSR") and FS Project Management, along with 26 other professionals and contractors, due to alleged building defects and failures. *Id.* As of 2017, the only remaining claims in the Underlying Action were breach of contract claims alleged against FSR and FS Project Management and cross-claims brought by Candido Basonas Construction Corp. ("Basonas"), a contractor. *Id.* at ¶¶ 4, 14. All other defendants either settled or were dismissed, and the action is now ready to proceed to trial. *Id.* at ¶ 4.

### B. The Evanston Policy

Evanston issued Real Estate Services and Property Management Services Professional Liability Insurance to The Wentworth Group Inc. ("Wentworth") covering the period from July 17, 2014 to July 17, 2015 ("the Evanston Policy" or "the Policy").[1]  *Id.* at ¶ 3; *see also* Kroll Decl. Ex. C, Dkt. No. 53-3 at 3.[2]  FSR and FS Project Management are Additional Named Insureds under the Evanston Policy. Kroll Decl. ¶ 3; *see also* Kroll Decl. Ex. C at 7.

In 2015, Evanston began defending Plaintiffs in the Underlying Action.  Kroll Decl. ¶¶ 4, 14.  For the next five years, Evanston paid 50% of the costs Plaintiffs incurred while defending the Underlying Action.  Kroll Decl. ¶¶ 4, 14, 22.[3]  On June 10, 2020, Evanston informed Plaintiffs that it was disclaiming coverage and would no longer contribute to Plaintiffs' defense in the Underlying Action.  *Id.* at ¶¶ 4, 15.[4] In its letter disclaiming coverage, Evanston contended that the remaining breach of contract claims alleged intentional conduct, and therefore fell outside the purview of the Evanston Policy.  Kroll Decl. at ¶ 6.  On July 18, 2020, Evanston advised

---

[1] Plaintiffs do not explain the relationship between Wentworth and FSR and FS Project Management.

[2] For all references to page numbers in exhibits, the page number cited refers to the ECF filing number.

[3] The other half of the costs have been covered under a CNA insurance policy.  Kroll Decl. ¶ 22.

[4] Paragraph 4 of the Kroll Declaration states that Evanston disclaimed coverage on June 20, 2020, but the Court considers this a typographical error due to other references to Evanston's June 10, 2020 letter disclaiming coverage.  *See, e.g.,* Kroll Decl. ¶¶ 7 n.2, 15.

Plaintiffs that it was disclaiming coverage with respect to Basonas' cross-claim as well.  Kroll Decl. ¶ 7 n.2; Kroll Decl. Ex. E, Dkt. No. 53-5, at 2.

## C.  Procedural History & Summary Judgment Cross-Motions

In response to Evanston's June 2020 disclaimer of coverage, Plaintiffs filed this action on August 20, 2020 seeking a declaratory judgment that (1) they continued to be covered by the Evanston Policy; (2) Evanston had a duty to defend them in the Underlying Action; and (3) Evanston had a duty to indemnify them for all amounts which they become legally obligated to pay as damages in the Underlying Action.  Complaint, Dkt. No. 5, ¶¶ 47–58.  Plaintiffs also alleged that Evanston's disclaimer of coverage breaches the policy terms and sought attorneys' fees, costs, and the expenses incurred in bringing this lawsuit.  *Id.* at ¶¶ 59–66.  Evanston denied these allegations and argued that it had no further duty to defend Plaintiffs in the Underlying Action.  Answer, Dkt. No. 18, at 10.

On January 4, 2021, Plaintiffs moved for summary judgment – Dkt. Nos. 21–24, 30, 40 – and Evanston cross-moved for summary judgment on February 12, 2021.  Dkt. Nos. 32–37.  On January 11, 2021, the parties' summary judgment motions were referred to me for a report and recommendation.  Dkt. No. 28.  On July 8, 2021, I issued a Report & Recommendation recommending that Plaintiffs' motion be granted in part because the remaining claims in the Underlying Action at

least arguably arose from covered events, and therefore Evanston continued to have a duty to defend the entire action.  Dkt. No. 44 ("Report" or "R&R") at 23–24.[5]

On August 25, 2021, after the issuance of the R&R but before it was adopted, Plaintiffs moved for their attorneys' fees and costs incurred in bringing this declaratory action.  Notice of Motion, Dkt. No. 52, Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees ("Pl. Mem."), Dkt. No. 54; Kroll Decl.  On September 30, 2021, the R&R was adopted in full.  Dkt. No. 61.[6]  Evanston filed opposition papers to Plaintiffs' motion for attorneys' fees on November 12, 2021.  Defendant's Memorandum of Law in Opposition ("Def. Mem."), Dkt. No. 71; Declaration of Michael Tricarico dated November 12, 2021 ("Tricarico Decl."), Dkt. No. 72.  Plaintiffs filed reply papers on November 29, 2021.  Plaintiffs' Reply Memorandum of Law ("Pl. Reply"), Dkt. No. 76; Reply Declaration of Elliott M. Kroll dated November 29, 2021 ("Kroll Reply Decl."), Dkt. No. 77; Reply Declaration of Bernice K. Leber dated November 29, 2021 ("Leber Reply Decl."), Dkt. No. 78.[7]

---

[5] However, I recommended denying Plaintiffs' motion with respect to Evanston's alleged waiver of its right to disclaim coverage and Evanston's duty to indemnify Plaintiffs.  *See* R&R at 8–14; 24–25.

[6] On October 14, 2021, Evanston filed a motion for reconsideration of this decision, Dkt. Nos. 63–64, which is currently pending.

[7] "Unlike the typical attorney affirmation, which simply attaches and identifies exhibits for the Court," *Dejana Indus., Inc. v. Village of Manorhaven*, No. 12-CV-5140 (JS) (SIL), 2015 WL 1275474, at *2 (E.D.N.Y. Mar. 18, 2015), the Kroll and Leber Declarations contain factual summaries and legal arguments.  *See, e.g.,* Kroll Reply Decl. ¶¶ 4, 7–11; Leber Reply Decl. ¶¶ 5, 8–21.  Such declarations are generally "improper and inadmissible" both because they "could not possibly be based on personal knowledge because [they are] based entirely on counsel's own interpretation of the evidence in the record," and because pursuant to Local Civil Rule 7.1, legal arguments must be set forth in a memorandum of law rather than in an attorney declaration.  *Quattlander v. Ray*, No. 18-CV-3229 (CS), 2021 WL

On December 5, 2021, Evanston submitted a proposed sur-reply to address several arguments raised in Plaintiffs' reply papers.  Defendant's Proposed Sur-Reply ("Def. Sur-Reply"), Dkt. No. 83-1.[8]

## II. DISCUSSION

### A. Plaintiffs' Entitlement to Attorneys' Fees

#### 1. Applicable Legal Standards

Under New York law, a "successful party in litigation may not recover attorneys' fees, except where authorized by the parties' agreement, statutory provision or court rule." *Chase Manhattan Bank v. Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005*, 258 A.D.2d 1, 4 (1st Dep't 1999) (citation omitted).[9]  In the insurance context specifically, "attorney's fees are not available when an insured brings an affirmative action against his insurer . . . ." *Fishberg v. State Farm Fire & Casualty Co.*, No. 20-CV-6664 (LJL), 2021 WL 3077478, at *7 (S.D.N.Y. July 20, 2021); *see also Stiler v. Great Northern Ins. Co.*,

---

[8] Because Plaintiffs' reply papers contain new arguments (particularly regarding the issue of whether the Tricarico Declaration violates Federal Rule of Evidence 408, *see* Pl. Reply at 4–5), the Court will consider the sur-reply in its analysis herein.  *See, e.g., Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11-CV-6804 (PAE), 2012 WL 32352, at *1 (S.D.N.Y. Jan. 6, 2012) (court granted leave to file sur-reply when new arguments raised in moving party's reply brief).

[9] For the same reasons discussed in the Report, the Court will apply New York law. *See* R&R at 9 n.4.

No. 07-CV-2236 (MDF), 2008 WL 11517681, at *4 (S.D.N.Y. Jan. 2, 2008) (under New York law, "an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even [if] the carrier loses the controversy and is held responsible for the risk.") (quoting *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005)).

However, New York law recognizes "a 'narrow exception' to the general 'American rule' that a prevailing party cannot recover attorneys' fees" in the insurance context.  *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC,* 369 F.3d 102, 110 (2d Cir. 2004).  This exception allows an insured who "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations" and who "prevails on the merits" to recover attorneys' fees. *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004) (answering question certified by Second Circuit) (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)); *see also Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121 (JPO) (JCF), 2013 WL 364734, at *3 (S.D.N.Y. Jan. 31, 2013), *adopted by* 2013 WL 1387017 (Apr. 5, 2013).  The reasoning behind this exception is that "an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action."  *Danaher Corp.*, 2013 WL 364734, at *3 (quoting *U.S. Underwriters Ins. Co.,* 3 N.Y.3d at 597–98).  "Thus, it is not so much an exception to the American rule that litigants pay their own fees and expenses, as it is a right

that 'arises from th[e] contractual duty' to defend." *Id.* (quoting *Chase Manhattan Bank*, 258 A.D.2d at 5).

In considering whether an insured has been cast in a defensive posture, it is "anomalous for the entitlement of fees to turn on the fortuity of whether a party to an insurance contract is cast as the plaintiff or defendant." *Id.* (quoting *Cowan v. Ernest Codelia, P.C.*, No. 98-CV-5548 (JGK) (JCF), 2001 WL 30501, at *3 (S.D.N.Y. Jan. 12, 2001)).  Indeed, "courts have made clear that in certain cases the rule need not be quite so mechanically applied." *Id.* (citing *City of N.Y. v. Zurich-American Ins. Grp.*, 2004 WL 2403179, at *1 (N.Y. Sup. Ct. Oct. 22, 2004)); *see also Hurney v. Mattson*, 59 A.D.2d 934, 934 (2d Dep't 1977).  Therefore, "in unusual circumstances, a court may look beyond the labels of 'plaintiff' and 'defendant' to determine whether an insured is in an offensive or defensive position vis á vis its insurer in a dispute over the duty to defend (and indemnify)." *Danaher*, 2013 WL 364734, at *4.

Courts have also considered what kind of "legal step" is sufficient to put an insured in a defensive posture and justify an attorneys' fees award. *Hervochon v. Iona College*, No. 14-CV-6017 (CS) (PED), 2019 WL 2451431, at *5 (S.D.N.Y. Feb. 15, 2019) ("Courts in this district have consistently, and unsurprisingly, held that filing an action constitutes a 'legal step' in this context.") (collecting cases), *adopted by* 2019 WL 1375359 (Mar. 27, 2019); *cf. Stein v. N. Assur. Co. of Am.*, No. 09-CV-1029 (TCP) (AKT), 2012 WL 1605365, at *12 (E.D.N.Y. May 7, 2012) (insurer's improper abandonment of insured's defense in underlying action without seeking judicial determination was insufficient legal step to place insured in defensive

posture)).  In order to trigger an insured's attorneys' fees award, an insurer must

take an affirmative action that is "tantamount to an action brought by the insurer

seeking to free itself from its policy obligations."  *Stein*, 2012 WL 1605365, at \*12

(citations omitted); *see also Lauder v. OneBeacon Ins. Group LLC*, 918 N.Y.S. 2d

825, 832 (N.Y. Sup. Ct. 2011) (same); *Hervochon*, 2019 WL 2451431 at \*6–7

(surveying cases and determining that "[c]ourts have not interpreted 'legal steps' so

broadly as to include anything short of steps 'tantamount to an affirmative

action.'").

    New York law also recognizes a second exception to the general rule that an

insured "may not recover the expenses incurred in bringing an affirmative action

against an insurer to settle its rights under the policy."  *Nat'l R.R. Passenger Corp.*

*v. Arch Specialty Ins. Co.*, 124 F. Supp. 3d 264, 280 (S.D.N.Y. 2015) (quoting *New*

*York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995)).  Under this exception, an

insured who brought an affirmative action against an insurer may recover

attorneys' fees when the insured can make "a showing of such bad faith [on the part

of the insurer] in denying coverage that no reasonable carrier would, under the

given facts, be expected to assert it."  *Id.* (quoting *Sukup v. State*, 281 N.Y.S.2d 28,

31 (1967)).  Under New York law, "bad faith exists only where 'the wrong

complained of is morally culpable, or is actuated by evil and reprehensible motives.'"

*Liberty Surplus Ins. Corp. v. Segal Co.*, No. 03-CV-2194 (BSJ), 2004 WL 2102090, at

\*4 (S.D.N.Y. Sept. 21, 2004) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961)).

Moreover, there is a "strong presumption in New York against a finding of bad faith

9

liability by an insurer." *Northway Medical Center Condo v. Hartford Fin. Servs. Grp.*, No. 20-CV-9864 (NSR), 2022 WL 94884, at *4 (S.D.N.Y. Jan. 10, 2022). This presumption "can be rebutted only by evidence establishing that the insurer's refusal to defend was based on 'more than an arguable difference of opinion' and exhibited 'a gross disregard for its policy obligations.'" *Id.* (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624–25 (2d Cir. 2001)). When an insured fails to identify any facts to support a finding of bad faith, courts have declined to "impose extracontractual liability for legal expenses . . . ." *Liberty Surplus Ins. Corp.*, 2004 WL 2102090, at *5 (citing *Sukup*, 19 N.Y.2d at 522).

## 2. Application

In this case, Plaintiffs, the insured, brought an affirmative action against Evanston, the insurer, seeking a declaratory judgment regarding Evanston's duty to defend the Underlying Action. *See generally* Complaint, Dkt. No. 5, *see also* Pl. Mem. at 2. Therefore, despite their success in seeking a declaratory judgment, Plaintiffs would ordinarily not be entitled to recover attorneys' fees. *See, e.g., Nat'l R.R. Passenger Corp.*, 124 F. Supp. 3d at 280.

However, Plaintiffs contend that Evanston placed them in a defensive posture by its "sudden refusal to pay its defense costs in the [Underlying Action]" on June 10, 2020. Pl. Mem. 12–13; *see also* Pl. Mem. at 4. Plaintiffs contend that as a result of this refusal, they "effectively had no choice but to initiate this action to clarify the parties' obligations and secure the defense to which they are entitled," and are therefore entitled to an award of attorneys' fees. *Id.* at 13. Evanston

10

counters that Plaintiffs brought this affirmative, declaratory action to settle their rights, and therefore Plaintiffs are not entitled to an award of attorneys' fees.  Def. Mem. at 11.

Plaintiffs' request for attorneys' fees and costs should be denied for two reasons.  <u>First</u>, Plaintiffs have failed to identify a "legal step" taken by Evanston that placed them in a defensive posture.  Plaintiffs place great emphasis on the fact that Evanston's June 2020 letter, issued after it had provided a defense in the Underlying Action for five years, forced them into a defensive posture.  Pl. Mem. at 8.  But that is not the end of the inquiry.  As Plaintiffs themselves recognize, a court must determine "which party took the first 'legal step,' and while a legal step need not be the commencement of an action, it must be 'tantamount to an action brought by the insurer seeking to free itself from its policy obligations.'"  Pl. Mem. at 11 (quoting *Hervochon*, 2019 WL 1375359, at *4).

Here, according to Plaintiffs, the only "step" Evanston took was issuing the June 2020 letter disclaiming coverage and withdrawing its defense.  Pl. Mem. at 4, 12–13.  This action alone is not "tantamount" to a lawsuit or an action brought by the insurer seeking to free itself from its policy obligations.  *Lauder*, 918 N.Y.S. 2d at 833.  Moreover, courts applying New York law have consistently found that an insurer's disclaimer of coverage, without more, is an insufficient legal step to place the insured in a "defensive posture" such that an attorneys' fees award is warranted.  *See, e.g., Hervochon*, 2019 WL 2451431, at *2, 8 (insurer's letter denying obligation to defend or indemnify insured was insufficient legal step to

place insured in defensive posture); *Ruiz v. Liberty Mut. Fire Ins. Co.*, No. 19-CV-4399 (VB), 2019 WL 7293377, at *4 (S.D.N.Y. Dec. 30, 2019) (plaintiff-insured not placed in defensive posture when defendant-insurer denied insured's claims for coverage, after which insured affirmatively commenced litigation to settle its rights); *Stein*, 2012 WL 1605365, at *12 (defendant-insurer's improper abandonment of defense without seeking judicial determination was insufficient legal step to place insured in defensive posture); *Stiler,* 2008 WL 11517681, at *1, 4 (denying plaintiff-insured's attorneys' fees request when only action preceding plaintiff's affirmative lawsuit was insurer's letter declining coverage). "To conclude otherwise would eviscerate both the general rule respecting attorneys' fees in insurance coverage litigation and the narrow exception" to that rule. *Ruiz*, 2019 WL 7293377, at *4. Instead, this case is like "any case where a party to a contract breaches his or her part of an agreement which forces the other party to bring suit to enforce his or her rights." *Stein*, 2012 WL 1605365, at *12.

To support their argument, Plaintiffs rely heavily on *Houston Casualty Co. v. Prosight Specialty Ins. Co.*, in which the court awarded attorneys' fees to a plaintiff-insured who brought an affirmative action against an insurer. 462 F. Supp. 3d 443 (S.D.N.Y. 2020). In deciding to award attorneys' fees, however, the court there identified a number of "unusual circumstances" that justified such an award, notwithstanding the insured's position as plaintiff. *Id.* at 452–53. For example, the court noted that the defendant-insurer resisted the duty to defend "from the jump." *Id.* at 452. The insurer did so by (1) denying a duty to defend in its answer to

plaintiff's third-party complaint, (2) filing a counterclaim seeking a declaratory judgment that the insurer had no duty to defend, and (3) denying a duty to defend in its answer in the litigation before the court.  *Id.* at 452.  The court also noted that the defendant-insurer "persistently and seemingly reflexively" denied a duty to defend, even though the texts of the relevant insurance policies "made [that] duty plain."  *Id.*

Plaintiffs do not identify any analogous circumstances here.[10]  Therefore, this case is indistinguishable from the cases previously cited where an insurer disclaims coverage, an insured brings a declaratory action to settle its rights, and the court denies attorneys' fees despite the insured's success in the action.  *See, e.g., Ruiz*, 2019 WL 7293377, at *4; *Stein*, 2012 WL 1605365, at *12; *Stiler,* 2008 WL 11517681, at *1, 4.  Moreover, as Plaintiffs acknowledge, Evanston did provide a defense in the Underlying Action for five years.  Kroll Decl. ¶ 4; Pl. Mem. at 4.  Even after Evanston sent its June 2020 letter disclaiming coverage, the parties engaged in discussions in an attempt to settle or resolve the coverage issues raised by Evanston's letter.  Tricarico Decl. ¶ 14.  Between June and August 2020, Evanston continued to pay for Plaintiffs' defense costs, *id.,* and indicated its willingness to provide a defense for an additional 45 days (until October 2020) while

---

[10] To the extent Plaintiffs contend that the timing of Evanston's disclaimer "at the 11th hour," Pl. Mem. at 1, makes this case analogous to *Houston Casualty Co.*, such an argument is without merit.  While a trial in the Underlying Action may be the next step, as the Court noted in its Report, there is no indication that trial is imminent.  R&R at 13.  Moreover, there is no evidence that the timing of Evanston's disclaimer of coverage has sufficiently prejudiced Plaintiffs.  *Id.*

the parties continued settlement discussions.  *Id.* at ¶ 15.  This conduct is in stark contrast to the defendant-insurer's "persistent[]" and "reflexive[]" denial of a duty to defend at issue in *Houston Casualty Co.*  462 F. Supp. 3d at 452.[11]

Second, Plaintiffs have failed to "make a showing of such bad faith [by Evanston] in denying coverage."  *Nat'l R.R. Passenger Corp.*, 124 F. Supp. 3d at 280 (quoting *Sukup*, 19 N.Y.2d at 522).  Plaintiffs have not identified any facts to demonstrate that Evanston's disclaimer of coverage was indicative of bad faith instead of "an arguable difference of opinion between carrier and insured over coverage."  *Liberty Surplus Ins. Corp.*, 2004 WL 2102090, at *5.  Nor have Plaintiffs identified any conduct that exhibits Evanston's "gross disregard" for its obligations under the Policy.  *Northway Medical Center Condo*, 2022 WL 94884, at *4.[12]  To the

---

[11] Plaintiff contends that paragraphs 14–17 of the Tricarico Declaration should be stricken because the facts set forth therein are inadmissible under Rule 408 of the Federal Rules of Evidence.  Pl. Reply at 4–5.  "Rule 408 bars the admission of most evidence of offers of compromise and settlement."  *Trebor Sportswear Co v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989).  As an initial matter, the Court does not consider paragraphs 14–17 of the Tricarico Declaration to be "evidence of offers of compromise and settlement," but merely information regarding the backdrop of the parties' settlement negotiations.  Moreover, "evidence of a settlement agreement and its surrounding circumstances though otherwise barred by Rule 408, can fall outside the Rule if it is offered for another purpose, i.e., for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle."  *Complex Systems, Inc. v. ABN AMBRO Bank N.V.*, No. 08-CV-7497 (KBF), 2014 WL 1055263, at *2 (S.D.N.Y. Mar. 13, 2014) (citations omitted).  Therefore, even if paragraphs 14–17 of the Tricarico Declaration did constitute Rule 408 material, the facts set forth therein are offered to provide context regarding whether Plaintiffs were placed in a defensive posture by any legal steps taken by Evanston.  Therefore, the Court declines to deem these paragraphs inadmissible under Rule 408.

[12] To the extent Plaintiffs contend that the timing of Evanston's disclaimer "at the 11th hour," Pl. Mem. at 1, is indicative of Evanston's bad faith, such an argument is unavailing.  *See supra* n.10.

contrary, Evanston's decision to continue paying for Plaintiffs' defense costs from June to August 2020 and offer to continue paying for those costs for an additional 45 days while the parties continued settlement discussions, Tricarico Decl. ¶¶ 14–15, demonstrate the extent to which Evanston took its defense obligations seriously.

Moreover, courts have found that an insurer's disclaimer of coverage based on a reasonable interpretation of the policy, without more, does not constitute bad faith, even when the insurer's interpretation is ultimately rejected. *See e.g., United States Fire Ins. Co. v. Nine Thirty FEF Invs., LLC*, 132 A.D.3d 413, 415–16 (1st Dep't 2015) (insurer's differing interpretation of policy exclusion, although ultimately unavailing, did not evince bad faith, and therefore insured not entitled to attorneys' fees); *99 Wall Dev't, Inc. v. Allied World Specialty Ins. Co.*, No. 18-CV-126 (RA), 2021 WL 4460638, at *11–12 (S.D.N.Y. Sept. 29, 2021) (prevailing plaintiff-insured not entitled to attorneys' fees when insurer asserted mistaken yet plausible interpretation of policy provisions); *Cowan*, 2001 WL 30501, at *4 (plaintiff-insured not entitled to attorneys' fees because court's consideration of defendant-insurer's arguments demonstrated that insurer had arguable, although ultimately unpersuasive, case for denying coverage).

For these reasons, Plaintiffs' request for attorneys' fees and costs incurred in bringing this action should be denied.

Should the reviewing court disagree and be inclined to award attorneys' fees and costs, however, I will briefly analyze the amount of attorneys' fees and costs Plaintiffs should be awarded in order to complete the record. Plaintiffs request

$228,242.50 in attorneys' fees and $986.61 in costs for 289.9 hours of work performed.  Pl. Mem. at 15–16; Kroll Decl. ¶¶ 24; 33–35.[13]

## B. Attorneys' Fees Award

The inquiry into reasonableness in the context of attorneys' fees centers on the lodestar, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (the lodestar creates a "presumptively reasonable fee") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552–53 (2010).  While "the lodestar is not always conclusive, its presumptive reasonability means that" district courts must "calculate it as a starting point" in determining attorneys' fees, *Millea*, 658 F.3d at 166, departing from it if necessary "to reflect consideration of any case-specific circumstances." *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at *13 (S.D.N.Y. Nov. 12, 2013), *adopted by* 2014 WL 112397 (Jan. 8, 2014).

### 1. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay" and "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  District courts should, in determining the rate a reasonable client would be willing to pay, consider factors

---

[13] Plaintiffs' counsel states that Plaintiffs were given a 20% discount on the final invoice, Kroll Decl. ¶ 24, but the requested fee amount reflects the pre-discounted fee total.

including "the complexity and difficulty of the case," "the timing demands of the case," and "other returns (such as reputation, etc.) that an attorney might expect from the representation." *Id.* at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984); *accord Reiter v. MTA N.Y.C. Transit Auth.,* 457 F.3d 224, 232 (2d Cir. 2006).

The work in this case was performed by the following individuals at Arent Fox LLP at the following rates: partners Elliot Kroll ($885 per hour), Bernice Leber ($885 per hour), junior associate Stefan Bogdanovich ($490 per hour), and senior paralegal Aimee Hall ($410).  Pl. Mem. at 15.  The rates requested for Mr. Kroll and Ms. Leber are within the range of rates that courts have awarded for partners at large New York law firms engaging in complex commercial litigation.  *See, e.g., Carrington v. Garden*, No. 18-CV-4609 (KPF), 2020 WL 5758916, at *12 (collecting cases).  With respect to Mr. Bogdanovich, however, recent decisions from this district have awarded junior associates employed at large law firms an hourly rate of between $275 and $450.  *Id.* at *13 (collecting cases).  Given Mr. Bogdanovich's approximately three years of experience, Kroll Decl. ¶ 35; Leber Reply Decl. ¶ 13, the Court recommends an hourly rate of $450.[14]  Similarly, with respect to Ms. Hall,

---

[14] The Court finds the charts submitted by Plaintiffs reflecting the hourly rates of associates at other large law firms, Kroll Decl. Ex. J & K, Dkt. No. 53-10, 53-11, to be unpersuasive because they provide no context regarding the reasonableness of those rates in light of factors such as "the complexity and difficulty of the case," "the timing demands of the case," and "other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill*, 522 F.3d at 184.

courts have generally capped hourly rates at $200, even for senior paralegals with extensive experience. *Carrington*, 2020 WL 5758916 at *14 (collecting cases). Therefore, the Court recommends an hourly rate of $200 for Ms. Hall.

### 2. Reasonable Number of Hours Expended

An attorney "who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specif[ying], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). From these records, courts can make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 650 (S.D.N.Y. 2018) (citing *Arbor Hill*, 522 F.3d at 190).

In assessing the number of hours for which compensation should be awarded, "[t]he court's role is not to determine whether the number of hours worked by [plaintiff's] attorney[ ] represents the most efficient use of resources, but rather whether the number is reasonable." *Antetokounmpo v. Searcy*, No. 20-CV-5055 (JGK) (KHP), 2021 WL 3233417, at *6 (quoting *In re Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil*, 160 F. Supp. 2d 613, 616 (S.D.N.Y. 2001)), *adopted by* 2021 WL 3233005 (June 23, 2021). The court should strike a balance "between

principles of thoroughness and efficiency." *LCS Grp. LLC v. Shire LLC*, 383 F.
Supp. 3d 274, 280 (S.D.N.Y. 2019) (internal quotation marks omitted).  "The court
must examine the amount of time spent on each task and decide 'how much of that
time was reasonably expended given the scope and complexity of the litigation.'"
*Global Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, No. 17-CV-7137
(LAK) (SLC), 2020 WL 9762874, at *6 (S.D.N.Y. May 29, 2020) (internal quotation
marks and citation omitted), adopted by Order, Dkt. No. 58 (Aug. 4, 2020).

 "A district court should reduce the number of hours included in the fee
calculation if the claimed time is 'excessive, redundant, or otherwise unnecessary.'"
*Filo Promotions*, 311 F. Supp. 3d at 650 (quoting *Luessenhop v. Clinton Cty., N.Y.,*
324 F. App'x 125, 126–27 (2d Cir. 2009)); *see also Hensley v. Eckerhart,* 461 U.S.
424, 436 (1983) ("[t]here is no precise rule or formula for making these
determinations.").  A court may apply a percentage reduction to effectuate the
reasonable imposition of fees.  *LCS Grp.*, 383 F. Supp. 3d at 281; *see Marisol A. ex
rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than
reducing a certain number of unreasonably billed hours, the [c]ourt will make an
across-the-board percentage cut in [the] plaintiffs' fee award as is necessary and
appropriate.").

 Evanston contends that Plaintiffs' number of hours expended should be
reduced for the following reasons: (1) Plaintiffs were only partially successful in the
declaratory judgment action, as both this Court and the reviewing court determined
that Evanston had not waived its right to disclaim coverage and Plaintiffs' duty to

indemnify claim was premature; (2) Plaintiffs' counsel's invoices contain block-billed entries; (3) Plaintiffs' counsel neglected to delegate tasks to associates and/or support staff; (4) Plaintiffs' counsel improperly billed for vague intra-office communications; and (5) significant portions of the fee invoices are redacted.  Def. Mem. at 17–25.

Having reviewed the entire record, the Court recommends a 20% reduction of the approximately 289.9 hours expended in this case.  First, as Evanston contends, the vast majority of Plaintiffs' counsel's time entries reflect block billing (the clustering of various tasks into a single time entry without indicating how much time was spent on each individual task).  *See generally*, Leber Reply Decl. Ex. A, Dkt. No. 78-1[15]; *see also H.B. Auto. Group, Inc. v. Kia Motors America, Inc.*, No. 13-CV-4441 (VEC) (DF), 2018 WL 4017698, at *11 (S.D.N.Y. July 25, 2018) (defining block billing), *adopted by* 2018 WL 4007636 (Aug. 22, 2018).  Block billing is "not prohibited in this Circuit, as long as the Court can determine, from the context of the time entries, the overall reasonableness of the total hours claimed . . . ."  *Id.* (citing *Zimmerman v. Portfolio Recovery Assocs.,* No. 09-CV-4602 (PGG), 2013 WL 6508813, at *11 (S.D.N.Y. Dec. 12, 2013)).

Here, however, the use of block billing has significantly "hindered the Court's ability to determine how much time was devoted to particular tasks and thereby ascertain whether that time was reasonably spent."  *Id.*  Ms. Leber billed the most

---

[15] The Court relies on this version of the submitted fee invoices because it reflects the parties' negotiation regarding redacted time entries.  *See* Dkt. No. 47-1 (first round of redactions; Dkt. Nos. 69, 69-1 (excerpt featuring time entries with removed redactions).

time in this matter, and almost exclusively block billed her time entries.  *See generally* Dkt. No. 78-1; Pl. Mem. at 15.  As a result, the Court cannot assess the reasonableness of the time she spent on individual tasks.  For example, in a single time entry, Ms. Leber billed $3,540.00 for the following:

> Revised draft Complaint; TCW SB re research re recovery of attys fees; reviewed research; email EK; TCW Ben Kirschenbaum; Read email from Ben re [redacted]; checked relationship w/ Wentworth; reviewed correspondence addressed from Markel to Wentworth; TCW EK re: same; add facts to complaint; check Houston Casualty complaint re attorneys fees; add Wentworth and conform to rest of pleading; added allegations re Markel and relationship to Evanston for establishing liability.

Dkt. No. 78-1 at 6 (time entry for 8/14/20).  This entry offers no indication of how much time Ms. Leber spent on each of the tasks listed.  Her time records are filled with entries that are similarly opaque.  *See, e.g.,* Dkt. No. 78-1 at 6–9, 13–15, 18–28 (time entries for 8/13/20; 8/16/20; 8/20/20; 8/21/20; 8/26/20; 8/31/20; 9/01/20; 9/02/20; 9/04/20; 9/08/20; 9/15/20; 9/30/20; 10/06/20; 10/08/20; 10/30/20; 11/12/20; 11/17/20; 11/18/20; 11/24/20; 11/25/20; 11/30/20; 12/01/20; 12/09/20; 12/10/20; 12/14/20; 12/15/20; 12/16/20; 12/18/20; 12/21/20; 12/22/20; 12/23/20; 12/24/20; 12/28/20; 1/03/21; 1/04/21; 1/05/21; 1/06/21; 1/07/21; 1/08/21; 1/11/21; 1/12/21; 1/27/21; 2/15/21; 2/16/21; 2/17/21; 2/23/21; 3/05/21; 3/09/21; 7/12/21).

Moreover, Ms. Leber's block-billing practice is exacerbated by the fact that she often billed time for work that could have been performed by a more junior attorney, such as cite checking, shepardizing cases, researching a judge's individual rules, reviewing document productions, and drafting and editing forms for service. *See, e.g.,* Dkt. No. 78-1 at 7, 13, 20, 22–24, 26–28 (time entries for 8/16/20; 9/01/20;

12/09/20; 12/23/20; 12/28/20; 1/05/21; 1/11/21; 2/24/21; 03/09/21). "Courts frequently

reduce fee requests where work that could have been handled by more junior

lawyers was instead performed by a senior partner." *Union Cent. Life Ins. Co. v.*

*Berger*, No. 10-CV-8408 (PGG), 2013 WL 6571079, at *6 (S.D.N.Y. Dec. 13, 2013)

(collecting cases); *see also HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721,

725 (S.D.N.Y. 2018) (reducing total fee award by 25% when senior counsel

performed substantial number of tasks that junior attorney could have performed);

*Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016) ("courts have reduced

the fee percentage requested where, as here, the lodestar value reflects an over-

allocation of work to expensive partners"); *Lane Crawford LLC v. Kelex Trading*

*(CA) Inc.*, No. 12-CV-9190 (GBD) (AJP), 2013 WL 6481354, at *9 (Dec. 3, 2013)

(reducing fee award by 15% when attorney billed at high rate for work such as

drafting standard forms of service and reviewing judge's rules), *adopted by* 2014 WL

1338065 (Apr. 3, 2014); *Rosso v. Pi Mgmt. Assocs.*, No. 02-CV-1702 (KNF), 2006 WL

1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing fees by 15% where, *inter alia*, some

work performed by senior attorney could have been performed by junior attorney).

Here, due to Ms. Leber's block-billing, the Court cannot determine how much time

she spent on tasks more appropriate for a junior attorney and how much time she

spent on tasks more appropriate for her level of experience.

For these reasons, a 20% reduction of the total fee award is appropriate.

Courts in this district often apply reductions in the range of 15 to 30 percent to

account for certain timekeeping practices, such as block-billing and vague time

records, which frustrate the court's ability to assess the reasonableness of counsel's hours. *See H.B. Auto Group*, 2018 WL 4017698, at \*12 (collecting cases). The Court therefore recommends awarding attorneys' fees at the rates discussed above for 231.92 hours of work, for a total of $183,204.80, as set forth in the chart below.[16]

**Table 1: Attorneys' Fees**

| Timekeeper | Hourly Rate (with reductions): | Hours (with 20% reduction): | Total: |
|---|---|---|---|
| E. Kroll | $885 | 11.36 | $10,053.60 |
| B. Leber | $885 | 172.32 | $152,503.20 |
| S. Bogdanovich | $450 | 44.0 | $19,800.00 |
| A. Hall | $200 | 4.24 | $848.00 |
| **TOTAL FEES** | | | **$183,204.80** |

3.   <u>Costs</u>

Plaintiffs also seek $986.88 in costs, which include court filing fees, service of process costs, court records access costs, and messenger service fees. Dkt. No. 78-1; Pl. Mem. at 16. Litigation costs are generally recoverable if they are "necessary for the representation of the client." *U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc.*, No. 12-CV-8753 (JGK) (GWG), 2013 WL 5363777,

---

[16] The Court's proposed 20% reduction is at the lower end of the range of percentage reductions courts have applied for these types of issues. However, the Court recommends this percentage in light of the separate recommendation to reduce the hourly fees for Mr. Bogdanovich and Ms. Hall. *See, e.g., H.B. Auto. Group*, 2018 WL 4017698, at \*12 (recommending 15 percent reduction in light of separately recommended reduction of counsel's hourly rate).

at *8 (S.D.N.Y. Sept. 26, 2013) (quoting *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999)), *adopted by* 2013 WL 5664058 (Oct. 17, 2013).  The Court takes judicial notice of the $400 filing fee.  *See, e.g.*, *Soto v. Los Corbaticas Deli Grocery II Corp.*, No. 18-CV-3602 (JGK) (JLC), 2018 WL 4844018, at *9 (S.D.N.Y. Oct. 5, 2018), *adopted by* 2018 WL 6173713 (Nov. 23, 2018).  However, Plaintiffs have not submitted any supporting documentation for the remaining costs listed in the fees invoice.  "Costs should not be awarded without proper documentation."  *Antetokounmpo v. Costantino*, No. 21-CV-2198 (JMF) (JLC), 2021 WL 5916512, at *12 (S.D.N.Y. Dec. 15, 2021), *adopted by* 2022 WL 36232 (Jan. 4, 2022); *see also Travel Leaders Grp., LLC v. Corley*, No. 19-CV-1595 (GBD) (JLC), 2019 WL 6647319, at *17 (S.D.N.Y. Dec. 5, 2019) (citing *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *9 (S.D.N.Y. Nov. 21, 2017)).  Therefore, the Court recommends an award of $400 in costs.

## III. CONCLUSION

For the foregoing reasons, I recommend that Plaintiffs' motion for attorneys' fees and costs be denied.  However, should the Court be inclined to grant the motion, I recommend that Plaintiffs be awarded $183,204.80 in attorneys' fees and $400 in costs.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any

24

responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, NY 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 4, 2022
      New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

25